IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| GLOBAL FORCE ENTERTAINMENT, INC. and JEFFREY JARRETT </br></br> Plaintiffs, </br></br> v. </br></br> ANTHEM SPORTS & ENTERTAINMENT CORP. and ANTHEM WRESTLING EXHIBITIONS, LLC, </br></br> Defendants. | CIVIL ACTION NO. NO. 3:18-cv-00749 </br></br> CHIEF JUDGE CRENSHAW </br></br> MAGISTRATE JUDGE JOE BROWN </br></br> JURY DEMAND |

## INITIAL CASE MANAGEMENT ORDER

**A. JURISDICTION & VENUE**

Plaintiff contends that this Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338 in that this case arises under the Lanham Act 15 U.S.C. § 1051 *et seq*.; 28 U.S.C. § 1338 in that this case arises under the Copyright Act, 17 U.S.C. § 101 *et seq*.; and 28 U.S.C. § 1331 as it involves a federal question; the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the Lanham Act; supplemental jurisdiction over the claims that arise under Tennessee law pursuant to 28 U.S.C. § 1367(a) because they are substantially related to the claims that arise under the Lanham Act of the United States.

Plaintiff further contends that venue is proper in the Court under 28 U.S.C. § 1391(b) and § 1391(c), and because Defendants are subject to personal jurisdiction pursuant to Tennessee's long arm statute, TENN. CODE ANN. § 20-2-201 *et seq*.

1

Defendants[1] dispute that this Court has subject matter jurisdiction because they assert that the Plaintiffs have not properly asserted their copyright claims because they have not properly alleged that they registered the copyrights at issue prior to filing suit. Second, Defendants contend that Plaintiffs granted them a license to commit all acts about which Plaintiffs now characterize as copyright or trademark infringement or unfair competition. Because Defendants acted at all times pursuant to an express license, the resolution of these claims is a matter of state contract law, not the Copyright Act or the Lanham Act. As such, this Court lacks subject matter jurisdiction over Plaintiffs' claims.

Similarly, Defendants contend that this Court lacks personal jurisdiction over Defendant Anthem Sports & Entertainment Corp ("Anthem Sports"), which is merely the parent holding company for various operating companies. Anthem Sports is incorporated under the laws of the Province of Ontario, Canada, and has no offices or employees in the United States or Tennessee. Anthem Sports is not licensed or qualified to do business in Tennessee; it has not appointed an agent for service of process in Tennessee; it does not have any employees or offices in Tennessee; it does not own or lease real or personal property in Tennessee; it does not maintain bank accounts in Tennessee; and it has not conducted business in Tennessee. Its website is not interactive; it simply has links to other websites run by related companies. The Anthem Sports website does not offer anything for sale and there is nothing about it that is targeted to the residents of Tennessee. Moreover, this entity does not distribute content in Tennessee or elsewhere; all content distribution is done through related companies or third-party license agreements. For these reasons, among others, Defendants contend that Plaintiffs' complaint should be dismissed for lack of subject matter and personal jurisdiction.

---

[1] Defendant Anthem Sports & Entertainment Corp. again makes a special appearance [*see Dkt. No. 11*] to raise the defense of lack of personal jurisdiction, among others, in this action.

**B. BRIEF THEORIES OF THE PARTIES**:

**For Plaintiffs:** Global Force Entertainment, Inc. ("GFE") was formed by Jeffrey Jarrett in 2014 for the purpose of promoting wrestling events and creating original wrestling programming for pay-per-view and television markets. GFE operates under and is the owner of the "Global Force Wrestling" brand. GFE owns the trademark and associated U.S. Registration No. 5,392,147 for GLOBAL FORCE WRESTLING for use in connection with (1) posters and photographs; (2) insulated containers for beverage cans for domestic use; (3) clothing, including, but not limited to, t-shirts, bandanas and hats; (4) streaming of audio and video material on the Internet; and (5) entertainment services, including, but not limited to, wrestling exhibitions and performances by professional wrestlers and entertainers. GFE also owns the trademark and associated U.S. Registration No. 5,453,775 for GFW for use in connection with (1) posters and photographs; (2) insulated containers for beverage cans for domestic use; (3) clothing, including, but not limited to, t-shirts, bandanas and hats; (4) streaming of audio and video material on the Internet; and (5) entertainment services, including, but not limited to, wrestling exhibitions and performances by professional wrestlers and entertainers. GFE also owns the common law and unregistered trademark rights in the Global Force Wrestling and GFW marks as depicted below:




On July 24, August 21, and October 23, 2015, at the Orleans Arena in Las Vegas, Nevada, GFE, under the GLOBAL FORCE WRESTLING and GFW trademarks, produced approximately sixteen (16) hours of original wrestling programming to market to television and/or pay-per-view

3

markets. The collective content was called "GFW Amped" and featured completely original content owned solely by GFE. GFE filed applications for federal copyright registration for each of the 16 one-hour GFW Amped videos. Plaintiffs are currently, and at all relevant times have been, the sole owners of all right, title, and interest in and to the copyrights in the GFW Amped works.

Despite Anthem Wrestling's acknowledgement of GFE's ownership of all GFW Amped content, Defendants reproduced, distributed, publicly displayed, offered for sale, and sold the GFW Amped content without providing any compensation or royalties to GFE or Mr. Jarrett. Defendants have promoted and continue to promote the GFW Amped content as a four-part pay-per-view (the "Amped PPV") on the Fight Network website. On several occasions, Defendants aired "GFW Amped Anthology" parts 1-4 as a part of their pay-per-view, premium television, streaming, and other viewing options on a worldwide scale. Anthem Wrestling has sold and continues to sell DVD copies of the GFW Amped content on its website and other online retail outlets. Defendants do not have a license to use, reproduce, distribute, and/or publicly display the GFW Amped content, GFE's trademarks in word or logo format, or Mr. Jarrett's name or image in connection with the GFW Amped content. Defendants' actions have violated and continue to violate GFE's exclusive rights in the GFW Amped content and the 16 associated copyrights. Defendants also have violated Mr. Jarrett's exclusive property rights in his own name, photograph, and other likeness by using his name, photograph, and likeness, as well as his video recorded performances, in their unauthorized copying, sales, distribution, and marketing of the GFW Amped content.

Defendants also have infringed GFE's trademarks through use of the mark "Global Wrestling Network" in connection with a new subscription streaming service known as the Global Wrestling Network, which features archive content from TNA and/or IMPACT! as well as footage

4

Case 3:18-cv-00749   Document 22   Filed 10/31/18   Page 4 of 12 PageID #: 154

from other providers. The logo for the Global Wrestling Network contains a green color identical or nearly identical to the green color in GFE's logo. Defendants do not have a license to use, reproduce, distribute, and/or publicly display GFE's trademarks in word or logo format. Defendants' use of Global Wrestling Network" and the confusingly similar accompanying logo violate multiple sections of the Lanham Act, the Tennessee Consumer Protection Act, and Tennessee common law.

**For Defendants:**

Defendants assert that Global Force Entertainment, Inc ("GFW"), Jeffrey Jarrett, and Anthem Wrestling Exhibitions, LLC ("Anthem Wrestling") entered into discussions of a business venture in which GFW would merge with Anthem Wrestling. At all times pertinent, Mr. Jarrett was acting on behalf of himself and on behalf of GFW in these discussions. The parties agreed to pursue this merger in good faith and entered into a term sheet ("Term Sheet") wherein Mr. Jarrett was hired as Chief Creative Officer of Anthem Wrestling. The Term Sheet provided that Mr. Jarrett as Chief Creative Officer of Anthem Wrestling would oversee all Creative, Production and Talent Relations and "have overall responsibility and full authority for developing the creative direction for all wrestling operations", and ensure "timely and efficient production of programming to meet the Company's obligations under its distribution agreements to produce content for television broadcast and PPV airings, content for the Company's digital distribution channels, and performance of live events." While Chief Creative Officer of Anthem Wrestling, Mr. Jarrett himself authorized and oversaw the post-production and creative process of readying the Amped Content for broadcast by Anthem Wrestling. Mr. Jarrett further participated in and authorized the use and marketing of the Amped Content by Anthem Wrestling, including use of the GFW marks and including the use of the mark GLOBAL WRESTLING NETWORK. To the extent that

5

Anthem Wrestling used, broadcast, or sold copies of the Amped Content, all such acts were pursuant to a license expressly authorized by Jeffrey Jarrett, on behalf of himself as an individual and on behalf of GFW.

The venture was not successful, merger discussions were eventually called off, and Mr. Jarrett was terminated as Chief Creative Officer of Anthem Wrestling. The broadcast and sale of the Amped Content was not successful from a financial standpoint; the post-production work necessary to make the content broadcast-ready cost more than revenues earned from the broadcast. Post-broadcast sales were also disappointing. Accordingly, there is no revenue from this venture to share with Plaintiffs.

Because Anthem Wrestling was at all times acting in accordance with a license granted by Plaintiffs, it has not committed copyright infringement, trademark infringement, or unfair competition of any kind. Likewise, Plaintiffs' claims under the Tennessee Personal Rights Protection Act are not viable because Mr. Jarrett expressly authorized the use of the Amped Content, which contained his name, image, and likeness. Further, Anthem Wrestling owns Federal Trademark No. 3269268, for the mark JEFF JARRETT for use with toy action figures and "entertainment services, namely wrestling exhibits and performances by a professional wrestler and entertainer; providing wrestling news and information via a global computer network." In order for TNA, Anthem Wrestling's predecessor in interest, to obtain this trademark, Mr. Jarrett signed a written consent for his name, image, and likeness to be used as a trademark by the trademark's owner (which is a matter of public record), all of which demonstrate that Defendants' use of his name, image, and likeness was properly authorized.

And finally, Defendants contend that Plaintiffs' remaining causes of action, common law unfair competition, unjust enrichment, and violations of the Tennessee Consumer Protection Act,

6

Case 3:18-cv-00749    Document 22    Filed 10/31/18    Page 6 of 12 PageID #: 156

are all pre-empted by their federal copyright and trademark claims.

**C. ISSUES RESOLVED**: None.

**D. ISSUES STILL IN DISPUTE**: While the parties are unable at this time to anticipate the full scope of the legal issues that may arise in this action, some legal issues that may arise, among others, include:

    i. Whether this Court has subject matter jurisdiction over Plaintiffs' claims because their copyright and Lanham Act claims are barred by license and/or fail to state a claim;

    ii. Whether this Court has personal jurisdiction over Defendant Anthem Sports;

    iii. Whether Plaintiffs have stated valid claims for their various causes of action;

    iv. Whether Defendants are liable jointly and severally for causes of action under the Lanham Act, 15 U.S.C. § 1051 et seq.;

    v. Whether Defendants are liable jointly and severally for causes of action under the Copyright Act, 17 U.S.C. § 101 et seq.;

    vi. Whether Defendants are liable jointly and severally for causes of action under the Tennessee Consumer Protection Act, TENN. CODE ANN. § 47-25-1101 et seq.;

    vii. Whether Defendants are liable jointly and severally for causes of action arising under Tennessee common law, including trademark infringement, trade name infringement, unfair competition, unjust enrichment, and conversion;

      viii. Whether Plaintiffs are entitled to monetary damages, punitive damages, treble damages, enhanced damages, attorneys' fees, expenses, costs, and other available monetary remedies;

      ix. Whether Plaintiffs are entitled to injunctive relief;

      x. Whether Plaintiffs are entitled to other equitable relief and statutory relief; and

      xi. Other issues that may arise during the course of this action.

E. **INITIAL DISCLOSURES**: The parties shall exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before <u>November 30, 2018</u> or within 30 days of the entry of the Initial Case Management Order.

F. **CASE RESOLUTION PLAN AND JOINT ADR REPORTS**: Within 120 days of the Initial Case Management Conference, the parties shall conduct an in-person meeting to discuss settlement. A representative of Plaintiff and representatives of Defendants with full settlement authority shall participate in the settlement conference, and may participate telephonically, but must still participate for the entire duration of the settlement conference. (Counsel for the parties shall meet in person, even if their client representatives participate telephonically.) By no later 10 days after the settlement meeting, the parties shall submit a joint case resolution report confirming that the parties made a first good faith attempt to resolve the case. The joint report shall also state whether the parties believe ADR might assist resolution of this case. The parties shall conduct a second in-person meeting to attempt to settle this case before the deadline for filing dispositive motions. A representative of Plaintiff and representatives of Defendants with full settlement authority shall

participate in the settlement conference. All parties are required to attend the second settlement conference in person. An updated joint status report shall be filed no later than 10 days after the second settlement meeting and shall either confirm the parties' second good faith attempt at case resolution or update the Court on the status of the intended second attempt. If a judicial settlement conference is requested in either joint report, the parties shall also state (i) the reasons why mediation is not feasible; (ii) their proposed timing for scheduling of the settlement conference; and (iii) any preference of a particular Magistrate Judge to conduct the settlement conference.

G. **DISCOVERY**: The parties shall complete all written discovery and depose all fact witnesses on or before July 1, 2019. Discovery is not stayed during dispositive or other motions, unless ordered by the Court. No motions concerning discovery are to be filed until after counsel have spoken in a good faith effort to resolve any dispute(s), and if unable to resolve their differences, have conducted a telephone conference with the Magistrate Judge.

H. **MOTIONS TO AMEND OR TO ADD PARTIES**: Any motions to amend or to add parties shall be filed by no later than January 11, 2019.

I. **DISCLOSURE OF EXPERTS**: The party bearing the burden of proof on a particular issue shall identify and disclose all expert witnesses and expert reports on or before September 1, 2019. The other party shall identify and disclose all expert witnesses and reports on or before October 30, 2019. No supplemental expert reports or rebuttal experts shall be allowed, except upon order of the Court for good cause shown.

9

**J. DEPOSITIONS OF EXPERT WITNESSES**: All experts shall be deposed by no later than December 5, 2019.

**K. SUBSEQUENT CASE MANAGEMENT CONFERENCE**: A subsequent case management conference shall be held on April 15, 2019, at 10:00 a.m., to address: status of discovery (including any discovery issues or disputes); prospect for settlement (including propriety of ADR); and, any other appropriate matters. To join the conference call, the parties are directed to dial (877) 873-8017 at the scheduled time and enter Access Code 1958322# when prompted. At least one full business day prior to the conference call, the parties shall submit a brief joint statement of any remaining issues and the possibility of ADR by email to: brownchambers@tnmd.uscourts.gov.

**L. DISPOSITIVE MOTIONS:** Dispositive motions shall be filed by no later than December 15, 2019. Responses to dispositive motions shall be filed within 28 days after the filing of the motion. Briefs or memoranda of law in support of or in opposition to a dispositive motion shall not exceed 25 pages. Optional replies may be filed within 14 days after the filing of the response and shall not exceed 5 pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the Court. In all other respects, the provisions of Local Rule 56.01 shall govern.

**M. ELECTRONIC DISCOVERY**: The parties will submit a separate, agreed upon Order regarding how to conduct electronic discovery. Administrative Order No.

174-1, therefore need not apply to this case. However, in the absence of an agreement, the default standards of Administrative Order No. 174-1 will apply.

N. **MODIFICATION OF CASE MANAGEMENT ORDER:** Any motion to modify the case management order or any case management deadline shall be filed at least seven (7) days in advance of the earliest impacted deadline. Unless a joint motion, the motion for modification must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether or not there is any objection to the requested modification or extension. The motion for modification must also include: (i) the trial date and all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review one or more previous case management orders in consideration of the motion and (ii) a statement that the requested extension will still conform to the requirements of Local Rule 16.01(d)(2.f) that no dispositive motion deadline, including response and reply briefs, shall be later than 90 days in advance of the trial date. Motion for extensions should also detail the moving party's efforts at diligently complying with the originally scheduled deadline and the facts demonstrating good cause for modification of the deadline as required by Fed. R. Civ. P. 16(b)(4).

O. **REQUESTS TO SEAL DOCUMENTS OR PORTIONS OF DOCUMENTS:** Any party requesting that documents or portions of documents be sealed, including without limitation for use as exhibits at trial, must file a motion to seal in accordance with Section 5.07 of Administrative Order No. 167 (Administrative Practices and Procedures for Electronic Case Filing) and Local Rule 7.01, which demonstrates compelling reasons to seal the documents and that the sealing is narrowly tailored to those reasons.

The motion to seal, even if unopposed, must specifically analyze in detail, document by document, the priority of secrecy, providing factual support and legal citations. Generally, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence is typically enough to overcome the presumption of public access. Failure to comply with these procedures or to provide sufficiently compelling reason may result in denial of the request to seal documents or portions of documents. Protective orders should not provide that documents produced in discovery and designated as "confidential" will be automatically sealed upon filing or if used at trial. Any such language in proposed protective orders will be stricken and may result in denial of the motion for entry of the proposed protective order.

**P. ESTIMATED TRIAL TIME AND TARGET TRIAL DATE**: The jury trial of this action is expected to last approximately 5 days. A trial date no earlier than June 23, 2020 is respectfully requested.

It is so ORDERED.

_____
United States Magistrate Judge Joe B. Brown