IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| Global Force Entertainment, Inc. and Jeff Jarrett, <br><br> Plaintiffs, <br><br> v. <br><br> Anthem Sports Entertainment Corp., and Anthem Wrestling Exhibitions, LLC, <br><br> Defendants. | Case No. 3:18-cv-00749 |

**DEFENDANT ANTHEM SPORTS ENTERTAINMENT CORP.'S MEMORANDUM OF FACT AND LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Anthem Sports Entertainment Corp. ("Anthem Sports") makes a special appearance to raise the defenses of lack of personal jurisdiction. In support of its Motion, Anthem Sports argues as follows.

## INTRODUCTION

Defendant Anthem Sports is a Canadian holding company that has no day to day operations other than the ownership of several subsidiaries that house the various Anthem brands. Its primary place of business is in Toronto, Canada. It does not do business in Tennessee, it is not qualified to do business in Tennessee, and it does not target Tennessee residents. It does not distribute content in Tennessee or elsewhere; all content distribution of the Anthem entities that are held by Anthem Sports is done through related companies or third party license agreements. As set forth below, in light of the facts set forth in the Declaration of Ed Nordholm, Anthem Sports' Executive Vice President, Plaintiff cannot plausibly allege facts sufficient to establish that this Court can assert

personal jurisdiction over Anthem Sports in a manner that is consistent with the Due Process Clause.

## JURISDICTIONAL FACTS

Plaintiffs generally allege that this Court has general personal jurisdiction over both Anthem Defendants based on their "continuous and systematic minimum contacts with residents of Tennessee through the distribution and sale of Defendants' products, events, and services in Tennessee, and Defendants' representatives' promotion and marketing activities in Tennessee." FAC at ¶ 10. They further allege that Defendant Anthem Sports formed and owns a majority stake in Anthem Wrestling. FAC at ¶ 4, 32. They also allege upon "information and belief" that Anthem Sports and Anthem Wrestling share common ownership, executives, lawyers, office space, employees, equipment, and physical locations and that they "operate under common and/or joint leadership such that the focus as one unitary entity." FAC at ¶ 5.

In providing background about Anthem Sports, Plaintiff alleges that Anthem Sports' predecessor corporation acquired a majority stake in an entity called "Fight Network," which is broadcast throughout the world, including to 1.5 million subscribers in the United States. FAC at ¶ 26-29. Plaintiff alleges that certain of the Amped Content was broadcast or sold via a Fight Network website. FAC at ¶ 46. Plaintiff also alleges, upon information and belief, that Anthem Sports invested in the entity now known as "Impact! Wrestling." FAC at ¶ 31.

Plaintiffs further allege that Defendant Anthem Sports "initiated discussions" with Plaintiffs about a merger with GFE and hiring Jeff Jarrett as Chief Creative Officer for the "wrestling portion of Anthem Sports." FAC at ¶ 34. Plaintiffs further state that "in conjunction with these merger and employment discussions," Jeff Jarrett and Anthem Sports entered into a

non-disclosure agreement (the "NDA"). Plaintiffs are quick to point out, however, that their claims in this case are not "brought under" that agreement, but that they mention it for background only. FAC at ¶ 35. The reason Plaintiffs insist that their claims are not brought under this agreement is because it contains a choice of law clause requiring the application of New York law, and a forum selection clause mandating that all claims arising "in connection with" or "arising out of" this agreement are to be tried by an appropriate New York court. FAC at Exhibit 1, ¶ 13.

After the allegation that Anthem Sports entered into a contract with Plaintiffs that required the application of foreign law and a forum selection clause that required suit be brought in New York, Plaintiff goes on to allege that Anthem *Wrestling* entered into a term sheet with them (FAC at ¶ 38) that provided that GFE and Anthem *Wrestling* would merge (FAC at ¶ 41), that Jeff Jarrett would be the Chief Creative Officer of Anthem *Wrestling* (FAC at ¶ 38), in charge of all content ((FAC at Exhibit 2), and that Anthem *Wrestling* published the Amped Content and did not pay Plaintiffs a royalty (FAC at ¶ 44). The remainder of Plaintiffs' allegations are generally directed to "Defendants," rather than specifically naming or referring to Anthem Sports, but the acts about which they complain were acts committed by Anthem *Wrestling* based on the allegations in the Complaint itself.

As the sworn Declaration of Ed Nordholm demonstrates, most if not all of Plaintiffs' jurisdictional facts are wrong. Anthem Sports has no meaningful connection with the State of Tennessee. Nordholm Dec. at ¶¶ 10 – 12. Anthem Sports is incorporated under the laws of the Province of Ontario, Canada, and has no offices or employees in the United States or Tennessee. *Id.* at ¶ 2. Anthem Sports is not licensed or qualified to do business in Tennessee; it has not appointed an agent for service of process in Tennessee; it does not have any employees or offices in Tennessee; it does not own or lease real or personal property in Tennessee; it does not maintain

bank accounts in Tennessee; and it has not conducted business in Tennessee. *Id*. at ¶ ¶ 10 – 12. Its website is not interactive; it simply has links to other websites run by related companies. *Id*. at ¶ 11. The Anthem Sports website does not offer anything for sale and there is nothing about it that is targeted to the residents of Tennessee. *Id*. Moreover, this entity does not distribute content in Tennessee or elsewhere. *Id*. at ¶ 12.

Mr. Nordholm testifies that Plaintiffs' allegations that Anthem Sports and Anthem Wrestling are a "unitary entity," are incorrect. *Id.* at *Id*. at ¶ 9. Anthem Sports and Anthem Wrestling are two separate and distinct legal entities and all appropriate corporate formalities have been observed. *Id.* Although Anthem Wrestling is controlled by Fight Media, Anthem Wrestling has different shareholders than Anthem Sports and Anthem Wrestling is funded by financing facilities separate from the financing facilities for Anthem Sports. *Id.* The two companies have different purposes, corporate missions, employees, locations, and management. *Id.* The two entities maintain separate books, tax returns and financial statements, and neither entity exerts control over the daily affairs of the other. *Id.*

## ARGUMENT

### A.  THIS COURT LACKS PERSONAL JURISDICTION OVER ANTHEM SPORTS

Plaintiffs' allegations as to Anthem Sports can be boiled down to the following:

- Anthem Sports generally "does business" in and markets to Tennessee;

- Anthem Sports' predecessor corporation acquired a majority stake in an entity called "Fight Network," which is broadcast throughout the world, including to 1.5 million subscribers in the United States and Fight Network's website allegedly sold the Amped Content;

- Anthem Sports initiated discussions with Plaintiffs about a merger pursuant to a NDA that Plaintiffs allege does not apply to this action;

- Anthem Sports owns Anthem Wrestling and the two companies share common leadership and "focus as one unitary entity;"

The allegations that actually form the basis for Plaintiffs' claims, i.e. the use of the Amped Content and Plaintiff's marks, were committed by Anthem Wrestling, as per the Complaint itself, although Plaintiffs often lump the two together in asserting claims without specifying which entity did what act. The above allegations which are specific to Anthem Sports do not provide a sufficient basis for this Court to exercise personal jurisdiction over Anthem Sports.

### 1. *THERE IS NO GENERAL JURISDICTION AS TO ANTHEM SPORTS.*
*Anthem Sports is not "At Home" in Tennessee*.

The plaintiff bears the burden of establishing that jurisdiction exists. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (*citing McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)). Because Tennessee's long-arm statute has been interpreted to be "coterminous with the limits on personal jurisdiction imposed" by the U.S. Constitution, "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical." *Payne v. Motorists' Mut. Ins. Cos*., 4 F.3d 452, 455 (6th Cir. 1993).

Under the Due Process Clause, a court's jurisdiction over a nonresident defendant exists only if the defendant has "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (*quoting Int'l Shoe Co. v. Wash*., 326 U.S. 310, 316 (1945)). Courts distinguish between general jurisdiction and specific jurisdiction. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992).

At the outset, there can be no serious dispute that this Court lacks general jurisdiction over Anthem Sports. Plaintiffs conclusorily allege that this Court has general personal jurisdiction over both Anthem Defendants based on their "continuous and systematic minimum contacts with

residents of Tennessee through the distribution and sale of Defendants' products, events, and services in Tennessee, and Defendants' representatives' promotion and marketing activities in Tennessee." FAC at ¶ 10. Plaintiffs also allege that Anthem Sports widely distributes[1] content through Fight Network (FAC at ¶ 26-30). Yet, for a corporate defendant, general jurisdiction exists only if the corporation's contacts with the forum are "so continuous and systematic" that the defendant "is fairly regarded as at home" in the state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). After Daimler, in all but the most extreme circumstances, general jurisdiction is generally found only in those states where the business is incorporated or has its principal place of business. *See Daimler AG*, 134 S. Ct. at 760; *Allstate Ins. Co. v. Electrolux Home Prod.*, 2014 U.S. Dist. LEXIS 97908, at *9-*10 (N.D. Ohio Jul. 19, 2014)(*Daimler* decision "severely" narrowed the scope of general jurisdiction). Here, Plaintiffs allege that Anthem Sports is incorporated in Delaware and its principal place of business is in Toronto, Canada. FAC at ¶ 3. Plaintiffs allege no additional facts to support a finding that Anthem Sports can be fairly regarded as at home in Tennessee under *Daimler*. The Nordholm Declaration clearly establishes that this is not the case. Accordingly, Anthem Sports is not subject to general jurisdiction in the State of Tennessee.

### 2. THERE IS NO SPECIFIC JURISDICTION AS TO ANTHEM SPORTS.

Absent general jurisdiction, Plaintiffs must establish that the Court has "specific personal jurisdiction" over Defendants for each claim asserted in the Amended Complaint. *See Bd. Of Forensic Document Exam'rs, Inc. v. ABA*, No. 16-cv-2641, 2017 WL 549031, at *3 (W.D. Tenn. Feb. 9, 2017) ("The court must have personal jurisdiction over each defendant and as to each asserted claim."). Specific jurisdiction over a defendant exists only if the defendant has minimum

---

[1] As the Nordholm Declaration demonstrates, Anthem Sports does not itself distribute content in Tennessee or elsewhere. All such distribution is done through subsidiaries and/or third parties.

contacts with the forum and the specific claim at issue "arises out of or relates to [those] contacts." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011) (internal citations omitted).

For purposes of specific personal jurisdiction, due process is satisfied only where a defendant "purposefully avails [him]self of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In other words, a defendant's contacts with the forum state must be such that the defendant "should reasonably anticipate being haled into court." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, (1985). Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear,* 131 S.Ct. at 2851 (citations omitted).

The Sixth Circuit Court of Appeals has established a three-part test or criteria for determining the limits of specific personal jurisdiction. *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968). "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id*. While all three prongs must be satisfied, it is the "purposeful availment" prong of the *Mohasco* test that is the *sine qua non* of specific personal jurisdiction. *Id.* at 381-82; *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550-51 (6th Cir. 2007). Moreover, if the Plaintiff cannot meet the first two parts of the *Mahasco* test, the court never reaches the question as to whether the exercise of

jurisdiction would be otherwise reasonable. *World Wide Volkswagen Corp v. Woodson,* 444 U.S. 286, 294, 100 S. Ct. 559, 62 L. Ed. 2d 490, 1980 U.S. 65 (1980)(" Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.").

Here, Plaintiffs cannot show that Anthem Sports has purposely availed itself of the privilege of acting in Tennessee and there are no allegations in the complaint that it has. "Purposeful availment" is considered to be "something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct that can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." *Bridgeport Music,* 327 F.3d at 478 (internal citations and quotation marks omitted). This requirement is satisfied only when the non-resident defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Burger King,* 471 U.S. at 475 (emphasis in original).

### ***ANTHEM SPORTS HAS NOT PURPOSELY AVAILED ITSELF OF DOING BUSINESS IN TENNESSEE***

***Plaintiffs' Formulaic Allegations that Anthem Sports Does Business in Tennessee Are Insufficient to Establish Purposeful Availment.***

Plaintiffs' general, formulaic allegations as to "Defendants" selling goods and services in Tennessee are not sufficient to establish jurisdiction without plausible factual allegations that would establish that Anthem Sports specifically targeted Tennessee, rather than simply inserting

goods or services in the stream of commerce. Under the Sixth Circuit's "stream of commerce 'plus'" approach, simply injecting goods into the stream of commerce is insufficient to support specific personal jurisdiction. *Bridgeport Music* 327 F.3d. at 480 (*citing Asahi Metal Indus. Co. v. Superior Court of Calif.,* 480 U.S. 102, 111-12 (1987)). Plaintiff's formulaic recitations do not provide a factual basis of the "something more" and are merely boilerplate verbiage, which is insufficient. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 555 (2007).

Moreover, in order to support a finding of specific personal jurisdiction, the alleged contacts with the forum must be related to the purported causes of action. *Burger King Crop. V. Rudzewicz,* 471 U.S. 462, 472, 486, 105 S.Ct. 2174, 85 L.Ed 2d 528 (1984)(specific jurisdiction exists when the "the defendant has 'purposely directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities."(citations omitted)). There is no allegation that these unspecific contacts with the State of Tennessee relate in any way to Plaintiff's claims. As such, Plaintiffs cannot rely on these allegations to support a finding of specific personal jurisdiction. This is particularly true where, as here, Anthem Sports has offered sworn testimony that these conclusory allegations are not true as to Anthem Sports.

> ***Plaintiffs' Allegations that Anthem Sports Broadcasts Content Through Fight Network Cannot Establish Purposeful Availment.***

Likewise, Plaintiffs' allegations as to Anthem Sports and its alleged distribution of Fight Network content is not sufficient to establish specific jurisdiction. As the Nordholm Declaration makes clear, Anthem Sports does not distribute any content itself, whether in Tennessee or elsewhere. It is a holding company. Any content distributed by or on the Fight Network, is

controlled by an entity other than Anthem Sports. Accordingly, Plaintiffs cannot plausibly allege that this Court has specific personal jurisdiction over Anthem Sports on the basis of its allegations relating to Fight Network.

### *Plaintiffs Cannot Establish Purposeful Availment by Reference to Anthem Sport's Website.*

Moreover, Plaintiffs cannot point to Anthem Sports' website to attempt to establish specific jurisdiction. Anthem Sports only operates a non-interactive website accessible throughout the world that offers nothing for sale and is not specifically directed at residents of Tennessee. *See* Nordholm Declaration at ¶ 11. The existence of that website therefore provides no further support for the proposition that Anthem Sports has purposely availed itself of the privilege of doing business in Tennessee. *Bridgeport*, 327 F.3d at 483 (holding that "operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first *Mohasco* factor only if the website is interactive to a degree that reveals specifically intended interaction with residents of the state") (internal quotation marks omitted). In light of the Nordholm Declaration, Plaintiffs cannot plausibly allege that the Anthem Sports' website provides a basis for specific jurisdiction.

### *Plaintiffs' Allegation that Anthem Sports Entered Into An NDA with Them Cannot Establish Purposeful Availment.*

Plaintiffs allege that "in conjunction with these merger and employment discussions," Jeff Jarrett and Anthem Sports entered into a non-disclosure agreement (the "NDA"). FAC at ¶ 35. The NDA contains a choice of law clause requiring the application of New York law, and a forum selection clause mandating that all claims arising "in connection with" or "arising out of" this agreement are to be tried by an appropriate New York court. FAC at Exhibit 1, ¶ 13. Even if one believes Plaintiffs' allegation that their claims do not relate to arise from this NDA as one is

required to do at this juncture of the proceedings, these allegations actually establish that Anthem Sports deliberately did *not* avail itself of doing business in the forum. Obviously, if Anthem Sports initiated merger discussions pursuant to this NDA as Plaintiffs allege, it did not anticipate being haled into court here. In fact, it expressly bargained for and obtained a contractual provision that *it could not be sued in Tennessee*. In light of the fact that the Complaint expressly establishes that the parties agreed that Anthem Sports could not be sued in Tennessee, these allegations cannot establish that Anthem Sports has purposely availed itself of the privilege of doing business in Tennessee for purposes of the specific jurisdiction analysis. Further, Anthem Sports asserts that this bargained-for provision that was reached as a pre-requisite for its merger discussions with Plaintiff--the facts that give rise to Plaintiffs' purported claims--should be dispositive of the "purposeful availment" issue. Anthem Sports expressly bargained for and obtained the right not to be haled into court in Tennessee.

### *Plaintiffs Cannot Establish Purposeful Availment by Anthem Sports By Imputing To It the Actions of Anthem Wrestling*

A non-resident defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous," or 'attenuated contacts,' or of the 'unilateral activity of another party or third person.'" *Burger King,* 471 U.S. at 475 (internal citations omitted). Plaintiffs' allegations that Anthem Sports owns Anthem Wrestling and that the two operate under common and/or joint leadership such that they "focus as one unitary entity," attempt to establish that Anthem Sports has purposely availed itself of doing business in Tennessee through the actions of Anthem *Wrestling*. First, personal jurisdiction does not arise over the parent company merely because the forum state properly asserts jurisdiction over one of its subsidiaries. *Dean v. Motel 6 Operating, L.P.,* 134 F.3d 1269, 1273-1274 (6th Circ. 1998). Second, this Circuit has adopted the alter-ego theory of personal jurisdiction, which "provides that a non-resident parent corporation is amenable to suit in the forum

state only if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Estate of Thomson v. Toyota Motor Corp. Worldwide,* 545 F.3d 357, 362 (6th Cir.2008). Total ownership and shared management personnel are alone insufficient to establish the requisite level of control. *Anwar v. Dow Chem. Co.,* 876 F.3d 841, 849 (6th Cir. 2017).

As the Nordholm Declaration establishes, Anthem Wrestling and Anthem Sports are different and distinct corporate entities and all appropriate corporate formalities have been properly observed. Nordholm Declaration at ¶ 9. Although Anthem Wrestling is controlled by Fight Media, Anthem Wrestling has different shareholders than Anthem Sports and Anthem Wrestling is funded by financing facilities separate from the financing facilities for Anthem Sports. *Id.* The two companies have different purposes, corporate missions, employees, locations, and management. *Id.* The two entities maintain separate books, tax returns and financial statements, and neither entity exerts control over the daily affairs of the other. *Id.* Moreover, Anthem Sports is merely a holding company. It does not have any day to day operations of any kind. *Id.* at ¶ 9. Plaintiffs have alleged that Jeff Jarrett was hired as Chief Creative Officer of Anthem Wrestling, but not Anthem Sports. The Term Sheet provided by Plaintiffs establishes that Mr. Jarrett had responsibility for the content created and marketed during his employment by Anthem Wrestling. These facts, ascertainable from the Complaint and its Exhibits, establish that the two entities do not have identical staff and management and that the decisions about which GFE and Mr. Jarrett now complain were not controlled by Anthem Sports, using Anthem Wrestling as a "mere instrumentality."

Moreover, determining whether one corporation is an alter ego of another for jurisdictional purposes is controlled by state law. *Gordon v. Greenview Hosp., Inc.,* 300 S.W.3d 635, 653 (Tenn.

2009)(citations omitted). In Tennessee, mere control of a subsidiary corporation by its parent is not sufficient to disregard the presumption of corporate separateness (to "pierce the corporate veil"). *Cambio Health Solutions, LLC v. Reardon,* 213 S.W.3d 785, 790 (Tenn.2006); *Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo,* 578 S.W.2d 625, 631 (Tenn.1979). To disregard the presumption, the party seeking to do so must demonstrate (1) that the subsidiary corporation is a sham or dummy; (2) that the two corporations are, in fact, identical and indistinguishable; or (3) that the subsidiary corporation is merely an instrumentality, agent, conduit, or adjunct of the parent corporation. *Gordon*, 300 S.W.3d at 653 (citations omitted). Plaintiffs cannot make any of these showings.

In sum, the presumption of corporate separateness here may be overcome only by plausible factual allegations demonstrating that Anthem Sports "exercises complete dominion over its [Anthem Wrestling], not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own." *Gordon,* 300 S.W.3d at 653 (Tenn. 2009)(citations omitted). Plaintiffs have not made such fact-based allegations and, in light of Mr. Nordholm's sworn testimony to the contrary, cannot establish jurisdiction over Anthem Sports pursuant to an alter ego theory under Tennessee law.

Because Plaintiffs cannot establish that Anthem Sports purposely availed itself of doing business in Tennessee with plausible factual allegations, Anthem Sports need not reach the other elements of the *Monasco* test. *See World Wide Volkswagen,* 444 U.S. at 294. No matter how convenient it is for Plaintiffs or the Court to resolve this matter in Tennessee as to Anthem Sports, it is not constitutionally permissible to do so in the absence of plausible, factual allegations that

establish Anthem Sports has purposely availed itself of the privilege of doing business in Tennessee.

## CONCLUSION

For the foregoing reasons, Defendant Anthem Sports asserts that this Court lacks jurisdiction over it and requests that all of Plaintiffs' claims against it be dismissed.

Respectfully submitted,

**BASS, BERRY & SIMS PLC**

By: /s/ *Paige W. Mills*
. Paige W. Mills (TN #016218)
150 Third Avenue So, Suite 2800
Nashville, TN 37201
(615)742-6200
pmills@bassberry.com

*Attorneys for Anthem Sports and Entertainment Corp. and Anthem Wrestling Exhibitions, LLC*

## CERTIFICATE OF SERVICE

       I hereby certify that on November 1, 2018, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

Samuel F. Miller
Nicholas R. Valenti
A. Grace Van Dyke James
Miller Legal Partners, PLLC
Fifth Third Center – Suite 2000
424 Church Street
Nashville, TN 37219
MillerLegalPartners.com

                                                  /s/ *Paige W. Mills*