IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

|  |  |
|---|---|
| Global Force Entertainment, Inc. and Jeffrey Jarrett,<br><br>      Plaintiffs,<br><br>v.<br><br>Anthem Sports & Entertainment Corp., and Anthem Wrestling Exhibitions, LLC,<br><br>      Defendants. | Case No. 3:18-cv-00749 |

## DEFENDANTS ANTHEM SPORTS AND ANTHEM WRESTLING'S MEMORANDUM OF FACT AND LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Anthem Sports & Entertainment Corp ("Anthem Sports")[1] and Anthem Wrestling Exhibitions, LLC ("Anthem Wrestling") (collectively "Anthem" or "Defendants") state the following as their Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

This action is the aftermath of a failed merger between two wrestling entertainment companies—Anthem Wrestling and Global Force Entertainment (GFE"). GFE is Plaintiff Jeff Jarrett's company, a well-known character in the wrestling industry. Anthem Wrestling and Jarrett entered into discussions wherein Jarrett's company would merge into Anthem Wrestling in exchange for an officer-level position with a large salary, a job for Jarrett's wife, and an equity

---

[1] Anthem Sports again enters a special appearance to preserve the defense of lack of personal jurisdiction that it is raising in a second Motion to Dismiss filed contemporaneously with the instant motion.

1

interest in Anthem Wrestling. The plan was to use Jarrett and his extensive experience in the wrestling business to help grow and differentiate the IMPACT! Wrestling brand that Anthem had recently acquired. Jarrett would bring to the deal his GLOBAL FORCE WRESTLING and GFW brands and 16 episodes of wrestling content (the "Amped Content") that he had produced some two years earlier but thus far had been unable to monetize. The parties planned to complete and finalize the Amped Content, add voiceover, and perform the other necessary post-production work in order to get it in shape to broadcast and sell. In order to carry out these plans, Jeff Jarrett was made Chief Creative Officer of Anthem Wrestling effective April of 2017 and given complete authority over its wrestling operations and the content that the company would create, market, and sell.

Under Mr. Jarrett's watch as Chief Creative Officer, the Amped Content was packaged as five different PPV broadcasts and was marketed with both the GFW and IMPACT! trademarks. The Amped Content was also packaged as DVDs and sold on-line. Also during Mr. Jarrett's tenure as Anthem Wrestling's Chief Creative Officer, the company decided to use the phrase "Global Wrestling Network" as a descriptor for an Over-the-Top ("OTT") application developed by Anthem Wrestling upon which wrestling content would be marketed.

As often happens, the parties' merger plans did not work out as expected. Mr. Jarrett was terminated near the end of October 2017. The sale and marketing of the Amped Content was not successful and did not turn a profit. Plaintiffs now bring this action alleging copyright infringement, violations of the Tennessee Personal Rights Protection Act, numerous trademark-related claims under the Lanham Act and Tennessee state law, and conversion. All such claims arise out of the same conduct--Anthem Wrestling's broadcast and sale of the Amped Content

2

using both parties' trademarks pursuant to the failed merger. Remarkably, Mr. Jarrett is suing over the very conduct that he oversaw and conducted as an officer of Anthem Wrestling.

As will be shown below, these facts cannot sustain the causes of action that Plaintiffs allege here. First, Plaintiffs have not properly alleged their copyright infringement claim because they have not properly alleged that the Amped Content was registered at the U.S. Copyright Office before they brought this action. Second, they cannot sustain a claim under the Tennessee Personal Rights Protection Act because Jeff Jarrett had previously authorized Defendants' use of his image and likeness. Third, they cannot sustain claims for copyright or trademark infringement or any of the other claims arising from Plaintiffs' allegations that Defendants misused their trademarks because there was an implied license between these parties for the conduct which is now the subject of this action. In fact, Mr. Jarrett has publically admitted that this conduct was licensed in publically available filings at the United States Patent and Trademark Office involving one of marks he is suing under in this case. And finally, because Plaintiffs' federal causes of action should be dismissed for failure to state a claim, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining claim for conversion.

## FACTS AS ALLEGED IN FIRST AMENDED COMPLAINT[2]

In October 2016, Anthem Sports initiated discussions with Plaintiffs in which GFE would merge into Anthem Sports in exchange for membership and equity in Anthem Sports. First Amended Complaint ("FAC") at ¶ 34. Jeff Jarrett entered into an NDA with Anthem Sports which provided that the parties were going to exchange confidential information in connection with the consideration of a potential business transaction that they were exploring. *Id.*, Exhibit

---

[2] Defendants accept these facts as true for the purpose of this motion only.

1.In January of 2017, Anthem Wrestling hired Mr. Jarrett as a consultant. *Id.* at ¶ 36. Around that same time period, Mr. Jarrett provided the only set of masters for the 16-one-hour episodes of GFW Amped content to Defendants. *Id.* at ¶ 37. In or around May of 2017, Anthem Wrestling and Mr. Jarrett signed a term sheet (the "Term Sheet") with an effective date of April 17, 2017, regarding Mr. Jarrett's employment as the Chief Creative Officer of Anthem Wrestling and the merger that the parties were planning. *Id.* at ¶ 38. The term sheet provided that as Chief Creative Officer, Jeff Jarrett was responsible for all wrestling operations of the Company and would have "overall responsibility and full authority" for "ensuring timely and efficient production of programming to meet the Company's obligations under its distribution agreements to produce content for television broadcast and PPV airings, content for the Company's digital distribution channels, [and] performance of live events. *Id.* Exhibit 2 at "Duties." In other words, Mr. Jarrett was to be the Anthem Wrestling employee in charge of the content it would sell.

Plaintiffs provide a copy of a press release in which Anthem Wrestling announced in June of 2017 that it had reach an agreement with GFE and Jeff Jarrett wherein it would acquire GFE and that Jarrett would join Anthem Wrestling as a member of its board of managers, equity owner, and Chief Creative Officer. *Id.* at ¶ 41. Defendants first produced the GFW Amped Content as a pay per view ("PPV") show on July 19, 2017 and promoted a second PPV that was to air on August 11, 2017, prior to the air date on Fight Network. *Id.* at ¶ 45-47. Defendants aired a third PPV of the Amped Content on September 15, 2017, and a fourth PPV containing Amped Content on October 13, 2017. *Id.* at ¶ 49-50.

In October of 2017, Anthem Wrestling launched a new subscription service called "Global Wrestling Network," which features wrestling-related content. *Id.* at ¶ 53. Plaintiffs assert that "Global Wrestling Network" is abbreviated to GWN and that it is similar to Global

4

Force Wrestling and GFW and is used with a green that is similar to one used by GFW. *Id.* at ¶ 55.

It became clear the merger was not going to work for various reasons and Mr. Jarrett was terminated as Anthem Wrestling's Chief Creative Officer at the end of October, 2017. *Id.* at ¶ 42-43.

A final PPV containing Amped Content aired on December 8, 2017. *Id.* at ¶ 50. Plaintiffs allege that Defendants continue to market Amped Content as DVD's, PPV, premium television, streaming, and other viewing options on a world-wide scale. *Id.* at ¶ 51-52. Plaintiff claims that the promotional video and product packaging for 3 of the 4 GFW Amped PPVs contain Mr. Jarrett's image on the cover. *Id.* at ¶ 58. Plaintiffs also assert that they own federal trademarks for GLOBAL FORCE WRESTLING and GFW for wrestling-related goods and services and that Defendants placed these marks on the Amped Content. *Id.* at ¶ 18-19, 57. Plaintiffs allege that they did not get paid for the use of the Amped Content *Id.* at. ¶ 44.

## ARGUMENT

### I.     STANDARD OF REVIEW

Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) when it fails to state a claim upon which relief can be granted. Rules 8(a) and 12(b)(6) require that a complaint articulate a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To survive a motion to dismiss pursuant to Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim has facial plausibility only "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

A plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. Although the Court must accept as true all factual allegations made in the Complaint, it "need not accept as a true legal conclusions or unwarranted factual inferences." *Koffmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). Applying these standards to the case at bar, Plaintiff's claims must be dismissed in their entirety.

## ARGUMENT

**II.     PLAINTIFFS' CLAIM OF COPYRIGHT INFRINGEMENT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT PROPERLY ALLEGED THE REGISTRATION OF ITS COPYRIGHT.**

Plaintiffs allege on July 24, August 21, and October 23, 2015, at the Orleans Arena in Las Vegas, Nevada, GFE, under the **GLOBAL FORCE WRESTLING** and **GFW** trademarks, produced approximately 16 hours of original wrestling programming to market to television and/or pay-per-view markets. The collective content was called "GFW AMPED" and featured completely original content owned solely by GFE. (FAC at ¶ 21.) Plaintiffs go on to allege that GFE filed applications for federal copyright registration for each of the 16 one-hour Amped videos. (Comp. at 23.) Plaintiffs did not attach their copyright registrations or even copyright applications. Plaintiffs did not state the date they obtained federal copyright registration, whether they paid the requisite fee, or made the requisite deposit copy, or whether they obtained any sort

6

Case 3:18-cv-00749   Document 27   Filed 11/01/18   Page 6 of 16 PageID #: 193

of answer from the copyright office. Plaintiffs' allegations are simply not sufficient to state of claim of copyright infringement in this district.

The Copyright Act at 17 U.S.C.A. §411(a) provides that, with certain exceptions, no civil action for infringement of a copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made "in accordance with this title." Some courts have adopted the view that a copyright is not registered until the Copyright Office actually approves or rejects the application. Other courts have held that the mere receipt by the Copyright Office of the copyright application deposit and fee is sufficient for purposes of bringing an infringement action. The first of these interpretations has been dubbed the "registration approach," the second the "application approach." This court, along with other district courts in this circuit who have addressed this issue, have adopted the registration approach. *Schenck v. Orosz*, No. 3:13-cv-0294, 2013 WL5963557, at *7 (M.D. Tenn. Nov. 7, 2013) citing *Specific Software*, 615 F. Supp. 2d at 716 ("Plainly, Congress intended a scheme in which, before an entity could sue on a claim of copyright infringement, the Copyright Office would be entitled to pass, in an essentially non-binding manner, on the vitality of the copyright."). *See also TeeVee Toons, Inc. v. Overature Records*, 501F. Supp. 2d 964, 967-68 (E.D. Mich. 2007); *Hawaiian Village Computer Inc. v. Print Mgmt Partners, Inc.*, 501 F. Supp. 2d 951 (E.D. Mich. 2007); *Ripple Junction Design Co. v. Olaes Enters.*, No. 1:05-CV-43, 2005 WL2206220 at *3 (S.D. Ohio Sept 8, 2005).

Accordingly, this Court and other courts in this circuit have held that the Plaintiffs must have registered their copyrights or been refused registration before they can maintain a suit for copyright infringement. Plaintiffs have not alleged that they have obtained registration or been refused registration in their Complaint, accordingly these allegations are insufficient to state a

claim for copyright infringement. Moreover, Plaintiffs have not alleged that they obtained federal copyright registration prior to instigating this suit. As noted in the *Derminer v. Kramer*, 386 F. Supp. 2d 905, ___ (E.D. Mich. 2005), where the plaintiff does not allege a date of filing that precedes the date of institution of a lawsuit, the allegations are insufficient. Similarly, where the Plaintiff fails to allege that he included a filing fee with his application, the claim should be dismissed. *See Diaz v. Mandeville*, 46 USPQ 2d, 1862, 1997 WL907912 (E.D. Mich. 1997). Because Plaintiffs' allegations with regard to registering their copyrights with the U.S. Copyright Office are wholly insufficient, Plaintiffs' copyright claims must be dismissed on this basis.

### III. PLAINTIFFS' ALLEGATIONS OF A VIOLATION OF TENNESSEE PERSONAL RIGHTS PROTECTION ACT MUST BE DISMISSED BECAUSE PLAINTIFF HAS LICENSED THE USE OF HIS IMAGE AND LIKENESS TO DEFENDANTS

Plaintiffs' allegations under the Tennessee Personal Rights Protection Act are based in assertions that Defendants unlawfully used his image or likeness in the Amped Content that it sold through various marketing channels. These allegations fail however because in order to prevail under the Tennessee Personal Rights Protection Act, Plaintiffs must establish that the use of Jeff Jarrett's image and likeness were "without his prior consent." Tenn. Code Ann. 47-25-1105(a).

Plaintiffs cannot make the showing that Defendants' alleged use was unauthorized because Mr. Jarrett has previously authorized Defendants in writing to use his image and likeness in video wrestling content as well as authorized the use of his name as a trademark. In fact, as a matter of public record,[3] Defendant Anthem Wrestling[4] owns the trademark **JEFF**

---

[3] This Court is permitted to consider facts that are of public record on a motion to dismiss without converting it to a motion for summary judgment. *Commercial Money Center, Inc. v. Illinois Union Insurance Co.*, 508 F.3d 327, 336 (6th Cir.2007).

8

Case 3:18-cv-00749 Document 27 Filed 11/01/18 Page 8 of 16 PageID #: 195

**JARRETT**, Reg. No. 3269268, for "[t]oy action figures and accessories therefore" in International Class 28 and for "entertainment services, namely wrestling exhibits and performances by professional wrestler and entertainment, providing wrestling news and information via a global computer network" in International Class 41. Defendants obtained this trademark with Mr. Jarrett's full knowledge and consent. A copy of this trademark is attached to Defendants' Motion as **Exhibit A.** In fact, he granted Defendants his express written consent in order for Defendants to obtain the trademark in his name. *See* **Exhibit B.**

In light of the fact that Jeff Jarrett has expressly authorized the use of his image and likeness as a trademark and Defendants own that trademark, he cannot state a claim for misappropriation of his image and likeness and this claim must be dismissed.

IV. **PLAINTIFFS CANNOT STATE CLAIMS FOR COPYRIGHT INFRINGMENT AND ITS VARIOUS TRADEMARK INFRINGEMENT CLAIMS AS A MATTER OF LAW BECAUSE PLAINTIFFS LICENSED THE USE OF THE AMPED CONTENT AND THEIR TRADEMARKS FOR USE BY ANTHEM WRESTLING.**

Plaintiffs have alleged one claim of copyright infringement (Count I) based on Defendants' alleged use and marketing of the Amped Content and numerous claims rooted in the allegation that Defendants have wrongfully used Plaintiffs' trademarks on the Amped Content (Counts III – X).[5] None of these claims are sustainable as a matter of law because Defendants had an implied license for all such conduct about which Plaintiffs now complain.

---

[4] The **JEFF JARRETT** mark was originally owned by TNA Entertainment and then assigned to Defendant Anthem Wrestling when Anthem Wrestling acquired that entity. The assignment was properly recorded at the USPTO and is publically available as a part of the file for the mark. *See* **Exhibit C**.

[5] The claims that are based on Plaintiffs' allegations that Defendants have wrongfully used their trademarks on the Amped Content are Count III, Federal and State Trademark Infringement; Court IV Trade Name Infringement; Count V, Federal Trademark Counterfeiting in Violation of the Lanham Act; Count VI, Federal Unfair Competition; Count VII, False Designation of Origin; Count VIII, Unfair Competition under Tennessee Law; Count IX, Common Law Unjust Enrichment; Count X, Tennessee Consumer Protection Act Violations.

Implied licenses can arise in both the copyright and trademark context. *See Johnson v. Jones,* 149 F.3d 494, 501 (6th Cir.1998*)* and *Big Cola Corp. v. World Bottling Co., Ltd.*, 134 F.2d 718, 721 (6th Cir. 1943). An "implied license" is an unwritten license to use a work that the court infers from the circumstances and from the conduct between the parties. *See Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 398–99 (6th Cir.2007). The existence of an implied license for the use of creative content or trademarks precludes a suit for infringement. *See e.g. Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir.1998) and *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 1007 (W.D. Ky. 2017) (implied license is affirmative defense to trademark infringement).

The key question is whether the facts and circumstances demonstrate that the intellectual property owner intended that the intellectual property be used in the manner in which it was used. *See e.g. Melanie Howard Music, Inc. v. Warner Bros*. Records, Inc., 2009 WL 3784611 at *6 (M.D. Tenn. Nov.10, 2009) (quoting *Johnson*, 149 F.3d at 502). The test is an objective one. *L.F.P. IP., Inc. v. Hustler Cincinnati, Inc*., No. 1:09CV0913 WOB, 2011 WL 5024356, at *6 (S.D. Ohio Oct. 20, 2011), *aff'd sub nom. L.F.P.IP., LLC v. Hustler Cincinnati, Inc*., 533 F. App'x 615 (6th Cir. 2013).

An implied license for copyrighted material arises where the following three element test is satisfied: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requester copy and distribute it." *Lulirama Ltd., Inc. v. Axcess Broad. Serv.,* 128 F.3d 872, 879 (5th Cir.1997) (quoting *IAE, Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir.1996)). In other words, where the objective evidence leads to the conclusion that the copyright owner intended the defendant to use the copyrighted work, the copyright owner should

not later be able to sue for copyright infringement for that use. *Mahavisno v. Compendia Bioscience, Inc*., 164 F. Supp. 3d 964, 968–69 (E.D. Mich. 2016). A claim of an implied license for trademarks requires basically the same analysis—an implied license exists where the conduct of the parties demonstrates that that is what was intended. *Deere & Company v.FIMCO Inc*., 239 F.Supp.3d 964, 1007 (W.D. Ky 2017).

*Mahavisno* has facts similar to this case. In *Mahavisno*, the plaintiff provided the defendant with source code for software based on the defendant's promise that it would give him an ownership interest in its promising startup company, along with a salary and bonus once his visa was modified. 164 F.Supp. 3d at 969. The defendant failed to give him any of these things so he sued for copyright infringement for the defendant's use of his source code. Applying the three element test, the *Mahavisno* court concluded that the first element was established because the Plaintiff did not dispute that defendant asked him for the source code. *Id.* The second element was satisfied because the plaintiff delivered the source code in response to the defendant's request. *Id.* The third element was met because the plaintiff testified that he created his copyrighted software code and delivered it to defendant so that it could use and distribute the code. *Id.* Because the three elements of the test were met, the court held that the plaintiff had granted defendant an implied license, which precluded his infringement claims. *Id.*

Moreover, the Mahavisno court went on to hold that the license was irrevocable because it was supported by consideration—defendant's promise to give him an ownership interest in the company. *Id.*

In the case at bar, Plaintiffs have alleged that in October of 2016, Anthem Sports initiated merger discussions with Plaintiffs in which GFE would merge into Anthem Sports in exchange for membership and equity in Anthem Sports. In January of 2017, Anthem Wrestling hired Mr.

Jarrett as a consultant. While working as a consultant for Anthem Wrestling, Mr. Jarrett provided it with the only set of masters for the 16-one-hour episodes of the Amped Content. Shortly thereafter, Jarrett became Chief Creative Officer of Anthem Sports, with responsibility for all wrestling operations and "overall responsibility and full authority" for the company's content and programming of all types. He was to draw a large salary and obtain an equity interest in the company upon completion of the merger. He alleges that Defendant Anthem Sports then publically announced that Jarrett would join Anthem Wrestling as a member of its board of managers, equity owner, and Chief Creative Officer. Under his watch as Chief Creative Officer in charge of all programming and content, Anthem Sports allegedly produced the GFW Amped Content as a pay per view ("PPV") which aired five times--four times while Jarrett was still at the helm as Chief Creative Officer. Likewise, the use of Plaintiffs' trademarks on the Amped Content and the selection and use of the phrase "Global Wrestling Network" was all done on Jarrett's watch as the individual with ultimate responsibility for these decisions. Under these circumstances, there can be no doubt that Jarrett provided the content at the request of Defendant Anthem Wrestling and that he intended that Anthem Wrestling use and distribute the content, using Plaintiffs' trademarks. Moreover, because Plaintiff Jarrett granted this license in exchange for his salary and the promise of the anticipated merger, it is supported by consideration and is irrevocable.

Not only does the objective allegations of Plaintiffs establish that there was an implied license for Defendants' alleged conduct, Jarrett has admitted in sworn filings at the United States Patent and Trademark Office ("USPTO") that the use of the Amped Content and trademarks about which he now complains was *use by a licensee*. When filing the publically available statement of use ("SOU") at the USPTO in March of 2018, for the mark **GFW**, Jarrett swore

under penalty of perjury that Global Force Wrestling or a "related company or licensee"[6] used the mark GFW on DVDs in commerce on August 11, 2017. *See* **Exhibit D** to Defendants' Motion. The filing of this Statement of Use allowed Global Force Wrestling, LLC (a defunct entity) to obtain the federal registration for this mark. To substantiate his claim that Global Force Wrestling was entitled to the registration for use on DVDs, Mr. Jarrett filed the following specimen:



This is the very same content and very same airing (on August 11, 2017) of it that Mr. Jarrett claims in this action is copyright and trademark infringement committed by Defendants.

---

[6] Under the Lanham Act, a licensee is known as a "related party" or "related company." This does not denote corporate ownership or affiliation, but only that the "related company is a controlled licensee of the mark." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:38 (5th ed. 2017). Two firms have a "related company" relationship in the trademark sense so long as they form the parties of a valid licensing relationship. *Id.* at § 18:51.

*See* FAC at ¶ 47 and Exhibit 4. Yet, under penalty of perjury, he swore that this very same use was use that inured to his benefit--in other words--use by a licensee. This SOU is a sworn admission that Defendant Anthem Wrestling's alleged use of the Amped Content and GFW trademarks was as a valid licensee.

Because Defendants had a valid license for all acts complained of in Counts I, III-X, those counts should be dismissed for failure to state a claim.

## V. THIS COURT LACKS SUBJECT MATTER JURISDICTON OVER PLAINTIFFS' CONVERSION CLAIM.

As set forth above, Plaintiffs have not stated a claim for copyright infringement because they have not properly alleged that they registered the Amped Content prior to bringing suit in this case. Similarly, they have not stated a claim for copyright infringement because Defendants' alleged use of the Amped Content about which they complain was done pursuant to an irrevocable license. For this same reason, Counts III through X should be dismissed because those claims are all based on allegations that Defendants improperly used the marks GFW, Global Force Wrestling, and Global Wrestling Network on the Amped Content. Because it is indisputable that Plaintiff Jarrett participated in, authorized, and licensed the use of those marks by Defendants (as well as authorized the use of his image and likeness) as the employee in charge of Amped Wrestling's content and its marketing, all of the trademark-related causes of action must be dismissed for failure to state a claim. As such, this leaves only Plaintiffs' state law claim for conversion.

After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims. *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996), amended on denial of reh'g, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998)(compiling cases, citations omitted). The presumption that a 12(b)(6) dismissal of the

touchstone claims precludes the exercise of supplemental jurisdiction over any remaining claims can be overcome only in unusual circumstances. *Id.* Defendants assert that there are no unusual circumstances that would preclude Plaintiffs' common law conversion claim from being resolved in state court and respectfully request the dismissal of the remainder of the case on this basis.

## CONCLUSION

For the foregoing reasons, Defendants request that Plaintiffs' Complaint be dismissed in its entirety.

Dated this 1st day of November, 2018.

                          Respectfully submitted,

                          **BASS, BERRY & SIMS PLC**

By: /s/ *Paige W. Mills*
.      Paige W. Mills (TN #016218)
       150 Third Avenue So, Suite 2800
       Nashville, TN 37201
       (615)742-6200
       pmills@bassberry.com

*Attorneys for Anthem Sports & Entertainment Corp. and Anthem Wrestling Exhibitions, LLC*

## CERTIFICATE OF SERVICE

   I hereby certify that on November 1, 2018, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

Samuel F. Miller
Nicholas R. Valenti
A. Grace Van Dyke James
Miller Legal Partners, PLLC
Fifth Third Center – Suite 2000
424 Church Street
Nashville, TN 37219
MillerLegalPartners.com

                /s/ *Paige W. Mills*