**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **GLOBAL FORCE** | ) | |
| **ENTERTAINMENT, INC. and** | ) | |
| **JEFFREY JARRETT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 3:18-cv-00749** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **ANTHEM SPORTS & ENTERTAINMENT** | ) | **MAGISTRATE JUDGE BROWN** |
| **CORP. and ANTHEM WRESTLING** | ) | **JURY DEMAND** |
| **EXHIBITIONS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### SECOND AMENDED COMPLAINT

---

Plaintiffs Global Force Entertainment, Inc. ("GFE") and Jeffrey Jarrett (collectively "Plaintiffs"), for their Second Amended Complaint against Defendants Anthem Sports & Entertainment Corp. and Anthem Wrestling Exhibitions, LLC (collectively "Defendants") state as follows:

### I.  THE PARTIES

1.  GFE is a Tennessee corporation having its principal place of business in Goodlettsville, Tennessee.

2.  Mr. Jarrett is a Tennessee resident.

3.  Upon information and belief, Defendant Anthem Sports & Entertainment Corp. ("Anthem Sports") is incorporated and has its principal place of business in Ontario, Canada. Defendants' registered agent is Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4.     Upon information and belief, Defendant Anthem Wrestling Exhibitions, LLC ("Anthem Wrestling") is a wholly-owned subsidiary of Anthem Sports and is a Delaware limited liability company having its principal place of business in Toronto, Canada. Defendants' registered agent is CT Corporation Systems, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

5.     Upon information and belief, Anthem Sports and Anthem Wrestling share common ownership, executives, lawyers, office space, employees, equipment, and physical locations. Upon information and belief, Anthem Sports and Anthem Wrestling operate under common and/or joint leadership such that they focus as one unitary entity.

## II.     NATURE OF ACTION

6.     This is an action for (a) copyright infringement under the Copyright Act; (b) violations of the Tennessee Personal Rights Protection Act; (c) trademark infringement, unfair competition, and false designation of origin under the Lanham Act; (d) unfair competition under Tennessee law; (e) violations of the Tennessee Consumer Protection Act; and (f) tortious interference under Tennessee law.

## III.     JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action under 15 U.S.C. §§ 1119, 1121, and 28 U.S.C. § 1338 in that this case arises under Lanham Act; 28 U.S.C. § 1338 in that this case arises under the Copyright Act; 28 U.S.C. § 1331 as it involves a federal question; and 28 U.S.C. § 2201 in that it involves a declaratory judgment.

8.     This Court has subject matter jurisdiction over the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the Lanham Act.

9.     This Court has supplemental jurisdiction over the claims that arise under Tennessee law pursuant to 28 U.S.C. § 1367(a) because they are substantially related to the claims that arise under the Lanham Act of the United States. Furthermore, this Court has supplemental jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

10.     Further and in the alternative, this Court has jurisdiction over all claims pursuant to 28 U.S.C. § 1332. Defendant Anthem Sports is domiciled in Ontario, Canada. Defendant Anthem Wrestling is domiciled in Delaware and Ontario, Canada. Plaintiffs are domiciled in Tennessee. Plaintiffs are completely diverse from Defendants and the amount in controversy exceeds $75,000.

11.     This Court has general personal jurisdiction over Defendants based on their continuous and systematic minimum contacts with residents of Tennessee through the distribution and sale of Defendants' products, events, and services in Tennessee, and Defendants' representatives' promotion and marketing activities in Tennessee. This Court also has specific personal jurisdiction over Defendants based on their purposeful direction of promotional and advertising activities and sales of its products, events, and services to residents and customers in Tennessee. Additionally, this Court has personal jurisdiction under TENN. CODE ANN. § 20-2-201 *et seq*., because (1) Defendants have transacted business in Tennessee; (2) the tortious acts or omissions occurred in Tennessee; (3) the damages occurred in Tennessee to corporation with a principal place of business in Tennessee; and (4) jurisdiction based on Defendants' contacts with Tennessee (including, but not limited to, sales of products) is not inconsistent with the Constitution of the State of Tennessee or the Constitution of the United States.

12.     Venue is proper in the Court under 28 U.S.C. § 1391(b) and § 1391(c), and because Defendants are subject to personal jurisdiction pursuant to Tennessee's long arm statute, TENN. CODE ANN. § 20-2-201 *et seq*.

## IV.     THE CONTROVERSY

### A.     PLAINTIFFS' HISTORY, TRADEMARKS, AND COPYRIGHTS

13.     Mr. Jarrett is a famous wrestler from a famous wrestling family. Following his grandmother's successful business as a promoter of wrestling matches and co-owner of a regional wrestling promotion, Mr. Jarrett began his career in his father's Continental Wrestling Association in 1986. Mr. Jarrett first came to prominence upon debuting in 1992 in the World Wrestling Federation (the "WWF"), which is now World Wrestling Entertainment, Inc. (known commonly was the WWE). Over the next nine years, he alternated between the WWF and its main competitor, World Championship Wrestling ("WCW").

14.     After WCW was purchased by the WWF in 2001, Mr. Jarrett joined the upstart World Wrestling All-Stars ("WWA") promotion. In 2002, Mr. Jarrett and his father together founded NWA:TNA (now known as Impact Wrestling).

15.     Mr. Jarrett has had seventy-seven (77) championship reigns throughout his career. He is a seventeen-time world champion, having won the NWA World Heavyweight Championship six times, the WCW World Heavyweight Championship four times, the WWA World Heavyweight Championship twice, the USWA Unified World Heavyweight Championship three times, and the AAA Mega Championship twice.

16.     Mr. Jarrett was inducted into the TNA Hall of Fame in 2015 and the WWE Hall of Fame in 2018.

17.     After departing the TNA, Mr. Jarrett formed Global Force Entertainment, Inc.

("GFE") in 2014 for the purpose of promoting wrestling events and creating original wrestling programming for pay-per-view and television markets.

18.     GFE operates under and is the owner of the "Global Force Wrestling" brand.

19.     GFE owns the trademark and associated U.S. Registration No. 5,392,147 for GLOBAL FORCE WRESTLING for use in connection with (1) posters and photographs; (2) insulated containers for beverage cans for domestic use; (3) clothing, including, but not limited to, t-shirts, bandanas and hats; (4) streaming of audio and video material on the Internet; and (5) entertainment services, including, but not limited to, wrestling exhibitions and performances by professional wrestlers and entertainers.

20.     GFE also owns the trademark and associated U.S. Registration No. 5,453,775 for GFW for use in connection with (1) posters and photographs; (2) insulated containers for beverage cans for domestic use; (3) clothing, including, but not limited to, t-shirts, bandanas and hats; (4) streaming of audio and video material on the Internet; and (5) entertainment services, including, but not limited to, wrestling exhibitions and performances by professional wrestlers and entertainers.

21.     GFE also uses in interstate commerce, including, but not limited to, on its website, the Global Force Wrestling logo and GFW logo with a distinctive green color as shown below (background not claimed):

 

22. On July 24, August 21, and October 23, 2015, at the Orleans Arena in Las Vegas, Nevada, GFE, under the GLOBAL FORCE WRESTLING and GFW trademarks, produced approximately sixteen (16) hours of original wrestling programming to market to television and/or pay-per-view markets. The collective content was called "GFW Amped" and featured completely original content owned solely by GFE.

23. GFE developed the GFW Amped characters, scripts, and action sequences, and coordinated the music, commentary, set design, and other production aspects.

24. GFE filed applications for federal copyright registration for each of the 16 one-hour GFW Amped videos on August 9, 2018, before the filing of this lawsuit. (Dkt. 1, Copyright Application Filing Receipts attached hereto as Exhibit A and in the record at Dkt. 9-1).

25. GFE, as part of its applications for federal copyright registrations for each of the 16 one-hour GFW Amped videos, paid the required filing fees.

26. The last remaining step in the registration process is submission of deposit copies, which GFE cannot provide to the Copyright Office due to Defendants' unlawful possession and/or deletion of the only master recordings of the 16 one-hour GFW Amped videos.

27. Defendants admit that the master recordings were deleted while in their custody and no longer exist.

28. Plaintiffs are currently, and at all relevant times have been, the sole owners of all right, title, and interest in and to the copyrights in the GFW Amped works.

29. GFW Amped features performance appearances by Mr. Jarrett.

30. The value of each of the 16 one-hour GFW Amped master recordings may exceed $300,000 per recording.

## B. DEFENDANTS' HISTORY WITH PROFESSIONAL WRESTLING

31.     Upon information and belief, Anthem Sports, then named Anthem Media Group, Inc., was formed in 2010 by Leonard Asper, through its acquisition of a majority stake in Fight Network.

32.     Fight Network is an international English language television channel that broadcasts programming related to mixed martial arts, boxing, kickboxing, and professional wrestling.

33.     Fight Network is available via broadcast in countries throughout the world including, but not limited to, Canada, United States, Portugal, Belgium, Angola, Mozambique, Turkey, Bosnia, Serbia, Montenegro, and Italy, as well as regionally in the Middle East and North Africa.

34.     Upon information and belief, Fight Network is available to over 1.5 million subscribers in the United States alone.

35.     Upon information and belief, Fight Network also is available digitally via streaming service worldwide on devices such as Apple TV, Roku, computers, and tablets.

36.     Upon information and belief, in or around October 2016, Anthem Sports invested in the TNA professional wresting company, which has since been rebranded as IMPACT! Wrestling.

37.     Upon information and belief, on or about December 23, 2016, Anthem Sports formed Anthem Wrestling.

38.     Upon information and belief, on or about January 4, 2017, Anthem Sports acquired a majority stake in TNA under its subsidiary Anthem Wrestling.

**C.     THE RELATIONSHIP BETWEEN PLAINTIFFS AND DEFENDANTS**

39.     In or around October 2016, Anthem Sports initiated discussions with Plaintiffs related to merging with GFE in exchange for membership and equity in Anthem Sports. These discussions also concerned hiring Mr. Jarrett as Chief Creative Officer for the wrestling portion of Anthem Sports.

40.     In conjunction with the merger and employment discussions, Jeff Jarrett and Anthem Sports executed a certain agreement on December 9, 2016, a true and correct copy of which was filed under seal as Exhibit 1 to the First Amended Complaint and is in the record at Dkts. 15-1 and 17.  Plaintiffs' claims in this lawsuit are not brought under that agreement.  That agreement is simply background for the relationships between the parties.

41.     In or around January 2017, Anthem Wrestling retained Mr. Jarrett as a consultant.

42.     In or around January 2017, Mr. Jarrett provided the only set of masters for the 16 one-hour episodes of GFW Amped content to Defendants.  Defendants continue to have the only copy of the masters of the GFW Amped content in their possession.

43.     In or around May 2017, Anthem Wrestling and Mr. Jarrett signed a term sheet regarding Mr. Jarrett's employment as the Chief Creative Officer of Anthem Wrestling and the merger to be completed in which Anthem Wrestling would acquire GFE.  A true and correct copy of the term sheet was filed under seal as Exhibit 2 to the First Amended Complaint and is in the record at Dkts. 15-2 and 18.

44.     Page 5 of the term sheet makes clear that GFE owns all GFW Amped content.

45.     During the build up to Anthem Wrestling's Slammiversary pay-per-view event in June 2017, Anthem Wrestling publicly announced that it had entered into an agreement to acquire GFE.

8

46.     In the press release announcing the agreement, Anthem Wrestling and Anthem Sports stated in pertinent part:

> **IMPACT Wrestling Acquires Global Force Wrestling**
>
> NASHVILLE | TORONTO – Anthem Wrestling Exhibitions LLC, a subsidiary of Anthem Sports & Entertainment Corp. and parent company of IMPACT Wrestling, announced today that it has entered into an agreement to acquire Global Force Entertainment, LLC d/b/a Global Force Wrestling.
>
> Jeff Jarrett, the founder of both IMPACT Wrestling and Global Force Entertainment, will join Anthem Wrestling Exhibitions as a member of its board of managers, equity owner and Chief Creative Officer.
>
> "We are thrilled to be joining forces with Anthem as a partner to build the business," said Karen Jarrett. "This partnership will be complementary of our strengths and bolster our capabilities to grow the IMPACT Wrestling brand. Ed Nordholm as President and Jeff Jarrett as Chief Creative Officer make a great tag team"
>
> "We are excited by the progress we have made with IMPACT Wrestling since acquiring the business in January," said Ed Nordholm, president of Anthem Wrestling Exhibitions. "Jeff and his team have been instrumental in this success and we are pleased that we have reached an agreement on the basis of which we can combine our businesses to continue to grow. *Slammiversary* XV will be a fitting occasion to bring the promotions together and merge the titles under the new IMPACT combined belts. By combining our resources and talent, we can produce the best product for our global audience."

47.     Notwithstanding the wide-spread publicity for the proposed merger, Anthem Wrestling terminated Mr. Jarrett's employment in October 2017.

48.     Anthem Wrestling and GFE never completed the merger contemplated in the term sheet.

49.     Anthem Wrestling is not currently providing any entertainment services, namely wrestling exhibits and performances by a professional wrestler and entertainer, under Mr. Jarrett's name.

50.     Anthem Wrestling is not providing wrestling news and information via a global computer network under Mr. Jarrett's name.

51.     Anthem Wrestling has no intent to re-hire Mr. Jarrett.

9

### D. DEFENDANTS' UNAUTHORIZED USES OF COPYRIGHTED CONTENT AND CONFUSINGLY SIMILAR TRADEMARKS

52.     Even though Anthem Wrestling and GFE did not merge, and despite Anthem Wrestling's acknowledgement of GFE's ownership of all GFW Amped content, Defendants reproduced, distributed, publicly displayed, offered for sale, and sold the GFW Amped content without providing any compensation or royalties to GFE or Mr. Jarrett.

53.     Defendants first promoted the GFW Amped content as a four-part pay-per-view on or about July 19, 2017 (the "Amped PPV").

54.     Defendants promoted and continue to promote the Amped PPV on the Fight Network website at http://fightnetwork.com/news/6614609:gfw-amped-anthology-4-part-series-airs-on-pay-per-view-aug-11/, as shown in part below:



A true and correct copy of a screen capture of the full page was attached to the First Amended Complaint as Exhibit 3 and is in the record at Dkt. 15-3.

55.     On August 11, 2017, Defendants aired "GFW Amped Anthology – Part 1" as a part of their pay-per-view "One Night Only" series, which contained material from the GFW Amped content.

56.     On September 15, 2017, Defendants aired "GFW Amped Anthology – Part 2" as a part of their pay-per-view "One Night Only" series, which contained material from the GFW Amped content.

57.     On October 13, 2017, Defendants aired "GFW Amped Anthology – Part 3" as a part of their pay-per-view "One Night Only" series, which contained material from the GFW Amped content.

58.     On December 8, 2017, Defendants aired "GFW Amped Anthology – Part 4" as a part of their pay-per-view "One Night Only" series, which contained material from the GFW Amped content.

59.     Upon information and belief, Defendants continue to monetize the GFW Amped content as pay-per-view, premium television, streaming, and other viewing options on a worldwide scale.

60.     Anthem Wrestling has sold and continues to sell DVD copies of the GFW Amped content on its website www.shopimpact.com and other online retail outlets. A true and correct copy of a screen capture from the website was attached to the First Amended Complaint as Exhibit 4 and is in the record at Dkt. 15-4.

61.     In or around October 2017, Defendants launched a new subscription streaming service known as the Global Wrestling Network, which features archive content from TNA and/or IMPACT! as well as footage from other providers.

62.     The Global Wrestling Network operates under both the Global Wrestling Network name and GWN, which is similar to Global Force Wrestling and GFW.

63.     The logo for the Global Wrestling Network contains a green color identical or nearly identical to the green color in GFE's logo as shown below:

| Plaintiff Global Force Wrestling, Inc. | Defendants' Global Wrestling Network |
|---|---|
|  | |

64.     Defendants are offering the GFW Amped content to subscribers through the Global Wrestling Network. A true and correct copy of a screen capture from the Global Wrestling Network was attached to the First Amended Complaint as Exhibit 5 and is in the record at Dkt. 15-5.

65.     Defendants' unauthorized reproductions of the GFW Amped content feature both of Plaintiffs' registered trademarks, including on the packaging and in conjunction with online sales.

66. Both the promotional video and the product packaging for three of the four "GFW Amped Anthology" discs display a prominent image of Mr. Jarrett on the cover. True and correct copies of images of the products' packaging is shown in Dkt. 15-4.

67. Defendants do not have a license to use, reproduce, distribute, and/or publicly display the GFW Amped content.

68. Defendants do not have a license to use, reproduce, distribute, and/or publicly display GFE's trademarks in word or logo format.

69. Defendants do not have a license to use, reproduce, distribute, and/or publicly display Mr. Jarrett's name or image in connection with the GFW Amped content.

### E. DEFENDANTS' DISCOVERY RESPONSES

70. As a direct and proximate result of Defendants' intentional actions and statements, Plaintiffs have suffered irreparable harm and loss of goodwill.

71. Plaintiffs hand-served requests for production upon Defendants immediately following the case management conference on October 31, 2018.

72. Defendants responded to the requests on November 30, 2018. A true and correct copy of the responses to the requests for production are attached hereto as Exhibit B.

73. In their responses, Defendants admitted that they destroyed the only copy of Plaintiffs' copyrighted master recordings that are at issue in this case.

74. The destruction of the master recordings was not known at the time of filing of the original Complaint or the First Amended Complaint.

### F. U.S. REGISTRATION NO. 3,269,268

75. Anthem Wrestling claims to be the owner via assignment of U.S. Registration No. 3,269,268 for JEFF JARRETT for use in connection with "toy action figures and accessories

therefor" and "Entertainment services, namely wrestling exhibits and performances by a professional wrestler and entertainer; providing wrestling news and information via a global computer network."

76. Anthem Wrestling is not currently using JEFF JARRETT in connection with "toy action figures and accessories therefor" and has no intent to resume such use.

77. Anthem Wrestling is not currently using JEFF JARRETT in connection with "Entertainment services, namely wrestling exhibits and performances by a professional wrestler and entertainer; providing wrestling news and information via a global computer network" and has no intent to resume such use.

## G. PLAINTIFFS' IRREPARABLE HARM

78. As a direct and proximate result of Defendants' intentional actions and statements, Plaintiffs have suffered irreparable harm and loss of goodwill.

79. The harm to the reputation of Plaintiffs is *per se* irreparable.

80. The harm also is irreparable because it cannot be completely remedied.

81. The harm further is irreparable because given the nature of the advertising and promoting the loss of identifiable consumers is not readily obtainable.

## V. CAUSES OF ACTION

## COUNT I

## COPYRIGHT INFRINGEMENT

## (*against all Defendants*)

82. GFE incorporates the preceding paragraphs as though fully set forth herein.

83. Defendants have violated and, upon information and belief, continue to violate GFE's exclusive rights in the GFW Amped content and the 16 associated copyrights, including, but not limited to, the right to reproduce, right to prepare and sell derivative works, and right to

vend by copying, publishing, distributing, and publicly displaying in the marketplace in this District, and in all marketplaces reached by the Internet, videos that were copied or otherwise derived from the GFW Amped content.

84. Defendants have copied, published, distributed, and publicly displayed the GFW Amped content in numerous ways, including, but not limited to, in the four-volume GFW Amped Anthology DVD series via download and/or streaming, and via pay-per-view.

85. As a direct and proximate result of Defendants' wrongful conduct, GFE has suffered and continues to suffer damages.

86. Defendants' infringement of GFE's copyrights in the GFW Amped content has been and continues to be committed willfully.

87. Defendants' actions constitute copyright infringement under 17 U.S.C. § 501.

88. GFE generally avers that all conditions precedent to its rights of recovery have occurred or been performed.

89. GFE is entitled to recover the actual damages suffered by GFE as a result of Defendants' infringement, in addition to any of Defendants' profits attributable to the infringement not taken into account in computing the actual damages.

<u>**COUNT II**</u>

**VIOLATION OF TENNESSEE PERSONAL RIGHTS PROTECTION ACT**

(***against all Defendants***)

90. Mr. Jarret incorporates the preceding paragraphs as though fully set forth herein.

91. Mr. Jarret is an internationally known two-time Hall of Fame wrestler and businessman who has a property right in his name, photograph, and likeness under TENN. CODE ANN. § 47-25-1104.

92.     Defendants have violated Mr. Jarrett's exclusive property rights in his own name, photograph, and other likeness by using his name, photograph, and likeness, as well as his video-recorded performances, in their unauthorized copying, sales, distribution, and marketing of the GFW Amped content.

93.     As a direct and proximate result of Defendants' wrongful conduct, Mr. Jarrett has suffered damages.

94.     Defendants' violation of Mr. Jarrett's right of publicity has been and continues to be committed willfully.

95.     Pursuant to TENN. CODE ANN. § 47-25-1105(a), Mr. Jarret is entitled to injunctive relief ordering seizure of the GFW Amped content from Defendants.

96.     Pursuant to TENN. CODE ANN. § 47-25-1106(b) and (c), Mr. Jarret is entitled to injunctive relief ordering impoundment and/or destruction of the unauthorized copies of the GFW Amped content and any plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which the GFW Amped content may be reproduced.

97.     Pursuant to TENN. CODE ANN. § 47-25-1106(d)(1), Mr. Jarret is entitled to recover the actual damages suffered as a result of the knowing use or infringement of his rights and any profits that are attributable to such use or infringement which are not taken into account in computing the actual damages.

<u>**COUNT III**</u>

**FEDERAL AND STATE TRADEMARK INFRINGEMENT**

(*against all Defendants*)

98.     GFE incorporates the preceding paragraphs as though fully set forth herein.

99.     Defendants' use of GFW (particularly in connection with the GFW Amped content), GLOBAL WRESTLING NETWORK, the GLOBAL WRESTING NETWORK logo,

GWN, and the GWN logo constitute infringement of GFE's exclusive rights to the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) in violation of the Lanham Act, specifically 15 U.S.C. § 1114(1) and § 1125, and of GFE's trademark rights under Tennessee law.

100.     Defendants have used in commerce a reproduction, counterfeit, copy, and/or colorable imitation of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods, including, but not limited, to the DVD and streaming copies of the Amped content, or services, on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

101.     Defendants' acts of infringement have caused GFE damages, and GFE seeks judgment pursuant to 15 U.S.C. § 1117 and Tennessee law for profits resulting from Defendants' unauthorized and infringing use of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo), or variants thereof, similar to or likely to cause confusion with the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo); for the damages sustained by GFE; for all costs necessary to remediate the infringing uses and their effects; and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

102.     Pursuant to 15 U.S.C. § 1117(b) GFE seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or GFE's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

103.     Pursuant to 15 U.S.C. § 1116 and equity, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

104. Pursuant to 15 U.S.C. § 1118 and equity, GFE is entitled to impoundment and destruction of all infringing articles.

105. GFE is further entitled to all available remedies provided by common law, including, but not limited, to temporary and permanent injunctive relief; Defendants' profits; any damages sustained by GFE; and costs.

## COUNT IV

## TRADE NAME INFRINGEMENT

### (*against all Defendants*)

106. GFE incorporate the preceding paragraphs as though fully set forth herein.

107. Defendants' acts constitute trade name infringement in violation of GFE's trade name rights at common law.

108. Defendants' acts of infringement have caused GFE damages, and GFE seeks judgment for profits resulting from Defendants' unauthorized and infringing use of GFE's trade name; for the damages sustained by GFE; for all costs necessary to remediate the infringing uses and their effects; for punitive damages; and for the costs incurred in bringing the present action.

109. Further, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## COUNT V

## FEDERAL TRADEMARK COUNTERFEITING IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1114(1)(a)

### (*against all Defendants*)

110. GFE incorporates the preceding paragraphs as though fully set forth herein.

111. Defendants' acts constitute infringement of GFE's exclusive rights to the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) in violation of the Lanham

Act, specifically 15 U.S.C. § 1114(1) and § 1125, and of GFE's trademark rights under Tennessee common law.

112.     Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods or services, on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

113.     Defendants' use of the GLOBAL FORCE WRESTLING and GFW trademarks are counterfeits of the GLOBAL FORCE WRESTLING and GFW trademarks that it registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not Defendants knew such marks were so registered.

114.     Defendants' uses of GLOBAL FORCE WRESTLING and GFW trademarks are spurious and identical with, or substantially indistinguishable from, GFE's GLOBAL FORCE WRESTLING and GFW trademarks.

115.     Defendants have infringed GFE's registered GLOBAL FORCE WRESTLING and GFW trademarks in violation of 15 U.S.C. § 1114.

116.     Defendants intentionally used the infringing marks knowing that the infringing marks are counterfeit marks as defined by 15 U.S.C. §1116.

117.     Defendants' acts of infringement have caused GFE damages, and GFE seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unauthorized and infringing use of the counterfeit marks, or variants thereof similar to or likely to cause confusion with GLOBAL FORCE WRESTLING and GFW trademarks, for the damages sustained

19

by GFE, for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

118.    GFE seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or GFE's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

119.    Pursuant to 15 U.S.C. § 1116 and equity, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

120.    Pursuant to 15 U.S.C. § 1118 and equity, GFE is entitled to impoundment and destruction of infringing articles.

121.    GFE is further entitled to all available remedies provided by common law, including, but not limited, to temporary and permanent injunctive relief; Defendants' profits; any damages sustained by GFE; and costs.

## COUNT VI

### FEDERAL STATUTORY UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

#### (*against all Defendants*)

122.    GFE incorporates the preceding paragraphs as though fully set forth herein.

123.    Defendants have used names and marks which are identical or confusingly similar to the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) with the intent to deceive the public into believing that goods and services offered or sold by Defendants are made by, approved by, sponsored by, or affiliated with GFE.

124.    Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods and services as the goods and services of, approved by, sponsored by, or affiliated with GFE, and with the intent to deceive and defraud the public.

125.    Defendants' acts constitute unfair competition and passing off, and have caused GFE damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to GFE's goodwill and reputation caused by Defendants.

126.    Defendants' acts constitute violations of 15 U.S.C. § 1125.

127.    Defendants' acts of unfair competition have caused GFE damages, and GFE seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of GFE's goods and services, for the damages sustained by GFE, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

128.    GFE further seeks judgment for three times the amount of Defendants' profits or GFE's damages, whichever is greater, due to the nature of Defendants' conduct.

129.    Pursuant to 15 U.S.C. § 1116 and equity, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

130.    Pursuant to 15 U.S.C. § 1118 and equity, GFE is entitled to impoundment and destruction of infringing articles.

## <u>COUNT VII</u>

### FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

#### (*against all Defendants*)

131.    GFE incorporates the preceding paragraphs as though fully set forth herein.

132.    Defendants have caused products and/or services to enter interstate commerce designated with variations of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo).

133.    Defendants' use of said designation and other representations constitute a false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with GFE and as to the origin, sponsorship, or approval of such goods and services by GFE.

134.    Defendants' acts are in violation of 15 U.S.C. § 1125 in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with GFE and as to the origin, sponsorship, and approval of Defendants' goods, services, and commercial activities by GFE.

135.    Defendants' acts have caused GFE damages, and GFE seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of GFE's goods and services, for the damages sustained by GFE, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

136.    GFE further seeks judgment for three times the amount of Defendants' profits or GFE's damages, whichever is greater, due to the nature of Defendants' conduct.

137.    Pursuant to 15 U.S.C. § 1116 and equity, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

138.    Pursuant to 15 U.S.C. § 1118 and equity, GFE is entitled to impoundment and destruction of infringing articles.

## COUNT VIII

## UNFAIR COMPETITION IN VIOLATION OF TENNESSEE COMMON LAW

### (*against all Defendants*)

139.    GFE incorporates the preceding paragraphs as though fully set forth herein.

140.    As alleged herein, GFE owns the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo).

141.    As alleged herein, the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) are valid and legally protectable.

142.    Defendants' infringing use of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo), and/or variants thereof similar to or likely to cause confusion with the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo), is likely to cause confusion concerning the origin of the goods and services associated with the mark.

143.    GFE and Defendants compete for a common pool of customers. As alleged herein, Defendants have engaged in unfair, deceptive, or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Tennessee common law.

144.    Through Defendants' unauthorized use of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo), and/or variants thereof similar to or likely to cause confusion with the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo), in connection with their products and services, on the Fight Network and Global Wrestling Network (both broadcast, streaming, and websites), on the IMPACT! website, and in other commerce, Defendants have committed trademark infringement, passing off, palming off,

imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

145. Defendants are liable to GFE for unfair competition under Tennessee law, because Defendants' conduct is tortious and has deprived GFE of customers and other prospects.

146. Defendants' acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase its sales, customer base, and share in the wrestling industry and/or eliminate GFE from that industry.

147. Defendants' acts as alleged herein constitute unfair competition in violation of Tennessee law.

148. Defendants' acts constituting unfair competition have caused GFE damages as alleged herein.

149. Defendants' foregoing acts constitute unfair competition and infringement of GFE's common law rights for which GFE has no adequate remedy at law.

150. Defendants' acts of unfair competition have caused GFE damages, and GFE seeks judgment for the damages sustained by GFE; for all costs necessary to remediate the unfair competition and passing off and their effects; and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

151. GFE further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or GFE's damages, whichever is greater, due to the nature of Defendants' conduct.

152. Further, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## COUNT IX

## COMMON LAW UNJUST ENRICHMENT

### (*against all Defendants*)

153.    GFE incorporates the preceding paragraphs as though fully set forth herein.

154.    Upon information and belief, Defendants' willful and knowing acts, including its use of GFE's trademarks and trade names, permitted Defendants to procure customers that it otherwise would not have been able to obtain.

155.    GFE has conferred a benefit, directly or indirectly, upon Defendants through Defendants' use of the infringing marks.

156.    Defendants have received appreciable benefits from using the infringing marks in commerce.

157.    It is inequitable for Defendants to retain the benefits of the use of the infringing marks, including, but not limited to, monetary and reputational benefits and value of GFE's trademarks.

158.    Defendants' acts have caused GFE damages such that monetary (compensatory, incidental, and punitive) and injunctive remedies are appropriate.

159.    Defendants have been unjustly enriched by virtue of its use of the infringing marks, to the detriment of GFE, as well as consumers in the marketplace.

160.    Defendants' actions have been made willfully and knowingly.

161.    Defendants' acts have caused GFE damages and unjustly enriched Defendants as alleged herein.

162.    GFE is entitled to all available remedies, including preliminary and permanent injunctive relief, damages, Defendants' profits, enhanced damages, and costs.

## COUNT X

## TENNESSEE CONSUMER PROTECTION ACT VIOLATIONS

163.    GFE incorporates the preceding paragraphs as though fully set forth herein.

164.    Defendants' statement, actions and/or omissions constitute unfair and/or deceptive practice in violation of the Tennessee Consumer Protection Act, TENN. CODE ANN. § 47-18-101 *et seq.*, including, but not limited to:

- Representing that goods or services have sponsorships, approval, characteristics, ingredients, uses, benefits or quantities that they do not have (TENN. CODE ANN. § 47-18-104(5));and

- Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods offered in such a manner that later, on the disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services (TENN. CODE ANN. § 47-18-104(21)).

165.    GFE has suffered an ascertainable loss of money and market share as a result of the use or employment by Defendants of the aforementioned unfair or deceptive acts or practices.

166.    Defendants' acts are and were willful and knowing, thus entitling GFE to all available remedies pursuant to the Tennessee Consumer Protection Act, including, but not limited to, preliminary and permanent injunctive relief; GFE's damages; Defendants' profits; treble damages; attorney fees; expenses; costs; pre-judgment and post-judgment interest; and other equitable relief.

## COUNT XI

## CONVERSION AND/OR TROVER

### *(against all Defendants)*

167.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

168.    Defendants came into possession of the only set of masters of the 16 one-hour episodes of GFW Amped.

169.  Plaintiffs are the rightful owners of the masters.

170.  Plaintiffs have made a demand for the return of the masters.

171.  Defendants have no ownership rights in the masters.

172.  Defendants are legally obligated to return the masters to Plaintiffs.

173.  Defendants refused to return the masters to Plaintiffs.

174.  Defendants defied Plaintiffs' rights in the masters by intentionally exercising dominion and control over the same.

175.  Defendants appropriated the masters for Defendants' own use and benefit.

176.  Defendants intentionally deleted, destroyed, or otherwise wrongfully disposed of the masters.

177.  Defendants knew at the time of deletion, destruction, or other disposal of the masters that they did not own the masters.

178.  Defendants' intentional invasion of Plaintiffs' possessory rights in the masters is of such a high level that it constitutes conversion.

179.  GFE is entitled to all available remedies, including damages, Defendants' profits, costs, and recovery of the value of the masters, which are valued in excess of $300,000 per each one-hour episode.

180.  GFE further seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits and/or GFE's damages, whichever is greater, due to the nature of Defendants' intentional, wanton, willful and/or malicious conduct.

## COUNT XII

## NEGLIGENCE

### *(against all Defendants)*

181.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

182.     At all times relevant, Defendants owed Plaintiffs a duty of reasonable care.

183.     A reasonable person under like circumstances would not have lost or destroyed or permitted the loss or destruction of the masters.

184.     Defendants breached the duty of reasonable care owed to Plaintiffs by losing, destroying, or otherwise disposing of the masters.

185.     Defendants' breach actually and proximately caused, and continues to cause, harm and loss to Plaintiffs.

186.     Defendants were aware of, but consciously disregarded, the substantial and unjustifiable risk of harm caused to Plaintiffs upon disposal of the masters, constituting a gross deviation from the standard of care that and ordinary person would exercise under the circumstances.

187.     GFE is entitled to all available remedies, including damages, Defendants' profits, costs, and recovery of the value of the masters, which are valued in excess of $300,000 per each one-hour episode.

188.     GFE further seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits and/or GFE's damages, whichever is greater, due to the egregious nature of Defendants' reckless conduct.

## COUNT XIII

**CANCELLATION OF THE "JEFF JARRET" TRADEMARK REGISTRATION UNDER THE LANHAM ACT, 15 U.S.C. § 1127 AND DECLARATORY JUDGMENT OF ABANDONMENT**

*(against all Defendants)*

189.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

190. Defendants terminated their business relationship with Mr. Jarrett at the end of October 2017.

191. Defendants have discontinued use of the JEFF JARRETT trademark with no legitimate intent to resume use.

192. Defendants have abandoned the JEFF JARRETT trademark.

193. Plaintiffs seek cancellation of U.S. Registration No. 3,269,268 for JEFF JARRETT for the reason of, at least, nonuse and/or abandonment with no legitimate intent to resume use.

194. Plaintiffs also seek a declaratory judgment under 28 U.S.C. § 2201 that Defendants do not own valid, existing, and enforceable trademarks rights in Mr. Jarrett's name including without limitation JEFF JARRETT.

## VI.     REQUEST FOR RELIEF

Wherefore, Plaintiffs requests the following relief:

1. Entry of judgment in favor of Plaintiffs and against Defendants as applicable and set forth in each of the above Counts;

2. Awarded Plaintiffs all relief to which they are entitled under the Lanham Act; TENN. CODE ANN. §§ 47-18-101 *et seq.* and 47-25-1100 *et seq.*; and Tennessee common law;

3. Entry of a preliminary and permanent injunction that enjoins Defendants, their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with any of the foregoing, from copying, distributing, offering for sale, selling, and displaying the GFW Amped content;

4. Entry of a preliminary and permanent injunction that enjoins Defendants, their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with any of the foregoing, from using, copying, distributing, offering for

sale, selling, and displaying the GLOBAL FORCE WRESTLING (word and logo) and GFW (word and logo) trademarks and/or any confusingly similar variants thereof including, but not limited to, Global Wrestling Network, GWN, and the GWN logo;

5.      Entry of a preliminary and permanent injunction that enjoins Defendants, their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with any of the foregoing, from using, copying, distributing, offering for sale, selling, and displaying any image or likeness of Mr. Jarrett that is not otherwise properly licensed;

6.      Entry of an order that mandates Defendant, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with any of the foregoing, shall delete and/or destroy all copies of the GFW Amped content in Defendants' possession, custody, and/or control, and all of the materials used to create such copies or stream copies, except for the masters of the GFW Amped content which shall be ordered to be returned immediately to GFE;

7.      Determination by the Court that Defendants' acts are deemed exceptional under 15 U.S.C. § 1117;

8.      Entry of an award in favor of Plaintiffs and against Defendants for monetary damages based on Defendants' profits, Plaintiffs' damages, treble damages, punitive damages, reasonable attorney fees, litigation expenses, costs, prejudgment interest, and post-judgment interest;

9.      Cancellation of U.S. Registration No. 3,269,268 for JEFF JARRETT;

10.     Entry of a declaratory judgment that Defendants do not own valid, existing, and enforceable trademarks rights in Mr. Jarrett's name including without limitation JEFF JARRETT; and

11.     Entry and award of such other and further relief the Court deems just and proper.

## VII.     JURY DEMAND

Plaintiffs request trial by jury for all issues, claims, and defenses so triable.

Dated: December 13, 2018

Respectfully submitted,

MILLER LEGAL PARTNERS PLLC

/s/ A. Grace Van Dyke James
Samuel F. Miller, TN Bar No. 22936
Nicholas R. Valenti, TN Bar No. 35420
A. Grace Van Dyke James, TN Bar No. 35667
Fifth Third Center – Suite 2000
424 Church Street
Nashville, Tennessee 37219
Phone: 615.988.9590
Facsimile: 615.988.9559
Email: smiller@millerlegalpartners.com
        nvalenti@millerlegalpartners.com
        gjames@millerlegalpartners.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December 2018, the foregoing document was filed and served via the Court's CM/ECF filing system:

Paige W. Mills
BASS, BERRY & SIMS, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Phone: (615) 742-6200
Email: pmills@bassberry.com

/s/ A. Grace Van Dyke James
A. Grace Van Dyke James