## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

GLOBAL FORCE ENTERTAINMENT, INC.   )
and  JEFFREY JARRETT,   )
  )
     Plaintiff,   )
  )
    v.   )     **No. 3:18-cv-00749**
  )
ANTHEM SPORTS & ENTERTAINMENT   )
CORP. and ANTHEM WRESTLING   )
EXHIBITIONS, LLC,   )
  )
     Defendants.   )

## MEMORANDUM OPINION

This lawsuit arose as a result of a failed merger between wrestling entities. In one corner are Global Force Entertainment, Inc. ("GFE") and Jeffrey Jarrett, who bring a number of federal and state law claims. In the other, are Anthem Sports & Entertainment, Corp. ("Anthem Sports") and Anthem Wrestling Exhibitions, LLC ("Anthem Wrestling"), who have filed a Motion to Dismiss (Doc. No. 61) the majority of those claims. Anthem Sports has also filed a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 58). Both Motions have been fully briefed by the parties (Doc. Nos. 59, 62, 70, 74, 75), and will be considered after a brief recitation of the relevant facts as they are alleged in the Second Amended Complaint ("SAC") (Doc. No. 54).

## I. Factual Background

Jarrett, a seventeen-time world wrestling champion, and World Wrestling Entertainment hall-of-famer, is a Tennessee resident. (SAC ¶¶ 15, 16). In 2014, he formed GFE for the purpose of promoting wrestling events and creating original wrestling programming for pay-per-view and television markets. (Id. ¶ 17). GFE is the owner of the "Global Force Wrestling" ("GFW") brand, and owns trademarks and associated registrations for use in connection with "(1) posters and

photographs; (2) insulated containers for beverage cans for domestic use; (3) clothing, including, but not limited to, t-shirts, bandanas and hats; (4) streaming of audio and video material on the Internet; and (5) entertainment services, including, but not limited to, wrestling exhibitions and performances by professional wrestlers and entertainers." (Id. ¶¶ 19, 20). GFE also uses a logo with a distinctive green color for GFW on its website and in interstate commerce. (Id. ¶ 21).

On July 24, August 21, and October 23, 2015, in Las Vegas, Nevada, GFE produced sixteen (16) hours of original wrestling programming to market to television and pay-per-view markets. The collective content was called "GFW Amped" and featured completely original content developed and owned solely by GFE, including appearances by Jarrett. (Id. ¶¶ 22, 23, 29). Plaintiffs believe each one-hour segment is worth $300,000 or more, and applications (with the requisite fees) were filed for federal copyright registration for each of them. (Doc. No. 25, 26, 30).

Anthem Sports was formed in 2010 when Leonard Asper acquired a majority stake in the Fight Network. Fight Network is an English language television channel that broadcasts programming related to mixed martial arts, boxing, kickboxing and professional wrestling throughout the world. It is available digitally through streaming services such as Apple TV, Roku, computers, and tablets. (Id. ¶¶ 32-35).

In October 2016, Anthem Sports approached Plaintiff about merging with GFE in exchange for membership and equity shares in Anthem Sports. The discussions also concerned hiring Jarrett as Chief Creative Officer for the wrestling portion of Anthem Sports. In conjunction with the merger and employment discussions, GFE and Anthem Sports entered into a Mutual Non-Disclosure Agreement ("NDA") on December 9, 2016. (Doc. No. 17). Several months later, on December 23, 2016, Anthem Sports formed Anthem Wrestling. (Doc. No. 54, SAC ¶ 37).

In January 2017, Anthem Wrestling retained Jarrett as a consultant.  (Id. ¶ 41).  Around this same time, Jarrett provided Defendants with the only set of masters for the sixteen, one-hour episodes of GFW Amped.  (Id. ¶ 42).  Several months later, in May 2017, Jarett and Anthem Wrestling executed a term sheet in relation to both Jarrett's employment as Chief Creative Officer of Anthem Wrestling and the merger.  Among other things, the term sheet made clear that GFE owned all of the GFW Amped content.

In anticipation of a "Slammiversary" pay-per-view event in June 2017, Anthem Wrestling issued a press release announcing the acquisition of GFE, and indicating that Jarrett would be joining Anthem Wrestling as an equity owner and member of its board of managers.  (Id. ¶ 46).  However,  Anthem and GFE never completed the merger contemplated by the term sheet, and Jarett's employment with Anthem Wrestling was terminated in October 2017.  (Id. ¶¶ 47, 51).

Despite the failed merger, "Defendants reproduced, distributed, publicly displayed, offered for sale, and sold the GFW Amped content without providing any compensation or royalties to GFE or Mr. Jarrett."  (Id. ¶ 52).  This began with Defendants promoting the GFW Amped content as a four-part pay-per-view program on July 19, 2017, and continued with the airing of that content on the Fight Network website. Thereafter, Defendants aired "GFW Amped Anthology" in four parts between August and December 2017 as part of their "One Night Only Series."  Anthem Wrestling continues to sell DVD copies of the GFW Amped content on its website, and through other online retail outlets. (Id.  ¶¶ 56-59, 60).  Additionally, Defendants launched a new subscription streaming service known as  Global Wrestling Network ("GWN") that features archived content from other predecessor wrestling entities run by Jarrett.  GWN also uses a similar logo with "a green color identical or nearly identical to the green color in GFE's logo." (Id. ¶¶ 61-68).

At some point, Defendants destroyed the only masters of the GFW Amped series that Jarrett had provided to them. This meant that Plaintiffs could not complete the trademark registration process. (Id. ¶¶ 27, 72).

Based upon the foregoing events, Plaintiffs sue Defendants for (1) copyright infringement under the Copyright Act; (2) violations of the Tennessee Personal Rights Protection Act; (3) trademark infringement, unfair competition, and false designation of origin under the Lanham Act; (4) unfair competition under Tennessee law; (5) violations of the Tennessee Consumer Protection Act; and (6) tortious interference under Tennessee law.

## II. Motion to Dismiss for Lack of Personal Jurisdiction by Anthem Sports

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts,' Walden v. Fiore, 577 U.S. 277, 283 (2014), and, thus, in order for this Court to have personal jurisdiction over Anthem Sports, Plaintiffs must show that Anthem Sports (as opposed to Anthem Wrestling) has (or had) sufficient minimum contacts with Tennessee such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts exist where a defendant purposefully avails itself of the privilege of conducting activities within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

"Personal jurisdiction maybe found either generally or specifically." Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012) (quoting Air Prods. & Controls, Inc. v. Safetech Int'1, Inc., 503 F.3d 544, 549-50 (6th Cir. 2007)). "General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant." Id. at 678-9 (citing Kerry Steel, Inc.

v. Paragon Indus., Inc., 106 F.3d 147,149 (6th Cir. 1997)). "Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." Id. Although Plaintiffs assert that both types of personal jurisdiction exist over Anthem Sports, they have established the existence of neither.[1]

## A. General Jurisdiction

In Goodyear Dunlop Tires Operations, S.A. v. Brown, 546 U.S. 915, 919 (2011), the Supreme Court held that a court may assert general jurisdiction over corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Thus, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Id. at 924. "With respect to a corporation, the place of incorporation and principal place of business are '[p]aradigm . . . bases for general jurisdiction,' and have the virtue of being unique that is, each ordinarily indicates only one place-as well as easily ascertainable.' Daimler AG v. Bauman, 134 S. Ct. 746, 759 (2014) (citation omitted). "These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." Id.

Goodyear and Daimler "wrought [a] sea change" in the law of general jurisdiction because the "continuous-and-systematic standard" that had prevailed "for decades" is no longer the standard.

---

[1] A plaintiff has the burden of showing personal jurisdiction but "that burden is 'relatively slight' where, as here, the . . . court rules without conducting an evidentiary hearing." MAG IAS Holdings, Inc. v. Schmuckle, 854 F.3d 894, 899 (6th Cir. 2017) (citing Air Prods. 503 F.3d at 549). "To defeat dismissal in this context, [the plaintiff] need make only a prima facie showing that personal jurisdiction exists." Id. Nevertheless, "[i]n response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." Miller, 694 F.3d at 678 (citing Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)).

BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1561 n.1 (2017) (Sotomayor, J., concurring in part and dissenting in part). Even though "Goodyear did not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business, . . . it is fair to say [Goodyear and Daimler] raised the bar for this type of jurisdiction." Kipp v. Ski Enter. Corp. of Wisc, Inc., 783 F.3d 695, 698 (7th Cir. 2015) (citation omitted). As a consequence, "[a]ny additional candidates [beyond the principal place of business or state of incorporation] would have to meet the stringent criteria laid out in Goodyear and Daimler, which require more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice." Id.; see Brown v. Lockheed Martin Corp., 814 F.3d 619, 626 (2d Cir. 2016) (concluding that, although plaintiff's arguments regarding general jurisdiction "might have sufficed under the more forgiving standard that prevailed in the past, [plaintiff's] contacts fail to clear the high bar set by Daimler to a state's exercise of general jurisdiction over a foreign corporation"); Patterson v. Aker Sols. Inc., 826 F.3d 231, 237 (5th Cir. 2016) (citing Goodyear and Daimler for the proposition that "[s]cholars have viewed the Court's recent personal jurisdiction decisions as part of an access-restrictive trend").

Notwithstanding the substantial narrowing of general jurisdiction by the Supreme Court, Plaintiffs raise three grounds for that type of jurisdiction in this case. None are persuasive.

First, Plaintiffs argue that "Anthem Sports reportedly maintains an office and studio in Nashville." (Doc. No. 67 at 4). The use of the word "reportedly" is telling because the only "evidence" to support this argument is a copy of a screen-shot from a press release posted on the Internet that states: "Anthem Sports & Entertainment Corp. is a global sports and entertainment media company with offices and studios in New York, Toronto, Los Angeles and Nashville." (Doc.

No. 31-1 at 2). Even if it could be assumed from this that Anthem Sports has an office in all of those places, it does not follow that there would be general jurisdiction in each. See e.g., Daimler, 571 U.S. at 158 (Sotomayor, J., concurring) ("[T]he majority holds today that Daimler is not subject to general jurisdiction in California despite its multiple offices, continuous operations, and billions of dollars' worth of sales there."); In re Packaged Seafood Prods. Antitrust Litig., 338 F. Supp. 3d 1118, 1141 (S.D. Cal. 2018) ("[T]he presence of offices in the forum state does not, by itself, render a defendant subject to general jurisdiction."); Bauer v. Nortek Glob. HVAC LLC, No. 3:14-CV-1940, 2016 WL 5724232, at *6 (M.D. Tenn. Sept. 30, 2016) (finding that company was "not at home in Tennessee" for purposes of general jurisdiction, even though it had a distribution and manufacturing facility in the state); Estate of Thompson ex rel. Thompson v. Mission Essential Pers., LLC, No. 1:11CV547, 2013 WL 6058308, at *7 (M.D.N.C. Nov. 14, 2013) (finding that fact that defendant advertised having a "major office" was not sufficient to establish general jurisdiction in that state). Besides, Defendants have submitted the Declaration of Ed Nordholm, the Executive Vice President of Anthem Sports, in which he avers that Anthem Sports (1) is incorporated under the laws of the Province of Ontario, Canada, with its primary place of business there; (2) has no business operations of its own, but instead is the parent holding company for various operating companies and brands; and (3) has not appointed an agent for service of process in Tennessee, has no employees in this state, does not own or lease property in Tennessee, and has not conducted business or marketed goods or services to resident of Tennessee. (Doc. No. 60 Nordholm Decl. ¶¶ 2-4, 11). Nordholm also avers that Anthem Wrestling, in contrast, (1) is a Delaware corporation with an office on Dickerson Pike in Nashville; (2) has approximately 15 employees and contractors that carry out its day-to-day operations; and (3) was formed to acquire the assets an entity called

TNA Entertainment, LLC after a foreclosure of loans (Id. ¶¶ 7-8). Plaintiffs have provided no evidence to dispute these allegations, even though they could have moved for jurisdictional discovery. See MAG IAS Holdings, Inc. v. Schmuckle, 854 F.3d 894, 899 (6th Cir. 2017) (stating that, in deciding a motion to dismiss for lack of personal jurisdiction, a district court may, among other things "permit discovery in aid of deciding the motion"); Telos Holdings, Inc. v. X5 Grp. AB, No. CIV. 3:08-0079, 2008 WL 1330184, at *1 (M.D. Tenn. Apr. 10, 2008) (lifting stay and granting plaintiff's motion to conduct jurisdictional discovery).

Second, Plaintiffs point to Anthem Sports' presence on the Internet and its website's accessibility by Tennessee residents as a basis for general jurisdiction. This, too, fails.

The Sixth Circuit has held that the operation of "a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction," even where the website enables the defendant to do business with residents of the forum state, because such activity does not "approximate[ ] physical presence within the state's borders." Bird v. Parsons, 289 F.3d 865, 874 (6th Cir. 2002). It has also observed, however, that

> the operation of a website may justify specific jurisdiction, if it satisfies the three factors set forth in Southern Machine [Company, v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir.1968)], namely, if the operation of the website constitutes purposeful availment, is the basis of the cause of action against the defendant, and jurisdiction over the defendant is reasonable. There is strand of law which holds that whether a court can assert specific personal jurisdiction over a website owner depends on how interactive the website is with the people in the forum state. There is another relevant strand of law dealing with whether the court can assert personal jurisdiction over defamatory publications which reach into the forum state. . . .
>
> The "operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state ... if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." Bird, 289 F.3d at 874 (internal quotations omitted). In evaluating whether the defendant's contact with the forum state constituted purposeful availment, this and other circuits have used the "Zippo [v. Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.

Pa.1997)] sliding scale" approach, which distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site. . . . Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction.

Cadle Co. v. Schlichtmann, 123 F. App'x 675, 677–78 (6th Cir. 2005).

Leaving aside Nordholm's uncontroverted declaration in which he states that "Anthem Sports' website is not interactive," and "simply has links to other websites," (Doc. No. 25, Nordholm Decl. ¶ 11), Plaintiffs do not address the "Zippo sliding scale," or even suggest that the website is interactive. Instead, they merely assert that "Anthem Sports also has a website accessible globally, including in Tennessee." (Doc. No. 67 at 4). This is not nearly enough.

Third and finally, Plaintiffs assert general jurisdiction over Anthem Sports under the alter-ego theory, which holds "a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008) (citation omitted). Whether the control is such that two ostensibly separate entities are actually one is determined by looking to the forum state's law regarding piercing the corporate veil. Id. Under Tennessee law, courts consider a number of factors in determining whether an alter ego relationship exists, including

"(1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among

9

related entities."

Gipson Mech. Contractors, Inc. v. U.A. Local 572 (AFL-CIO), 362 F. Supp. 3d 451, 459 (M.D.
Tenn. 2019) (quoting F & M Mktg. Servs., Inc. v. Christenberry Trucking & Farm, Inc., 523 S.W.3d
663, 667 (Tenn. Ct. App. 2017)).

Plaintiffs argue that Defendants are alter egos because Anthem Sports formed Anthem
Wrestling to acquire the assets of TNA Entertainment, LLC, and that "Anthem Sports has attempted
to shield itself from personal jurisdiction by forming layers of entities to do its bidding and
conducting no business in its own right while claiming it does no business whatsoever in
Tennessee." (Doc. No. 67 at 5). Plaintiffs insist "[t]his is precisely the type of avoidance liability
that the Tennessee Supreme Court has rejected" and cites Gordon v. Greenview Hospital, Inc., 300
S.W. 3d 635, 653 (Tenn. 2009) for that proposition. (Id. at 5-6). In actuality, however, the court
in Gordon found no personal jurisdiction over a Kentucky hospital where the exercise of the parent
company over the hospital was not "so extensive to warrant disregarding the presumption of
corporate separateness." 300 S.W.3d at 654. In arriving at that conclusion, it noted that "[t]he
courts are reluctant to disregard the separate existence of related corporations and thus have
consistently given substantial weight to the presumption of corporate separateness." Id. at 652. The
court also acknowledged the alter ego theory of jurisdiction but observed:

> In Tennessee, mere control of a subsidiary corporation by its parent is not sufficient
> to disregard the presumption of corporate separateness (to "pierce the corporate
> veil"). Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 790 (Tenn.
> 2006); Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo, 578 S.W.2d 625, 631
> (Tenn. 1979). To disregard the presumption, the party seeking to do so must
> demonstrate (1) that the subsidiary corporation is a sham or dummy, Elec. Power Bd.
> of Chattanooga v. St. Joseph Valley Structural Steel Corp., 691 S.W.2d 522, 526
> (Tenn. 1985), (2) that the two corporations are, in fact, identical and
> indistinguishable, Mfrs. Consolidation Serv., Inc. v. Rodell, 42 S.W.3d at 866, or (3)
> that the subsidiary corporation is merely an instrumentality, agent, conduit, or

adjunct of the parent corporation, <u>Stigall v. Wickes Mach.</u>, 801 S.W.2d 507, 511 (Tenn. 1990).  In sum, the presumption of corporate separateness may be overcome by demonstrating that the parent corporation "exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own." <u>Cont'l Bankers Life Ins. Co. of the S.</u>, 578 S.W.2d at 632.

<u>Id.</u> at 653.

Plaintiffs have offered nothing to suggest that Anthem Wrestling is a sham or dummy corporation, that it and Anthem Sports are identical, or that Anthem Wrestling is merely a conduit for Anthem Sports.  To the contrary, the only evidence before the Court is the parties apparent agreement that Anthem Wrestling was formed to acquire the assets of TNA Entertainment, and Nordholm's unchallenged declaration that (1) "Anthem Sports and Anthem Wrestling are two separate and distinct legal entities"; (2) "all appropriate corporate formalities have been observed by both companies"; (3) "Anthem Wrestling has different shareholders than Anthem Sports"; (4) "Anthem Wrestling is funded by financing facilities separate from the financing facilities for Anthem Sport"; (5) "[t]he two companies have different purposes, corporate missions, employees, locations, and management"; and (6) "[t]he two companies maintain separate books, tax returns and financial statement, and neither entity exerts control over the daily affairs of the other."  (Doc. No. 25, Nordham Decl. ¶ 9).  The mere fact that Anthem Sports is a holding company does not mean that Anthem Wrestling is its alter ego.  <u>Bhd. of Locomotive Engineers v. I.C.C.</u>, 909 F.2d 909, 914 (6th Cir. 1990) ("[W]here a holding company establishes a subsidiary to acquire and operate a carrier as an ongoing enterprise, and where the subsidiary assumes the financial risks of its operations, the subsidiary is not necessarily an alter ego of the holding company but may be, based upon the facts of the case, an independent corporate entity."); <u>Lutz v. Rakuten, Inc.</u>, 376 F. Supp. 3d 455 (E.D. Pa.

2019) ("There is no law to support that a global holding company bootstraps itself into personal jurisdiction merely by proclaiming to the world that it is a holding company[.]"); In re Packaged Seafood, 338 F. Supp. 3d at 1165 ("[C]ourts will disregard a holding company's status for jurisdiction only when an alter ego relationship exists."); Invacare Corp. v. Sunrise Med. Holdings, Inc., No. 1:04 CV 1439, 2004 WL 3403352, at *8 (N.D. Ohio Dec. 15, 2004) (It is entirely possible that Sunrise Holdings is simply a holding company whose sole purpose is to hold the stock of its subsidiary, Sunrise Medical. Plaintiff fails to provide this Court with any case law suggesting that this type of corporate structure automatically renders the parent and subsidiary alter egos of each other."); In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (holding that the plaintiffs "failed to allege any facts to support their conclusion that the bank holding companies exercised such dominion and control over its subsidiaries" and explaining further that "[t]he unadorned invocation of dominion and control is simply not enough").

In short, Plaintiffs have not come close to establishing that Anthem Sports' affiliation with Tennessee is so "continuous and systematic" so as to render it essentially at home here as required by Daimler. General jurisdiction over Anthem Sports does not exist.

## B. Specific Jurisdiction

Specific jurisdiction deals with a defendant's contacts with the forum state relating to the claims at issue. The Sixth Circuit has identified three criteria for specific jurisdiction:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

AlixPartners. LLP v. Brewington, 836 F.3d 543, 549-50 (6th Cir. 2016) (quoting Air Prods., 503

F.3d at 550). "If any of the three requirements is not met, personal jurisdiction may not be invoked." Miller, 694 F.3d at 680. That is, "each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction" does not exist. LAK Inc. v Deer Creek Enters., 885 F.2d 1293, 1303 (6th Cir. 1989).

Notwithstanding their arguments to the contrary, Plaintiffs have not established the purposeful availment factor. Although asserting that the "claims in this lawsuit are not brought under" the NDA, they claim that agreement is "background for the relationships between the parties." (SAC ¶ 40). However, that "background" shows that Anthem Sports agreed to be sued in New York based on New York law in accordance with paragraph 13 of the NDA. (Doc. No. 17 at 3). Further, the Second Amended Complaint alleges that "[i]n or around May 2017, Anthem Wrestling and Mr. Jarrett signed a term sheet regarding Mr. Jarrett's employment as the Chief Creative Officer of Anthem Wrestling and the merger to be completed in which Anthem Wrestling would acquire GFE." (Doc. 43). While that document indicates that any disputes would be decided by a court in Davidson County, Tennessee, the agreement was between Plaintiffs and Anthem Wrestling, not Anthem Sports. All of this suggests that Anthem Sports agreed to sue and be sued in New York, not Tennessee.

Plaintiffs also point out that Defendants jointly argued in their Motion to Dismiss that they "entered into an implied license with Plaintiffs, who are Tennessee residents," and that "Anthem Sports cannot argue in one motion it has entered an implied agreement, while simultaneously arguing it has not contacts with Plaintiffs connected to this litigation." (Doc. No. 67 at 8). However, even assuming that an implied license is some sort of magic elixir establishing personal jurisdiction, Anthem Sports has not impermissibly pursued two contrary positions. The motion to

dismiss for failure to state a claim was filed by both Defendants in conjunction with Anthem Sports' motion to dismiss for lack of personal jurisdiction. In both, Anthem Sports indicated that it had entered a special appearance to preserve the personal jurisdiction issue.[2]

Finally, Plaintiffs claim that, because Defendants received copies of the masters from a Tennessee resident, specific jurisdiction exists in this Court. But how that is so as to Anthem Sports is never made clear in the papers. As already explained, and put even more plainly, Plaintiffs have wholly failed to show any activity or presence of that entity in Tennessee in relation to the dispute at issue, and have thus also failed to establish specific jurisdiction over Anthem Sports.

### III. <u>Motion to Dismiss for Failure to State a Claim</u>

In moving to dismiss all of Plaintiff's claims, Defendants argue:

First, Defendants assert that Plaintiffs have failed to state an adequate claim of copyright infringement (Count I) because they have failed to register their copyrights prior to the filing of this action. Second, Defendants assert that Plaintiffs cannot state an adequate claim under the Tennessee Personal Rights Protection Act (Count II) because Jeff Jarrett has previously authorized the use of his name and likeness as a trademark and Defendants own that trademark. Third, Defendants assert that Plaintiffs' claims of copyright infringement and its trademark infringement-related claims (Counts III-X) must be dismissed because Plaintiff Jarrett granted Defendants a license for all acts about which he now complains. Fourth, Plaintiffs have failed to state an adequate claim for abandonment such that their claim to cancel Defendants' "JEFF JARETT" trademark (Count XVII) should be dismissed. And, finally, Defendants assert that this Court should dismiss Plaintiffs' state law claims for unfair competition (Count VIII), unjust enrichment (Count IX), consumer protection (Count X), conversion and trover (County XI), and negligence (Count XII) because, in the absence of their claims under the U.S. Copyright Act and the Lanham Act, this Court should not exercise supplemental jurisdiction over these state law claims, especially due to the lack of diversity jurisdiction.

(Doc. No. 61 at 1-2). The Court need not spend a lot of time discussing these arguments because

---

[2] Had Anthem Sports not joined in the Motion to Dismiss for Failure to State a Claim, and had the Court found personal jurisdiction over Anthem Sports, Plaintiffs no doubt would be arguing that Anthem Sports waived the licensing argument by not pursuing it.

most are better made in the context of a motion for summary judgment. For now, the allegations in the Second Amended Complaint are accepted as true, and it need only "contain sufficient factual matter . . .'to state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).[3]

## A. Copyright Infringement

In the Second Amended Complaint, Plaintiffs allege that "GFE filed applications for federal copyright registration for each of the sixteen, one-hour GFW Amped videos on August 9, 2018, before the filing of this lawsuit," and that GFE "paid the required filing fees." (SAC ¶¶ 34, 35). The Second Amended Complaint also concedes that the registration process was not completed, but explains that this was a result of "Defendants' unlawful possession and/or deletion of the only master records of the 16 one-hour GFW Amped videos." (Id.). Whatever the reason that the registration process was never completed dooms Plaintiffs' copyright claim.

Section 411(a) of the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with" Title 17 of the United States Code. 17 U.S.C. § 411.[4] Recently, the Supreme Court held that "registration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright." Fourth Estate Pub. Benefit

---

[3] The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. To allow such an inference to be drawn, the complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." Id. Although the Court must " accept all well-pleaded factual allegations in the complaint as true," it need not accept legal conclusions "couched as a factual allegation." Twombly, 550 U.S. at 555

[4] The registration requirement is subject to several exceptions involving movies, musical compositions, or live broadcasts not relevant to this case.

Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 887 (2019). In reaching this conclusion the Court overruled cases such as Cosmetic Ideas, Inc. v. IAC/Interactivecorp, 606 F.3d 612, 621 (9th Cir. 2010), which held that registration occurs when copyright claimant's "complete application" for registration is received by the Copyright Office. The Supreme Court also explained that "although an owner's rights exist apart from registration[,] registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." 139 S. Ct. at 889. In light of Fourth Estate, Plaintiffs have no rights under the Copyright Act, and their copyright claim will be dismissed.

## B. Tennessee Personal Rights Protection Act ("TPRPA")

Plaintiffs allege that "Defendants have violated Jarrett's exclusive property rights in his own name, photograph, and other likeness by using his name, photograph, and likeness, as well as his videorecorded performances, in their unauthorized copying, sales, distribution, and marketing of the GFW Amped content." (SAC ¶ 92). As a consequence they seek both monetary and injunctive relief under the TPRPA.

In relevant part, the TPRPA provides:

> [a]ny person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purposes of advertising products, merchandise, goods, or services, or for purposes of . . . purchases of products, merchandise, goods, or services, without such individual's prior consent, . . . shall be liable to a civil action.

Tenn. Code Ann. § 47–25–1105(a). "The statute was intended to 'create an inheritable property right for those people who use their names or likenesses in a commercial manner, such as an entertainer or sports figure – someone who uses his or her name for endorsement purposes.'" Gauck v. Karamian, 805 F. Supp. 2d 495, 500 (W.D. Tenn. 2011) (quoting Apple Corps Ltd. v. A.D.P.R.,

Inc., 843 F.Supp. 342, 348 (M.D. Tenn. 1993)).

Defendants argue they cannot be liable under the TPRPA because Anthem Wrestling had a license to use Jeff Jarrett's likeness. More specifically, they claim that, "as a matter of public record, Defendant Anthem Wrestling owns the trademark JEFF JARRETT, Reg. No. 3269268" for "[t]oy action figures and accessories therefore" in International Class 28 and for "entertainment services, namely wrestling exhibits and performances by professional wrestler and entertainment, providing wrestling news and information via a global computer network" in International Class 41.4." (Doc. No. 62 at 6-7). Attached to the Motion to Dismiss is a copy of what purports to be the Registration issued to TNA by the United States Patent and Trademark Office (Doc. No. 61-1), and what purports to be an assignment to Anthem Wrestling (Doc. No. 61-3) of a large number of Registrations from TNA to Anthem Wrestling.

Leaving aside whatever distinction may be made between use of an individual's name as a trade name as opposed to use of that individual's name in a personal capacity, see, Madrigal Audio Labs., Inc. v. Cello, Ltd., 799 F.2d 814, 822 (2d Cir. 1986) (noting that "even when a personal name has become a trade name it continues to serve the important function to its bearer of acting as a symbol of that individual's personality, reputation and accomplishments"),[5] and accepting that the Registration and assignment are true and accurate copies, the Court has no way of knowing on this limited record whether the conduct complained of by Plaintiffs is covered by the Registration, nor does the Court know the context or scope of the assignment, the circumstances under which is was made, any limitations on the assignment, or whether the consent for use of "Jeff Jarrett" remains valid. These issues are something that can only be determined after discovery, and in the context

_____

[5] As Plaintiffs point out, "Jeff Jarrett" is both a trade name and the name of an individual, not simply a character name like "The Hulk," or "The Rock."

of a motion for summary judgment where the actual facts have been developed. Plaintiffs' TPRPA claim will not be dismissed at this time.

## C. Implied License

Defendants argue that Plaintiffs' claims for both copyright and trademark infringement fail because they had an implied license to use the Amped Content and related items. After all, Plaintiff allege that after Anthem Sports initiated merger discussion, Jarrett was hired by Anthem Wrestling as a consultant to whom Jarrett provided the only set of masters for the Amped Content. Defendant assert in addition that, shortly after being hired as a consultant, Jarrett became Chief Creative Officer for Anthem Wrestling, "with responsibility for all wrestling operations and overall responsibility and full authority for the company's content and programming of all types," and that it was "[u]nder his watch as Chief Creative Officer" the Amped Content was produced as a pay-per-view. (Doc. No. 62 at 11). Defendants submit that "facts similar to this case" were presented in Mahavisno v. Compendia Bioscience, Inc., 164 F. Supp. 3d 964, 968–69 (E.D. Mich. 2016), where an implied license was found to exist when a source code for software was provided to defendant in exchange for an interest in defendant's company.

There are two fundamental problems with Defendants' argument. First, Mahavisno was decided in the context of a motion for summary judgment, not a motion to dismiss. This is understandable given the factors that must be considered in determining whether an implied license exists. As explained in another case decided in the context of summary judgment and relied on by Defendants:

> An "implied license" is an unwritten license to use a work that the court infers from the circumstances and from the conduct between the parties. See Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 398–99 (6th Cir. 2007). . . .

There is no precise formula for determining whether an implied license exists, but, rather, the court is to examine the "intent" of the parties from the "totality of the circumstances." Jeffrey A. Grusenmeyer & Associates, Inc. v. Davison, Smith & Certo Architects, Inc., 212 Fed. Appx. 510, 514 (6th Cir. 2007). That is, the court should explore, based on the facts and the circumstances of the individual case, whether the evidence supports the notion that the parties, in essence, made an agreement permitting the defendant to use the work, consistent with certain understandings or terms. Johnson, 149 F.3d at 500–02. The key issue, again, is intent, and the key question is whether the facts and the circumstances demonstrate that "the copyright owners intended that their copyrighted works be used in the manner in which they were eventually used." Id. at 502. Generally, the party claiming the existence of an implied license has the burden of proving the license. See Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2nd Cir. 1995).

Melanie Howard Music, Inc. v. Warner Bros. Records, No. 3:08-0979, 2009 WL 3784611 (M.D. Tenn. Nov. 10, 2009). Clearly, the intent of the parties and the totality of the circumstances cannot be discerned solely from the pleadings.

Second, while "plaintiff can plead himself out of court by alleging facts which show that he has no claim," Soo Line R.R. Co. v. St. Louis SW Ry. Co., 125 F.3d 481, 483 (7th Cir. 1997), such is not the case here. Defendants insist that Jarrett had "complete authority" over Anthem Wrestling's operations and the "content that the company would create, market and sell." (Doc. No. 62 at 2). Those "facts," however, are not alleged in the Second Amended Complaint, and hence are not properly before the Court on a motion to dismiss. As a consequence, none of Plaintiffs' claims will be dismissed on the grounds that Defendants allegedly had an implied license.

**D. Abandonment**

In Count Thirteen, Plaintiffs allege that Defendants abandoned the "JEFF JARRETT" trademark when Jarrett left his employment with Anthem Wrestling, and assert that Defendants have "no legitimate intent to resume use" of the mark. (SAC ¶¶ 189, 191). As a consequence, Plaintiff seek "cancellation of U.S. Registration No. 3,269,268 for JEFF JARRETT." (Id. ¶ 192). In

response, Defendants point out the inconsistency between alleging, on the one hand, that Defendants have abandoned the Jeff Jarrett mark, while, on the other, alleging infringement by their use of Jarrett's named, photograph, likeness, and videorecorded performance.  They also note that Jarrett left his employment with Anthem Wrestling at the end of October 2017, which was less than a year before the initial Complaint was filed in this Court, and far less than the three years for abandonment set forth in the Lanham Act, 15 U.S.C. § 1127.

This is a close question, but the Court will allow the abandonment claim to go forward at this time.  Plaintiffs can plead inconsistent theories of recovery under Rule 8 of the Federal Rules of Civil Procedure, which provides that "a party may state as many claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(1).  Admittedly, the factual allegations surrounding the abandonment claim are sparse.  Still, it is difficult to allege a negative (*i.e.* that Defendants are not using a trademark) beyond merely saying so.  See Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc., 892 F.2d 1021, 1024 (Fed. Cir. 1989) (" Especially when a party must prove a negative, as in proving abandonment through nonuse, without resort to proper inferences the burdened party could be faced with an insurmountable task.").  Moreover, ""an abandonment claim involves factual issues," albeit ones that "can be resolved on summary judgment." Yellowbook Inc. v. Brandeberry, 708 F.3d 837, 848 (6th Cir. 2013).

As for the closeness in time between Jarrett leaving Anthem Wrestling and the filing of the initial Complaint, the touchstone of abandonment is "discontinued [use] with an intent not to resume such use."  15 U.S.C. § 1127.  A minimum of at least three consecutive years merely establishes "prima facie evidence of abandonment." Id.  Abandonment can be established in a lesser period of time.  See Blackwood v. Blackwood, No. 3:03–CV–691, 2005 WL 2096857, at *3 (E.D. Tenn.

2005) (internal citation omitted) ("A party's intent to abandon its trademark may be inferred from circumstances. An intent not to resume use of a trademark 'means an intent not to resume use within the reasonably foreseeable future rather than an intent never to assume use.' An explicit admission that an entity plans to discontinue use of its mark 'effectively abandons the mark.'"); <u>Intrawest Fin. Corp. v. W. Nat. Bank of Denver</u>, 610 F. Supp. 950, 958 (D. Colo. 1985) (observing that even where "statutory presumption of abandonment does not apply . . . abandonment may be inferred from the circumstances in cases where there has been a shorter period of discontinued use").

**D. State Law Claims**

Finally, Defendants seek dismissal of Plaintiffs' unfair competition (Count VIII), unjust enrichment (Count IX), and Tennessee Consumer Protection Act (Count X) claims based upon the alleged implied license. Defendants also seek dismissal of all of the pendent state law claims for lack of federal jurisdiction. Because, however, there are factual issues not resolvable on a motion to dismiss relating to the implied license issue, and because federal question jurisdiction remains given the pendency of the trademark claim under the Lanham Act,[6] none of the state law claims will be dismissed.

### IV. Conclusion

For the foregoing reasons, Anthem Sports' Motion to Dismiss for Lack of Personal Jurisdiction will be granted as to that entity. Defendants' Motion to Dismiss for Failure to State a Claim will only be granted with respect to Plaintiffs' copyright claim, and all other claims will remain pending as to Anthem Wrestling.

---

[6] Plaintiffs also invoke diversity jurisdiction, but Defendants disputes this because of Anthem Wrestling's status as a LLC, and the possibility that one or more of its members may be a Tennessee resident. This is an issue the Court need not address at this point because of the existence of federal question jurisdiction.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE