IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| GLOBAL FORCE ENTERTAINMENT, INC. and JEFFREY JARRETT, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHEM SPORTS & ENTERTAINMENT CORP. and ANTHEM WRESTLING EXHIBITIONS, LLC, <br><br> Defendants. | CIVIL ACTION NO. NO. 3:18-cv-00749 <br><br> CHIEF JUDGE CRENSHAW <br><br> MAGISTRATE JUDGE JOE BROWN <br><br> JURY DEMAND |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR LEAVE FOR INTERLOCUTORY APPEAL**

In support of its Motion to Certify Order for Interlocutory Appeal (the "Motion"), Plaintiff Global Force Entertainment, Inc. ("Plaintiff" or "GFE") states:

## I.   INTRODUCTION

The only reason copyrights exist is to protect the fruits of the labors of creators of original works of authorship. The only way to protect such creators is give them exclusive rights to stop others from copying the works without authorization or approval. Such rights are of great significance to creators and should not be taken lightly.[1] This is exactly why Congress was given

---

[1] The importance of an artist's ability to own and control their works—and particularly the master copies of those works—is highlighted by the recent international headlines regarding the sale of Taylor's Swift's master recordings to a company of which she did not approve. *See* Ben Sisario and Joe Coscarelli, *Taylor Swift's Feud With Scooter Braun Spotlights Musicians' Struggles to Own Their Work*, N.Y. Times, https://www.nytimes.com/2019/07/01/arts/music/taylor-swift-master-recordings.html (last visited July 2, 2019).

the authority by the Article I, Section 8, Clause 8 of the Constitution to enact the Copyright Act. Accordingly, the denial of a copyright owner's ability to sue to enforce rights, which is in effect a denial of those rights, is something that must occur only in the most extreme circumstances. Such denial should not be caused solely by actions taken by an infringer.

Plaintiff moves the Court to certify for interlocutory appeal the Order granting the dismissal of Plaintiff's copyright infringement claim and the reasoning for grant of the Order as set forth in the Memorandum Opinion of the Court. Order dated June 24, 2019, Dkt. 80; Memorandum Opinion, Dkt. 79 at 15-16. As explained in the Memorandum Opinion, the Court ruled "Plaintiffs have no rights under the Copyright Act, and their copyright claim will be dismissed" because GFE did not complete the registration process. Memorandum Opinion, Dkt. 79 at 15-16. It did not matter to the Court the reason the registration process could not be completed—namely, the infringers destroyed the only copy of the works-at-issue. *Id*. "Whatever the reason that the registration process was never completed dooms Plaintiff's copyright claim." *Id*. This ruling is ripe for interlocutory appeal for at least two reasons.

First, it creates an issue of first impression, given a recent Supreme Court ruling and substantial grounds for difference of opinion. In *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), the Supreme Court recently resolved the question of when a copyright registration has been made within the meaning of 17 U.S.C. § 411(a). There is nothing, however, to indicate the Supreme Court contemplated a scenario in which the infringer destroyed the *only* copy of a work before application for registration and, therefore, making registration, or

refusal thereof[2] an impossibility because no deposit copy of the original work is available through no fault of the copyright owner. The Supreme Court focused solely on the administrative timing aspects of a typical copyright infringement action where a copy of the original work is available. To Plaintiff's knowledge, no prior case has addressed the exact issue.

The dismissal of Plaintiff's copyright claim presents an important public policy issue regarding the deprivation of rights endowed to creators of the arts under Article I, Section 8, Clause 8 of the Constitution.[3] The Court's Order, and basis for the Order, signals future infringers that they may act with no fear of penalty under the Copyright Act if they destroy the only copy of the work before a copyright owner's filing an application for registration. This is akin to giving a free pass to criminals solely because they destroy the evidence of their crimes.

Second, the Court's Order and Memorandum Opinion incorrectly applied the Supreme Court's decision in *Fourth Estate* by holding that a lack of a registration extinguishes a copyright owners rights under the Copyright Act. The Court's Order stated in pertinent part, "Plaintiffs have no rights under the Copyright Act, and their copyright claim will be dismissed." Memorandum Opinion, Dkt. 79 at 16. This is incorrect because ownership and existence of a copyright are separate from an ability to sue. Under the Copyright Act, the author of an original work has exclusive rights from the moment of creation of the work. Registration of a work is purely an administrative requirement before suing to enforce those rights. As stated in *Fourth Estate*, "an

---

[2] "In enacting 17 U.S.C. § 411(a), Congress both reaffirmed the general rule that registration must precede an infringement suit, and added an exception in that provision's second sentence to cover instances in which registration is refused." *Fourth Estate*, 139 S. Ct. at 890–91 (citing H. R. Rep. No. 94-1476, p. 157 (1976)).

[3] "The Congress shall have power . . . [t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries; . . ." U.S. Const. art, I, § 8, cl. 8.

3

owner's rights exist apart from the registration[,] registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Estate*, 139 S. Ct. at 887. Thus, a registration (or refusal thereof) is necessary to sue but has no impact on the existence of a copyright or the ownership of a copyright.

An immediate appeal of the Order would materially advance the ultimate termination of this litigation as it will save judicial resources and litigant expense. If Plaintiff must wait until the conclusion of litigation to raise the copyright issues before the appellate court it could necessitate a second round of discovery (including likely re-deposing parties and third parties) and a second trial for determination of the copyright claim.

## II. BACKGROUND

This case presents a unique issue that appears to be a matter of first impression not just in this Circuit, but in any federal court.[4] Plaintiff is the owner of the copyrights in master recordings of the sixteen (16) one-hour episodes (the "Episodes") of Global Force Wrestling ("GFW") AMPED content (the "Masters"). Second Am. Compl., Dkt 54 at ¶¶ 22, 23, 28, 43-44; Dkt. 15-2 at 5. In anticipation of a merger that ultimately failed, Defendants came into possession of the *only* copies the Masters. There is and can be no dispute that Defendants (1) had the only copy of the Masters and (2) destroyed the Masters. *Id*. at 27. Plaintiff has alleged *each* one-hour episode in the Masters is worth up to $300,000. *Id*. at ¶ 30.

On August 9, 2018, before suing, Plaintiff submitted copyright applications (the "Applications") for the Episodes. *Id*. at ¶ 24; Copyright Office Receipts, Dkt. 54-1. However, Defendants' admitted destruction of the only Masters has made the submission of deposit copies,

---

[4] Plaintiff's counsel conducted a lengthy and thorough search for a similar case but was unable to find one.

and thus completion of the Applications, impossible. Second Am. Compl., Dkt. 54 at ¶¶ 72-73; Defendants' Responses, Dkt. 54-2 at 2. The Copyright Office closed the Applications without examination, acceptance or refusal on February 7, 2019 because no deposit copies had been received. Van Dyke James Decl., Dkt. 71. And as explained by the Copyright Office, *the Applications will remain closed indefinitely without ever being examined, accepted, or refused*— even though this "limbo" status is effectively a *de facto* refusal. *Id*.

### III. LAW AND ARGUMENT

#### A. The Court Should Exercise Its Discretion To Grant An Interlocutory Appeal On Dismissal Of Plaintiff's Copyright Claim.

Plaintiff seeks leave for interlocutory appeal under 28 U.S.C. § 1292(b).[5] Section 1292(b) states

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order:…

28 U.S.C. § 1292(b). The decision to permit an interlocutory appeal under § 1292(b) is within the district court's discretion. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995); 16 Charles Alan Wright, Et Al., Federal Practice & Procedure § 3929 (3d ed. 2017) (explaining that § 1292(b) "is not limited by its language to 'exceptional' cases," but rather is characterized by its flexibility).

---

[5] The Court's approval for interlocutory appeal in this action is necessary in order to appeal because the Court's June 24, 2019 Order is neither a "final decision" under 28 U.S.C. § 1291 nor an order for which an interlocutory appeal has been specifically authorized under 28 U.S.C. § 1292(a).

5
Case 3:18-cv-00749   Document 84   Filed 07/03/19   Page 5 of 12 PageID #: 708

There are two prongs to the analysis under § 1292(b). First, the determination being appealed must involving a controlling question of law of which there is a substantial ground for difference of opinion. 28 U.S.C. § 1292(b). "A legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). Therefore, an issues is controlling when "resolution on appeal could result in a reversal of a district court's final judgment," "has precedential value," "is central to liability," or "it would save the Court and the litigants substantial time and resources." *Gaylord Entm't Co. v. Gilmore Entm't Grp.*, 187 F. Supp. 2d 926, 956 (M.D. Tenn. 2001). Second, the determination on appeal "*may* materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (emphasis added). "An interlocutory appeal materially advances the ultimate termination of the litigation when it 'save[s] judicial resources and litigant expense.'" *Harter v. Beach Oil Co.*, No. 3:10-0968, 2011 WL 2358552, at *3 (M.D. Tenn. June 9, 2011) (citing *W. Tennessee Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000)). Based on the pure language of § 1292(b), a party does not have to prove that appeal *will* save judicial resources and litigation expense but instead is only required to show it *may* save judicial resources and litigant expense.

### B. The Order Involves A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion

The issues present substantial grounds for difference of opinion. "Substantial grounds for a difference of opinion exist when (1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *Gaylord Entm't Co.*, 187 F. Supp. 2d at 956 (citing *W. Tennessee Chapter of Associated Builders & Contractors, Inc.*, 138 F. Supp. 2d at 1019).

Based on the factual allegations in the Second Amended Complaint, which must be accepted as true for purposes of a motion to dismiss, Plaintiff is the owner of the copyrights in the Episodes. (Second Am. Compl. Dkt. 54 at ¶ 28). This is consistent with the long-established core tenants of the Copyright Act. "Copyright in a work protected under this title vests initially in the author or authors of the work." 18 U.S.C. § 201(a). "An author gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display." *Fourth Estate*, 139 S. Ct. at 887; *see also* 18 U.S.C. § 106.

The primary issue before the Court is what happens when a copyright owner cannot obtain registration due to no fault of its own. Generally, a copyright owner must have a registration or denial of application for registration before suing. "Before pursuing an infringement claim in court, however, a copyright claimant *generally* must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'" *Fourth Estate*, 139 S. Ct. at 887 (citing 17 U.S.C. § 411(a) (emphasis added)). "Therefore, although an owner's rights exist apart from registration, see § 408(a), registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Estate*, 139 S. Ct. at 887. If an application for registration is refused, a copyright owner also may sue. 17 U.S.C. § 411(a). "In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights." *Id*.

Plaintiff cannot obtain registration without copies of the Masters of the Episodes to serve as deposit copies as required as part of the application for registration. 17 U.S.C. § 408; *see also* U.S. Copyright Office Circular 7D (available at https://www.copyright.gov/circs/circ07d.pdf (last

visited July 3, 2019)). Plaintiff also cannot obtain a refusal from the Copyright Office without copies of the Masters of the Episodes to serve as the deposit copies required as part of the application for registration. The cause of both the failure to obtain registration and refusal is Defendants' admitted action of destroying the only copies of the Masters of the Episodes. (Defendants' Responses, Dkt. 54-2 at 2). But for Defendants' destruction of the only copy of the Masters, Plaintiff could submit the required deposit copies and obtain either registration or refusal by the Copyright Office. Without deposit copies, Plaintiff's copyright Applications will *never* be presented to an examiner at the Copyright Office and therefore neither official acceptance nor official refusal of the Applications can ever occur. (James Van Dyke Decl., Dkt. 71). The legal effect of this lack of official acceptance or official refusal is a *de facto* refusal because *nothing* can be done to make the registration or refusal issue. The long-term potential impact of the Order and Memorandum Opinion will be to establish precedent for infringers to destroy the only copies of works before a copyright owner applying for registration. In many forms of media–from music to television to software to paintings, such precedent serves to greatly and irreparably harm the rights of authors of all forms of creative works from songwriters to screenplay writers to software designs to painters. The wrongful act of another should not be a bar to enforcement of a copyright owner's rights to enforcement against an infringer. Such an unjust result should not be allowed, let alone encouraged.

Here, Plaintiff cannot file deposit copies of the Masters due to the undisputed actions of Defendants. (*See* Dkt. 54-2). Plaintiff did not lose or destroy the only copies of the Masters. Defendants admit they destroyed the sole copies of the Masters (Second Am. Compl. Dkt. 54 at ¶¶ 73-74; Defendants' Responses, Dkt. 54-2 at 2), but *only after* they committed acts of infringement. There is nothing Plaintiff can do about the problem of the lack of an original copy,

which is an issue solely and indisputably caused by Defendants. The denial of protection of copyright owners fly against the very protections of copyright intended by the drafters of copyright protection in Article I, Section 8, Clause 8 of the Constitution.

The preservation of rights due to a *de facto* refusal caused by an infringer is not inconsistent with the Supreme Court's recent ruling in *Fourth Estate*, 139 S. Ct. 881. The Supreme Court opined that a registration or refusal of application was necessary based on the binary assumption that the Copyright Office would assess whether either registration should issue, or the application should be refused. *Id*. at 889 (§ 411(a) "requires action by the Register before a copyright claimant may sue for infringement."). The Supreme Court does not address a scenario in which the Copyright Office has declined review, approved, or refuse the application. The Supreme Court, however, does leave open the possibility that something other than registration or refusal may arise to enable filing suit to protect copyright owners. "Before pursuing an infringement claim in court, however, a copyright claimant *generally* must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'" *Fourth Estate*, 139 S. Ct. at 887. The word "generally" before "must comply" creates such a possibility.

If the Supreme Court's binary registration/refusal rubric is applied, then the refusal to examine the application is in itself an act of refusal. If the Supreme Court's binary registration/refusal rubric is not applied, the claims should be allowed to go forward because it is Defendants' wrongful that are preventing registration or refusal and could be permitted under the "generally must comply" caveat.

The denial of a copyright owner's ability to enforce its rights is of great consequence and should not be easily discarded. The rights of authors are so important that the drafters of the Constitution saw fit to include it in the Constitution. Further, public policy favors the preservation

of a legal right rather than a forfeiture until such determination can be made on its merits. *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573 (Fed. Cir. 1994); *Cf. Henderson v. Carbondale Coal & Coke Co.*, 140 U.S. 25, 33 (1891) ("[F]orfeitures are never favored. Equity always leans against them, and only decrees in their favor when there is full, clear and strict proof of a legal right thereto."); *Deans v. Long Beach Mortg. Co.*, No. 1:07-CV-205, 2007 WL 772892, at *3 (W.D. Mich. Mar. 12, 2007). Here, there is no showing of "full, clear and strict proof of a legal right" to forfeiture of Plaintiff's copyrights. To hold that Plaintiff's copyrights cannot be enforced here due to Defendants' actions would defy the rights established in the Constitution and by 110 years of federal copyright protection.

A dismissal of Plaintiff's copyright claims would signal to future defendants they could avoid a claim of copyright infringement by destroying the sole copy of a work to deny the ability to file the required deposit copy. This cannot be the intended effect of the Supreme Court's ruling in *Fourth Estate*, 139 S. Ct. 881. Defendants' destruction of the only copies of the Masters should not be tolerated as way to avoid liability for copyright infringement. Instead of dismissing Plaintiff's copyright claims and awarding Defendants' for their wrongful act, the Applications should be treated as a refusal by the Copyright Office.

Finally, the Court's finding that "Plaintiffs have no rights under the Copyright Act" (Dkt. 79 at 15-16) is contrary to the law as established by the Supreme Court. As the Court recently stated: "An author gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display." *Fourth Estate*, 139 S. Ct. at 887. The lack of registration does not affect the existence or ownership of copyrights.

The Order and Memorandum Opinion create substantial grounds for difference of opinion. The first prong of § 1292(b) is met.

### C. An Immediate Appeal Of The Order Would Materially Advance The Ultimate Termination Of This Litigation.

An interlocutory appeal materially advances the ultimate termination of the litigation when it "save[s] judicial resources and litigant expense." *Winnett v. Caterpillar, Inc.*, No. 3:06CV00235, 2007 WL 2123905, at *6 (M.D. Tenn. July 20, 2007) (quoting *West Tenn. Chapter of Assoc. Builders and Contractors, Inc.*, 138 F. Supp. 2d at 1026). "Interlocutory appeals are an exception to the general policy against piecemeal appellate review . . . ." *Id.* at *3. "Interlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens. Interlocutory appeal is most appropriate early in the proceedings." *W. Tennessee Chapter of Associated Builders & Contractors, Inc.*, 138 F. Supp. 2d at 1026 (citations omitted). Interlocutory appeals are more appropriate early in litigation proceedings and in "protracted and expensive litigation, where failure to resolve a question of law early in the case could lead to the placement of an enormous burden on the parties." *Winnett*, 2007 WL 2123905 at *3.

Here, the parties are relatively early in litigation. No depositions have been taken, only limited written discovery has occurred, and, as of the date and time of the date of this filing, no Answer has been filed. Plaintiff seeks to resolve this important issue now, at the start of litigation. If Plaintiff must wait to raise these issues with the Court of Appeals after the conclusion of litigation, it will essentially have to restart the case by conducting additional discovery; re-deposing witnesses; and retrying the case with the additional copyright claim. All the foregoing would cause waste of judicial resources and additional expenses to the parties.

### IV. CONCLUSION

Plaintiff respectfully request the Court grant the Motion.

Respectfully submitted,

MILLER LEGAL PARTNERS PLLC

/s/ Samuel F. Miller
Samuel F. Miller, TN Bar No. 22936
Nicholas R. Valenti, TN Bar No. 35420
Sara R. Ellis, TN Bar No. 30760
Fifth Third Center – Suite 2000
424 Church Street
Nashville, Tennessee 37219
Phone: 615.988.9590
Facsimile: 615.988.9559
Email: smiller@millerlegalpartners.com
nvalenti@millerlegalpartners.com
sellis@millerlegalpartners.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of July 2019, the foregoing document was filed and served via the Court's CM/ECF filing system:

Paige W. Mills
BASS, BERRY & SIMS, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Phone: (615) 742-6200
Email: pmills@bassberry.com

/s/ Samuel F. Miller
Samuel F. Miller