| | | |
|---|---|---|
| Global Force Entertainment, Inc. and Jeffrey Jarrett, | ) ) ) | |
| | ) | Case No. 3:18-cv-00749 |
| Plaintiffs, | ) | Chief Judge Waverly D. Crenshaw, Jr. |
| v. | ) | Magistrate Judge Joe B. Brown |
| | ) | |
| Anthem Sports & Entertainment Corp., and Anthem Wrestling Exhibitions, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT ANTHEM WRESTLING EXHIBITIONS, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant Anthem Wrestling Exhibitions, LLC ("Anthem Wrestling"), by and through its undersigned counsel, and for its Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint states as follows:

## I.    THE PARTIES

1.    GFE is a Tennessee corporation having its principal place of business in Goodlettsville, Tennessee.

**ANSWER: Anthem Wrestling admits the allegations of Paragraph 1.**

2.    Mr. Jarrett is a Tennessee resident.

**ANSWER: Anthem Wrestling admits the allegations of Paragraph 2.**

3.    Upon information and belief, Defendant Anthem Sports & Entertainment Corp. ("Anthem Sports") is incorporated and has its principal place of business in Ontario, Canada. Defendants' registered agent is Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

**ANSWER**: Pursuant to the Court's Order entered on June 24, 2019 [Dkt. 80] dismissing Anthem Sports with prejudice, Anthem Wrestling makes no answer to this allegation.

4.      Upon information and belief, Defendant Anthem Wrestling Exhibitions, LLC ("Anthem Wrestling") is a wholly-owned subsidiary of Anthem Sports and is a Delaware limited liability company having its principal place of business in Toronto, Canada. Defendants' registered agent is CT Corporation Systems, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

**ANSWER**: Anthem Wrestling admits it is a Delaware limited liability company with its principal place of business in Toronto, Canada and its registered agent for service of process in Tennessee is CT Corporation Systems, 300 Montvue Road, Knoxville, Tennessee 37919-5546. Anthem Wrestling denies the remaining allegations of Paragraph 4.

5.      Upon information and belief, Anthem Sports and Anthem Wrestling share common ownership, executives, lawyers, office space, employees, equipment, and physical locations. Upon information and belief, Anthem Sports and Anthem Wrestling operate under common and/or joint leadership such that they focus as one unitary entity.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 5.

## II.      NATURE OF ACTION

6.      This is an action for (a) copyright infringement under the Copyright Act; (b) violations of the Tennessee Personal Rights Protection Act; (c) trademark infringement, unfair competition, and false designation of origin under the Lanham Act; (d) unfair competition under Tennessee law; (e) violations of the Tennessee Consumer Protection Act; and (f) tortious interference under Tennessee law.

2

**ANSWER: Paragraph 6 states a legal conclusion to which no response is required.**

### III. JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 15 U.S.C. §§ 1119, 1121, and 28 U.S.C. § 1338 in that this case arises under Lanham Act; 28 U.S.C. § 1338 in that this case arises under the Copyright Act; 28 U.S.C. § 1331 as it involves a federal question; and 28 U.S.C. § 2201 in that it involves a declaratory judgment.

**ANSWER: Paragraph 7 states a legal conclusion to which no response is required, except that Defendant denies that this Court has jurisdiction pursuant to the Copyright Act.**

8.      This Court has subject matter jurisdiction over the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the Lanham Act.

**ANSWER: Paragraph 8 states a legal conclusion to which no response is required.**

9.      This Court has supplemental jurisdiction over the claims that arise under Tennessee law pursuant to 28 U.S.C. § 1367(a) because they are substantially related to the claims that arise under the Lanham Act of the United States. Furthermore, this Court has supplemental jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

**ANSWER: Paragraph 9 states a legal conclusion to which no response is required.**

10.      Further and in the alternative, this Court has jurisdiction over all claims pursuant to 28 U.S.C. § 1332. Defendant Anthem Sports is domiciled in Ontario, Canada. Defendant Anthem

3

Wrestling is domiciled in Delaware and Ontario, Canada. Plaintiffs are domiciled in Tennessee. Plaintiffs are completely diverse from Defendants and the amount in controversy exceeds $75,000.

> **ANSWER: Paragraph 10 states a legal conclusion to which no response is required, however Defendant denies Plaintiffs have correctly pled that diversity jurisdiction exists.**

11.     This Court has general personal jurisdiction over Defendants based on their continuous and systematic minimum contacts with residents of Tennessee through the distribution and sale of Defendants' products, events, and services in Tennessee, and Defendants' representatives' promotion and marketing activities in Tennessee. This Court also has specific personal jurisdiction over Defendants based on their purposeful direction of promotional and advertising activities and sales of its products, events, and services to residents and customers in Tennessee. Additionally, this Court has personal jurisdiction under TENN. CODE ANN. § 20-2-201 *et seq*., because (1) Defendants have transacted business in Tennessee; (2) the tortious acts or omissions occurred in Tennessee; (3) the damages occurred in Tennessee to corporation with a principal place of business in Tennessee; and (4) jurisdiction based on Defendants' contacts with Tennessee (including, but not limited to, sales of products) is not inconsistent with the Constitution of the State of Tennessee or the Constitution of the United States.

> **ANSWER: Paragraph 11 states a legal conclusion to which no response is required.**

12.     Venue is proper in the Court under 28 U.S.C. § 1391(b) and § 1391(c), and because Defendants are subject to personal jurisdiction pursuant to Tennessee's long arm statute, TENN. CODE ANN. § 20-2-201 *et seq*.

> **ANSWER: Paragraph 12 states a legal conclusion to which no response is required.**

4

## IV.   THE CONTROVERSY

### A.   PLAINTIFFS' HISTORY, TRADEMARKS, AND COPYRIGHTS

13.   Mr. Jarrett is a famous wrestler from a famous wrestling family. Following his grandmother's successful business as a promoter of wrestling matches and co-owner of a regional wrestling promotion, Mr. Jarrett began his career in his father's Continental Wrestling Association in 1986. Mr. Jarrett first came to prominence upon debuting in 1992 in the World Wrestling Federation (the "WWF"), which is now World Wrestling Entertainment, Inc. (known commonly was the WWE). Over the next nine years, he alternated between the WWF and its main competitor, World Championship Wrestling ("WCW").

> **ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13.**

14.   After WCW was purchased by the WWF in 2001, Mr. Jarrett joined the upstart World Wrestling All-Stars ("WWA") promotion. In 2002, Mr. Jarrett and his father together founded NWA:TNA (now known as Impact Wrestling).

> **ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14.**

15.   Mr. Jarrett has had seventy-seven (77) championship reigns throughout his career. He is a seventeen-time world champion, having won the NWA World Heavyweight Championship six times, the WCW World Heavyweight Championship four times, the WWA World Heavyweight Championship twice, the USWA Unified World Heavyweight Championship three times, and the AAA Mega Championship twice.

5

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15.**

16.     Mr. Jarrett was inducted into the TNA Hall of Fame in 2015 and the WWE Hall of Fame in 2018.

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16.**

17.     After departing the TNA, Mr. Jarrett formed Global Force Entertainment, Inc. ("GFE") in 2014 for the purpose of promoting wrestling events and creating original wrestling programming for pay-per-view and television markets.

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17.**

18.     GFE operates under and is the owner of the "Global Force Wrestling" brand.

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18.**

19.     GFE owns the trademark and associated U.S. Registration No. 5,392,147 for GLOBAL FORCE WRESTLING for use in connection with (1) posters and photographs; (2) insulated containers for beverage cans for domestic use; (3) clothing, including, but not limited to, t-shirts, bandanas and hats; (4) streaming of audio and video material on the Internet; and (5) entertainment services, including, but not limited to, wrestling exhibitions and performances by professional wrestlers and entertainers.

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19.**

20.     GFE also owns the trademark and associated U.S. Registration No. 5,453,775 for GFW for use in connection with (1) posters and photographs; (2) insulated containers for beverage cans for domestic use; (3) clothing, including, but not limited to, t-shirts, bandanas and hats; (4) streaming of audio and video material on the Internet; and (5) entertainment services, including, but not limited to, wrestling exhibitions and performances by professional wrestlers and entertainers.

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20.**

21.     GFE also uses in interstate commerce, including, but not limited to, on its website, the Global Force Wrestling logo and GFW logo with a distinctive green color as shown below (background not claimed):

 

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21.**

22.     On July 24, August 21, and October 23, 2015, at the Orleans Arena in Las Vegas, Nevada, GFE, under the GLOBAL FORCE WRESTLING and GFW trademarks, produced approximately sixteen (16) hours of original wrestling programming to market to television and/or

7

pay-per-view markets. The collective content was called "GFW Amped" and featured completely original content owned solely by GFE.

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22.**

23.    GFE developed the GFW Amped characters, scripts, and action sequences, and coordinated the music, commentary, set design, and other production aspects.

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.**

24.    GFE filed applications for federal copyright registration for each of the 16 one-hour GFW Amped videos on August 9, 2018, before the filing of this lawsuit. (Dkt. 1, Copyright Application Filing Receipts attached hereto as Exhibit A and in the record at Dkt. 9-1).

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24.**

25.    GFE, as part of its applications for federal copyright registrations for each of the 16 one-hour GFW Amped videos, paid the required filing fees.

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25.**

26.    The last remaining step in the registration process is submission of deposit copies, which GFE cannot provide to the Copyright Office due to Defendants' unlawful possession and/or deletion of the only master recordings of the 16 one-hour GFW Amped videos.

**ANSWER: Anthem Wrestling denies that it unlawfully possessed or disposed of  16 one-hour GFW Amped videos provided by Plaintiffs to Anthem Wrestling.  Anthem**

8

**Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 26.**

27.     Defendants admit that the master recordings were deleted while in their custody and no longer exist.

**ANSWER: Anthem Wrestling admits that the raw footage provided by Plaintiffs to Anthem Wrestling is no longer in its possession but denies that the master recordings of the Amped Content was deleted and no longer exists.  Anthem Wrestling denies the remaining allegations of Paragraph 27.**

28.     Plaintiffs are currently, and at all relevant times have been, the sole owners of all right, title, and interest in and to the copyrights in the GFW Amped works.

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations in of Paragraph 28.**

29.     GFW Amped features performance appearances by Mr. Jarrett.

**ANSWER:  Anthem Wrestling admits the allegations of Paragraph 29.**

30.     The value of each of the 16 one-hour GFW Amped master recordings may exceed $300,000 per recording.

**ANSWER:  Anthem Wrestling denies the allegations of Paragraph 30.**

**B.     DEFENDANTS' HISTORY WITH PROFESSIONAL WRESTLING**

31.     Upon information and belief, Anthem Sports, then named Anthem Media Group, Inc., was formed in 2010 by Leonard Asper, through its acquisition of a majority stake in Fight Network.

**ANSWER:  Anthem Wrestling admits the allegations of Paragraph 31.**

9

32.     Fight Network is an international English language television channel that broadcasts programming related to mixed martial arts, boxing, kickboxing, and professional wrestling.

**ANSWER**:  **Anthem Wrestling admits the allegations of Paragraph 32.**

33.     Fight Network is available via broadcast in countries throughout the world including, but not limited to, Canada, United States, Portugal, Belgium, Angola, Mozambique, Turkey, Bosnia, Serbia, Montenegro, and Italy, as well as regionally in the Middle East and North Africa.

**ANSWER**:  **Anthem Wrestling admits the allegations of Paragraph 33.**

34.     Upon information and belief, Fight Network is available to over 1.5 million subscribers in the United States alone.

**ANSWER**:  **Anthem Wrestling admits the allegations of Paragraph 34.**

35.     Upon information and belief, Fight Network also is available digitally via streaming service worldwide on devices such as Apple TV, Roku, computers, and tablets.

**ANSWER**:  **Anthem Wrestling admits the allegations of Paragraph 35.**

36.     Upon information and belief, in or around October 2016, Anthem Sports invested in the TNA professional wresting company, which has since been rebranded as IMPACT! Wrestling.

**ANSWER**:  **Anthem Wrestling denies that Anthem Sports invested in TNA but admits that it was a creditor of that entity.**

37.     Upon information and belief, on or about December 23, 2016, Anthem Sports formed Anthem Wrestling.

**ANSWER**:  **Anthem Wrestling admits the allegations of Paragraph 37.**

10

38.     Upon information and belief, on or about January 4, 2017, Anthem Sports acquired a majority stake in TNA under its subsidiary Anthem Wrestling.

**ANSWER:  Anthem Wrestling denies the allegations of Paragraph 38.**

**C.     THE RELATIONSHIP BETWEEN PLAINTIFFS AND DEFENDANTS**

39.     In or around October 2016, Anthem Sports initiated discussions with Plaintiffs related to merging with GFE in exchange for membership and equity in Anthem Sports. These discussions also concerned hiring Mr. Jarrett as Chief Creative Officer for the wrestling portion of Anthem Sports.

**ANSWER: Anthem Wrestling denies the allegations in of Paragraph 39.**

40.     In conjunction with the merger and employment discussions, Jeff Jarrett and Anthem Sports executed a certain agreement on December 9, 2016, a true and correct copy of which was filed under seal as Exhibit 1 to the First Amended Complaint and is in the record at Dkts. 15-1 and 17. Plaintiffs' claims in this lawsuit are <u>not</u> brought under that agreement. That agreement is simply background for the relationships between the parties.

**ANSWER: Anthem Wrestling states that the agreement attached as Exhibit 1 to the First Amended Complaint speaks for itself.  Anthem Wrestling denies the remaining allegations of the first sentence of Paragraph 40.  Anthem Wrestling denies the allegations of the last two sentences of Paragraph 40 because the agreement is relevant to Plaintiff's claims and informs the jurisdictional issues.**

41.     In or around January 2017, Anthem Wrestling retained Mr. Jarrett as a consultant.

**ANSWER: Anthem Wrestling admits the allegations in of Paragraph 41.**

11

42.     In or around January 2017, Mr. Jarrett provided the only set of masters for the 16 one-hour episodes of GFW Amped content to Defendants. Defendants continue to have the only copy of the masters of the GFW Amped content in their possession.

> **ANSWER**: **Anthem Wrestling denies the allegations of the first sentence of Paragraph 42. In further answering, Anthem Wrestling states Plaintiffs provided raw footage in early 2017 but that this content was not in the form of 16 airable episodes. Anthem Wrestling denies it currently has the original raw footage in its possession but admits that it currently has possession of the masters of the GFW Amped Content that Anthem aired in mid to late 2017. Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the second sentence of Paragraph 42.**

43.     In or around May 2017, Anthem Wrestling and Mr. Jarrett signed a term sheet regarding Mr. Jarrett's employment as the Chief Creative Officer of Anthem Wrestling and the merger to be completed in which Anthem Wrestling would acquire GFE. A true and correct copy of the term sheet was filed under seal as Exhibit 2 to the First Amended Complaint and is in the record at Dkts. 15-2 and 18.

> **ANSWER**: **Anthem Wrestling states that the agreement attached as Exhibit 2 to the First Amended Complaint speaks for itself. Anthem Wrestling admits the remaining allegations of the first sentence of Paragraph 43.**

44.     Page 5 of the term sheet makes clear that GFE owns all GFW Amped content.

> **ANSWER**: **Anthem Wrestling states that the agreement attached as Exhibit 2 to the First Amended Complaint speaks for itself.**

12

45.     During the build up to Anthem Wrestling's Slammiversary pay-per-view event in June 2017, Anthem Wrestling publicly announced that it had entered into an agreement to acquire GFE.

**ANSWER: Anthem Wrestling admits the allegations of Paragraph 45.**

46.     In the press release announcing the agreement, Anthem Wrestling and Anthem Sports stated in pertinent part:

> **IMPACT Wrestling Acquires Global Force Wrestling**
>
> NASHVILLE | TORONTO – Anthem Wrestling Exhibitions LLC, a subsidiary of Anthem Sports & Entertainment Corp. and parent company of IMPACT Wrestling, announced today that it has entered into an agreement to acquire Global Force Entertainment, LLC d/b/a Global Force Wrestling.
>
> Jeff Jarrett, the founder of both IMPACT Wrestling and Global Force Entertainment, will join Anthem Wrestling Exhibitions as a member of its board of managers, equity owner and Chief Creative Officer.
>
> "We are thrilled to be joining forces with Anthem as a partner to build the business," said Karen Jarrett. "This partnership will be complementary of our strengths and bolster our capabilities to grow the IMPACT Wrestling brand. Ed Nordholm as President and Jeff Jarrett as Chief Creative Officer make a great tag team"
>
> "We are excited by the progress we have made with IMPACT Wrestling since acquiring the business in January," said Ed Nordholm, president of Anthem Wrestling Exhibitions. "Jeff and his team have been instrumental in this success and we are pleased that we have reached an agreement on the basis of which we can combine our businesses to continue to grow. *Slammiversary* XV will be a fitting occasion to bring the promotions together and merge the titles under the new IMPACT combined belts. By combining our resources and talent, we can produce the best product for our global audience."

**ANSWER: Anthem Wrestling states that the press release excerpted of Paragraph 46 speaks for itself.**

47.     Notwithstanding the wide-spread publicity for the proposed merger, Anthem Wrestling terminated Mr. Jarrett's employment in October 2017.

13

**ANSWER: Anthem Wrestling admits that Mr. Jarrett's employment with Anthem Wrestling was terminated in October 2017. Anthem Wrestling denies the remaining allegations of Paragraph 47.**

48.　　Anthem Wrestling and GFE never completed the merger contemplated in the term sheet.

**ANSWER: Anthem Wrestling admits the allegations of Paragraph 48.**

49.　　Anthem Wrestling is not currently providing any entertainment services, namely wrestling exhibits and performances by a professional wrestler and entertainer, under Mr. Jarrett's name.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 49.**

50.　　Anthem Wrestling is not providing wrestling news and information via a global computer network under Mr. Jarrett's name.

**ANSWER: Anthem Wrestling denies that it has not provided the indicated services in conjunction with the mark JEFF JARRETT.**

51.　　Anthem Wrestling has no intent to re-hire Mr. Jarrett.

**ANSWER: Anthem Wrestling admits the allegations of Paragraph 51.**

**D.　　DEFENDANTS' UNAUTHORIZED USES OF COPYRIGHTED CONTENT AND CONFUSINGLY SIMILAR TRADEMARKS**

52.　　Even though Anthem Wrestling and GFE did not merge, and despite Anthem Wrestling's acknowledgement of GFE's ownership of all GFW Amped content, Defendants reproduced, distributed, publicly displayed, offered for sale, and sold the GFW Amped content without providing any compensation or royalties to GFE or Mr. Jarrett.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 52.**

14

53.    Defendants first promoted the GFW Amped content as a four-part pay-per-view on or about July 19, 2017 (the "Amped PPV").

**ANSWER: Anthem Wrestling admits that it promoted the Amped PPV on or about July 19, 2017, under the authority of and with the permission of Jeff Jarrett. Anthem Wrestling denies the remaining allegations of Paragraph 53.**

54.    Defendants promoted and continue to promote the Amped PPV on the Fight Network website at http://fightnetwork.com/news/6614609:gfw-amped-anthology-4-part-series-airs-on-pay-per-view-aug-11/, as shown in part below:



A true and correct copy of a screen capture of the full page was attached to the First Amended Complaint as Exhibit 3 and is in the record at Dkt. 15-3.

**ANSWER: Anthem Wrestling admits that it promoted the Amped PPV on the Fight Network but did so under the authority of and with the permission of Jeff Jarrett. Anthem Wrestling denies the remaining allegations of Paragraph 54.**

15

55.     On August 11, 2017, Defendants aired "GFW Amped Anthology – Part 1" as a part of their pay-per-view "One Night Only" series, which contained material from the GFW Amped content.

> **ANSWER: Anthem Wrestling admits it aired "GFW Amped Anthology – Part 1" as a part of its pay-per-view "One Night Only" series on August 11, 2017, but that it did so under the authority of and with the permission of Jeff Jarrett.  Anthem Wrestling denies the remaining allegations of Paragraph 55.**

56.     On September 15, 2017, Defendants aired "GFW Amped Anthology – Part 2" as a part of their pay-per-view "One Night Only" series, which contained material from the GFW Amped content.

> **ANSWER: Anthem Wrestling admits it aired "GFW Amped Anthology – Part 2" as a part of its pay-per-view "One Night Only" series on September 15, 2017, but that it did so under the authority of and with the permission of Jeff Jarrett.  Anthem Wrestling denies the remaining allegations of Paragraph 56.**

57.     On October 13, 2017, Defendants aired "GFW Amped Anthology – Part 3" as a part of their pay-per-view "One Night Only" series, which contained material from the GFW Amped content.

> **ANSWER: Anthem Wrestling admits it aired "GFW Amped Anthology – Part 3" as a part of its pay-per-view "One Night Only" series on October 13, 2017.  Anthem Wrestling denies the remaining allegations of Paragraph 57.**

58.     On December 8, 2017, Defendants aired "GFW Amped Anthology – Part 4" as a part of their pay-per-view "One Night Only" series, which contained material from the GFW Amped content.

**ANSWER**: Anthem Wrestling admits it aired "GFW Amped Anthology – Part 4" as a part of its pay-per-view "One Night Only" series on December 8, 2017.  Anthem Wrestling denies the remaining allegations of Paragraph 58.

59.     Upon information and belief, Defendants continue to monetize the GFW Amped content as pay-per-view, premium television, streaming, and other viewing options on a worldwide scale.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 59 as it has not generated positive revenue from the GFW Amped content.

60.     Anthem Wrestling has sold and continues to sell DVD copies of the GFW Amped content on its website www.shopimpact.com and other online retail outlets. A true and correct copy of a screen capture from the website was attached to the First Amended Complaint as Exhibit 4 and is in the record at Dkt. 15-4.

**ANSWER**: Anthem Wrestling admits it previously sold DVD copies of the GFW Amped content on its website.  Anthem Wrestling denies the allegations of Paragraph 60.

61.     In or around October 2017, Defendants launched a new subscription streaming service known as the Global Wrestling Network, which features archive content from TNA and/or IMPACT! as well as footage from other providers.

**ANSWER**: Anthem Wrestling admits that, in or around October 2017, it launched a new subscription streaming service known as the Global Wrestling Network, which features archive content from TNA and/or IMPACT! as well as footage from other providers.  Anthem Wrestling denies the allegations of Paragraph 61.

62.     The Global Wrestling Network operates under both the Global Wrestling Network name and GWN, which is similar to Global Force Wrestling and GFW.

**ANSWER: Anthem Wrestling admits that the Global Wrestling Network operates under both the Global Wrestling Network name and GWN. Anthem Wrestling denies the allegations of Paragraph 62.**

63.     The logo for the Global Wrestling Network contains a green color identical or nearly identical to the green color in GFE's logo as shown below:

| *Plaintiff Global Force Wrestling, Inc.* | *Defendants' Global Wrestling Network* |
|---|---|
|  | |

**ANSWER: Anthem Wrestling states the logos for Global Force Wrestling and Global Wrestling Network speak for themselves. In further answering, Anthem Wrestling states that during his employment with Anthem Wrestling, Defendant Jeffrey Jarrett was involved in the design and approval of the Global Wrestling Network logo. Anthem Wrestling denies the remaining allegations of Paragraph 63.**

18

64.     Defendants are offering the GFW Amped content to subscribers through the Global Wrestling Network. A true and correct copy of a screen capture from the Global Wrestling Network was attached to the First Amended Complaint as Exhibit 5 and is in the record at Dkt. 15-5.

**ANSWER: Anthem Wrestling admits it previously offered GFW Amped content through the Global Wrestling Network.   Anthem Wrestling denies the allegations of Paragraph 64.**

65.     Defendants' unauthorized reproductions of the GFW Amped content feature both of Plaintiffs' registered trademarks, including on the packaging and in conjunction with online sales.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 65.**

66.     Both the promotional video and the product packaging for three of the four "GFW Amped Anthology" discs display a prominent image of Mr. Jarrett on the cover. True and correct copies of images of the products' packaging is shown in Dkt. 15-4.

**ANSWER: Anthem Wrestling states the promotional video and the product packaging for three of the four "GFW Amped Anthology" discs speak for themselves.   Anthem Wrestling admits copies of images of the products' packaging are shown in Dkt. 15-4 but that all marketing decisions were made under the authority of and with the permission of Jeff Jarrett.**

67.     Defendants do not have a license to use, reproduce, distribute, and/or publicly display the GFW Amped content.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 67.**

19

68.     Defendants do not have a license to use, reproduce, distribute, and/or publicly display GFE's trademarks in word or logo format.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 68.**

69.     Defendants do not have a license to use, reproduce, distribute, and/or publicly display Mr. Jarrett's name or image in connection with the GFW Amped content.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 69.**

## E.     DEFENDANTS' DISCOVERY RESPONSES

70.     As a direct and proximate result of Defendants' intentional actions and statements, Plaintiffs have suffered irreparable harm and loss of goodwill.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 70.**

71.     Plaintiffs hand-served requests for production upon Defendants immediately following the case management conference on October 31, 2018.

**ANSWER: Anthem Wrestling admits the allegations of Paragraph 71.**

72.     Defendants responded to the requests on November 30, 2018. A true and correct copy of the responses to the requests for production are attached hereto as Exhibit B.

**ANSWER: Anthem Wrestling admits the allegations of Paragraph 72.**

73.     In their responses, Defendants admitted that they destroyed the only copy of Plaintiffs' copyrighted master recordings that are at issue in this case.

74.     **ANSWER: Anthem Wrestling's discovery responses speak for themselves. Anthem Wrestling admits that the raw footage provided by Plaintiffs to Anthem Wrestling are no longer in its possession but denies that they were "copyrighted." Anthem Wrestling denies the remaining allegations of Paragraph 73.**

20

75.     The destruction of the master recordings was not known at the time of filing of the original Complaint or the First Amended Complaint.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 75.**

### F.     U.S. REGISTRATION NO. 3,269,268

76.     Anthem Wrestling claims to be the owner via assignment of U.S. Registration No. 3,269,268 for JEFF JARRETT for use in connection with "toy action figures and accessories therefor" and "Entertainment services, namely wrestling exhibits and performances by a professional wrestler and entertainer; providing wrestling news and information via a global computer network."

**ANSWER: Anthem Wrestling admits the allegations of Paragraph 76.**

76.     Anthem Wrestling is not currently using JEFF JARRETT in connection with "toy action figures and accessories therefor" and has no intent to resume such use.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 76.**

77.     Anthem Wrestling is not currently using JEFF JARRETT in connection with "Entertainment services, namely wrestling exhibits and performances by a professional wrestler and entertainer; providing wrestling news and information via a global computer network" and has no intent to resume such use.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 77.**

### G.     PLAINTIFFS' IRREPARABLE HARM

78.     As a direct and proximate result of Defendants' intentional actions and statements, Plaintiffs have suffered irreparable harm and loss of goodwill.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 78.**

79.     The harm to the reputation of Plaintiffs is *per se* irreparable.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 79.

80. The harm also is irreparable because it cannot be completely remedied.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 80.

81. The harm further is irreparable because given the nature of the advertising and promoting the loss of identifiable consumers is not readily obtainable.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 81.

## V. CAUSES OF ACTION
## COUNT I
## COPYRIGHT INFRINGEMENT
### (*against all Defendants*)

82. GFE incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER**: **Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

83. Defendants have violated and, upon information and belief, continue to violate GFE's exclusive rights in the GFW Amped content and the 16 associated copyrights, including, but not limited to, the right to reproduce, right to prepare and sell derivative works, and right to vend by copying, publishing, distributing, and publicly displaying in the marketplace in this District, and in all marketplaces reached by the Internet, videos that were copied or otherwise derived from the GFW Amped content.

**ANSWER**: **Pursuant to the Court's Order entered on June 24, 2019 [Dkt. 80] dismissing Count I with prejudice, Anthem Wrestling makes no answer to this allegation. To the extent necessary, Anthem Wrestling denies the allegations of Paragraph 83.**

22

84.     Defendants have copied, published, distributed, and publicly displayed the GFW Amped content in numerous ways, including, but not limited to, in the four-volume GFW Amped Anthology DVD series via download and/or streaming, and via pay-per-view.

**ANSWER: Pursuant to the Court's Order entered on June 24, 2019 [Dkt. 80] dismissing Count I with prejudice, Anthem Wrestling makes no answer to this allegation.  To the extent necessary, Anthem Wrestling denies the allegations of Paragraph 84.**

85.     As a direct and proximate result of Defendants' wrongful conduct, GFE has suffered and continues to suffer damages.

**ANSWER: Pursuant to the Court's Order entered on June 24, 2019 [Dkt. 80] dismissing Count I with prejudice, Anthem Wrestling makes no answer to this allegation.  To the extent necessary, Anthem Wrestling denies the allegations of Paragraph 86.**

86.     Defendants' infringement of GFE's copyrights in the GFW Amped content has been and continues to be committed willfully.

**ANSWER: Pursuant to the Court's Order entered on June 24, 2019 [Dkt. 80] dismissing Count I with prejudice, Anthem Wrestling makes no answer to this allegation.  To the extent necessary, Anthem Wrestling denies the allegations of Paragraph 86.**

87.     Defendants' actions constitute copyright infringement under 17 U.S.C. § 501.

**ANSWER: Pursuant to the Court's Order entered on June 24, 2019 [Dkt. 80] dismissing Count I with prejudice, Anthem Wrestling makes no answer to this**

23

allegation.  **To the extent necessary, Anthem Wrestling denies the allegations of Paragraph 87.**

88.     GFE generally avers that all conditions precedent to its rights of recovery have occurred or been performed.

**ANSWER: Pursuant to the Court's Order entered on June 24, 2019 [Dkt. 80] dismissing Count I with prejudice, Anthem Wrestling makes no answer to this allegation.  To the extent necessary, Anthem Wrestling denies the allegations of Paragraph 88.**

89.     GFE is entitled to recover the actual damages suffered by GFE as a result of Defendants' infringement, in addition to any of Defendants' profits attributable to the infringement not taken into account in computing the actual damages.

**ANSWER: Pursuant to the Court's Order entered on June 24, 2019 [Dkt. 80] dismissing Count I with prejudice, Anthem Wrestling makes no answer to this allegation.  To the extent necessary, Anthem Wrestling denies the allegations of Paragraph 89.**

## COUNT II

**VIOLATION OF TENNESSEE PERSONAL RIGHTS PROTECTION ACT**

(*against all Defendants*)

90.     Mr. Jarrett incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

24

91.     Mr. Jarrett is an internationally known two-time Hall of Fame wrestler and businessman who has a property right in his name, photograph, and likeness under TENN. CODE ANN. § 47-25-1104.

**ANSWER: Paragraph 91 states a legal conclusion to which no response is required.**

92.     Defendants have violated Mr. Jarrett's exclusive property rights in his own name, photograph, and other likeness by using his name, photograph, and likeness, as well as his video-recorded performances, in their unauthorized copying, sales, distribution, and marketing of the GFW Amped content.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 92 and affirmatively asserts that Jeff Jarrett granted a license to Defendant to use his name, photograph, and likeness in the creation and marketing of the GFW Amped Content.**

93.     As a direct and proximate result of Defendants' wrongful conduct, Mr. Jarrett has suffered damages.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 93.**

94.     Defendants' violation of Mr. Jarrett's right of publicity has been and continues to be committed willfully.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 94.**

95.     Pursuant to TENN. CODE ANN. § 47-25-1105(a), Mr. Jarret is entitled to injunctive relief ordering seizure of the GFW Amped content from Defendants.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 95.**

96.     Pursuant to TENN. CODE ANN. § 47-25-1106(b) and (c), Mr. Jarret is entitled to injunctive relief ordering impoundment and/or destruction of the unauthorized copies of the

GFW Amped content and any plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which the GFW Amped content may be reproduced.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 96.**

97.     Pursuant to TENN. CODE ANN. § 47-25-1106(d)(1), Mr. Jarret is entitled to recover the actual damages suffered as a result of the knowing use or infringement of his rights and any profits that are attributable to such use or infringement which are not taken into account in computing the actual damages.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 97.**

## COUNT III
## FEDERAL AND STATE TRADEMARK INFRINGEMENT
### (*against all Defendants*)

98.     GFE incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

99.     Defendants' use of GFW (particularly in connection with the GFW Amped content), GLOBAL WRESTLING NETWORK, the GLOBAL WRESTING NETWORK logo,GWN, and the GWN logo constitute infringement of GFE's exclusive rights to the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) in violation of the Lanham Act, specifically 15 U.S.C. § 1114(1) and § 1125, and of GFE's trademark rights under Tennessee law.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 99.**

100.    Defendants have used in commerce a reproduction, counterfeit, copy, and/or colorable imitation of the GLOBAL FORCE WRESTLING and GFW trademarks (both words

26

and logo) in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods, including, but not limited, to the DVD and streaming copies of the Amped content, or services, on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 100.**

101. Defendants' acts of infringement have caused GFE damages, and GFE seeks judgment pursuant to 15 U.S.C. § 1117 and Tennessee law for profits resulting from Defendants' unauthorized and infringing use of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo), or variants thereof, similar to or likely to cause confusion with the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo); for the damages sustained by GFE; for all costs necessary to remediate the infringing uses and their effects; and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 101.**

102. Pursuant to 15 U.S.C. § 1117(b) GFE seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or GFE's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 102.**

103. Pursuant to 15 U.S.C. § 1116 and equity, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 103.**

104. Pursuant to 15 U.S.C. § 1118 and equity, GFE is entitled to impoundment and destruction of all infringing articles.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 104.

105.   GFE is further entitled to all available remedies provided by common law, including, but not limited, to temporary and permanent injunctive relief; Defendants' profits; any damages sustained by GFE; and costs.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 105.

**COUNT IV**
**TRADE NAME INFRINGEMENT**
(*against all Defendants*)

106.   GFE incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER**: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.

107.   Defendants' acts constitute trade name infringement in violation of GFE's trade name rights at common law.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 107.

108.   Defendants' acts of infringement have caused GFE damages, and GFE seeks judgment for profits resulting from Defendants' unauthorized and infringing use of GFE's trade name; for the damages sustained by GFE; for all costs necessary to remediate the infringing uses and their effects; for punitive damages; and for the costs incurred in bringing the present action.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 108.

109.   Further, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 109.

**COUNT V**
**FEDERAL TRADEMARK COUNTERFEITING IN VIOLATION OF THE**
**LANHAM ACT, 15 U.S.C. § 1114(1)(a)**
(*against all Defendants*)

28

110.   GFE incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

111.   Defendants' acts constitute infringement of GFE's exclusive rights to the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) in violation of the Lanham Act, specifically 15 U.S.C. § 1114(1) and § 1125, and of GFE's trademark rights under Tennessee common law.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 111.**

112.   Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods or services, on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 112.**

113.   Defendants' use of the GLOBAL FORCE WRESTLING and GFW trademarks are counterfeits of the GLOBAL FORCE WRESTLING and GFW trademarks that it registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not Defendants knew such marks were so registered.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 113.**

114.   Defendants' uses of GLOBAL FORCE WRESTLING and GFW trademarks are spurious and identical with, or substantially indistinguishable from, GFE's GLOBAL FORCE WRESTLING and GFW trademarks.

29

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 114.**

115.    Defendants have infringed GFE's registered GLOBAL FORCE WRESTLING and GFW trademarks in violation of 15 U.S.C. § 1114.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 115.**

116.    Defendants intentionally used the infringing marks knowing that the infringing marks are counterfeit marks as defined by 15 U.S.C. §1116.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 116.**

117.    Defendants' acts of infringement have caused GFE damages, and GFE seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unauthorized and infringing use of the counterfeit marks, or variants thereof similar to or likely to cause confusion with GLOBAL FORCE WRESTLING and GFW trademarks, for the damages sustained by GFE, for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 117.**

118.    GFE seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or GFE's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 118.**

119.    Pursuant to 15 U.S.C. § 1116 and equity, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 119.**

120.    Pursuant to 15 U.S.C. § 1118 and equity, GFE is entitled to impoundment and destruction of infringing articles.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 120.**

121.    GFE is further entitled to all available remedies provided by common law, including, but not limited, to temporary and permanent injunctive relief; Defendants' profits; any damages sustained by GFE; and costs.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 121.**

### COUNT VI
### FEDERAL STATUTORY UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)
### (*against all Defendants*)

122.    GFE incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

123.    Defendants have used names and marks which are identical or confusingly similar to the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) with the intent to deceive the public into believing that goods and services offered or sold by Defendants are made by, approved by, sponsored by, or affiliated with GFE.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 123.**

124.    Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods and services as the goods and services of, approved by, sponsored by, or affiliated with GFE, and with the intent to deceive and defraud the public.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 124.**

31

125.    Defendants' acts constitute unfair competition and passing off, and have caused GFE damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to GFE's goodwill and reputation caused by Defendants.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 125.**

126.    Defendants' acts constitute violations of 15 U.S.C. § 1125.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 126.**

127.    Defendants' acts of unfair competition have caused GFE damages, and GFE seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of GFE's goods and services, for the damages sustained by GFE, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 127.**

128.    GFE further seeks judgment for three times the amount of Defendants' profits or GFE's damages, whichever is greater, due to the nature of Defendants' conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 128.**

129.    Pursuant to 15 U.S.C. § 1116 and equity, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 129.**

130.    Pursuant to 15 U.S.C. § 1118 and equity, GFE is entitled to impoundment and destruction of infringing articles.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 130.**

## COUNT VII
## FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT, 15
## U.S.C. § 1125(a)
### (*against all Defendants*)

131.    GFE incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

132.    Defendants have caused products and/or services to enter interstate commerce designated with variations of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo).

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 132.**

133.    Defendants' use of said designation and other representations constitute a false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with GFE and as to the origin, sponsorship, or approval of such goods and services by GFE.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 133.**

134.    Defendants' acts are in violation of 15 U.S.C. § 1125 in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with GFE and as to the origin, sponsorship, and approval of Defendants' goods, services, and commercial activities by GFE.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 134.**

135.    Defendants' acts have caused GFE damages, and GFE seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing

33

off of GFE's goods and services, for the damages sustained by GFE, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 135.**

136.    GFE further seeks judgment for three times the amount of Defendants' profits or GFE's damages, whichever is greater, due to the nature of Defendants' conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 136.**

137.    Pursuant to 15 U.S.C. § 1116 and equity, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 137.**

138.    Pursuant to 15 U.S.C. § 1118 and equity, GFE is entitled to impoundment and destruction of infringing articles.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 138.**

### COUNT VIII
### UNFAIR COMPETITION IN VIOLATION OF TENNESSEE COMMON LAW
### (*against all Defendants*)

139.    GFE incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

140.    As alleged herein, GFE owns the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo).

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 140.**

34

141.    As alleged herein, the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo) are valid and legally protectable.

**ANSWER: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 141.**

142.    Defendants' infringing use of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo), and/or variants thereof similar to or likely to cause confusion with the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo), is likely to cause confusion concerning the origin of the goods and services associated with the mark.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 142.**

143.    GFE and Defendants compete for a common pool of customers. As alleged herein, Defendants have engaged in unfair, deceptive, or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Tennessee common law.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 143.**

144.    Through Defendants' unauthorized use of the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo), and/or variants thereof similar to or likely to cause confusion with the GLOBAL FORCE WRESTLING and GFW trademarks (both words and logo), in connection with their products and services, on the Fight Network and Global Wrestling Network (both broadcast, streaming, and websites), on the IMPACT! website, and in other commerce, Defendants have committed trademark infringement, passing off, palming off,imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 145.**

35

145.    Defendants are liable to GFE for unfair competition under Tennessee law, because Defendants' conduct is tortious and has deprived GFE of customers and other prospects.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 145.**

146.    Defendants' acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase its sales, customer base, and share in the wrestling industry and/or eliminate GFE from that industry.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 146.**

147.    Defendants' acts as alleged herein constitute unfair competition in violation of Tennessee law.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 147.**

148.    Defendants' acts constituting unfair competition have caused GFE damages as alleged herein.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 148.**


149.    Defendants' foregoing acts constitute unfair competition and infringement of GFE's common law rights for which GFE has no adequate remedy at law.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 149.**

150.    Defendants' acts of unfair competition have caused GFE damages, and GFE seeks judgment for the damages sustained by GFE; for all costs necessary to remediate the unfair competition and passing off and their effects; and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 150.**

151.    GFE further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or GFE's damages, whichever is greater, due to the nature of Defendants' conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 151.**

152.    Further, GFE is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 152.**

**COUNT IX**
**COMMON LAW UNJUST ENRICHMENT**
**(*against all Defendants*)**

153.    GFE incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

154.    Upon information and belief, Defendants' willful and knowing acts, including its use of GFE's trademarks and trade names, permitted Defendants to procure customers that it otherwise would not have been able to obtain.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 154.**

155.    GFE has conferred a benefit, directly or indirectly, upon Defendants through Defendants' use of the infringing marks.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 155.**

156.    Defendants have received appreciable benefits from using the infringing marks in commerce.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 156.**

37

157.    It is inequitable for Defendants to retain the benefits of the use of the infringing marks, including, but not limited to, monetary and reputational benefits and value of GFE's trademarks.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 157.**

158.    Defendants' acts have caused GFE damages such that monetary (compensatory, incidental, and punitive) and injunctive remedies are appropriate.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 158.**

159.    Defendants have been unjustly enriched by virtue of its use of the infringing marks, to the detriment of GFE, as well as consumers in the marketplace.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 159.**

160.    Defendants' actions have been made willfully and knowingly.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 160.**

161.    Defendants' acts have caused GFE damages and unjustly enriched Defendants as alleged herein.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 161.**

162.    GFE is entitled to all available remedies, including preliminary and permanent injunctive relief, damages, Defendants' profits, enhanced damages, and costs.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 162.**

## COUNT X
## TENNESSEE CONSUMER PROTECTION ACT VIOLATIONS

163.    GFE incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

38

164. Defendants' statement, actions and/or omissions constitute unfair and/or deceptive practice in violation of the Tennessee Consumer Protection Act, TENN. CODE ANN. § 47-18-101 *et seq.*, including, but not limited to:

- Representing that goods or services have sponsorships, approval, characteristics, ingredients, uses, benefits or quantities that they do not have (TENN. CODE ANN. § 47-18-104(5));and

- Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods offered in such a manner that later, on the disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services (TENN. CODE ANN. § 47-18-104(21)).

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 164.**

165. GFE has suffered an ascertainable loss of money and market share as a result of the use or employment by Defendants of the aforementioned unfair or deceptive acts or practices.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 165.**

166. Defendants' acts are and were willful and knowing, thus entitling GFE to all available remedies pursuant to the Tennessee Consumer Protection Act, including, but not limited to, preliminary and permanent injunctive relief; GFE's damages; Defendants' profits; treble damages; attorney fees; expenses; costs; pre-judgment and post-judgment interest; and other equitable relief.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 166.**

## COUNT XI
## CONVERSION AND/OR TROVER
### *(against all Defendants)*

167. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

**ANSWER**: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.

168.    Defendants came into possession of the only set of masters of the 16 one-hour episodes of GFW Amped.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 168 because Plaintiffs did not have masters of 16 completed one-hour episodes.

169.    Plaintiffs are the rightful owners of the masters.

**ANSWER**: Anthem Wrestling lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 169 but denies same on the basis that Plaintiff had not paid the service persons who created and performed the post-production work on the alleged masters so its ownership of them is in doubt.

170.    Plaintiffs have made a demand for the return of the masters.

**ANSWER**: Anthem Wrestling admits the allegations of Paragraph 170.

171.    Defendants have no ownership rights in the masters.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 171.

172.    Defendants are legally obligated to return the masters to Plaintiffs.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 172.

173.    Defendants refused to return the masters to Plaintiffs.

**ANSWER**: Anthem Wrestling denies the allegations of Paragraph 173.  In further answering, Anthem Wrestling states it that the raw footage provided by Plaintiffs to Anthem Wrestling is no longer in its possession.

174.    Defendants defied Plaintiffs' rights in the masters by intentionally exercising dominion and control over the same.

40

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 174.**

175.  Defendants appropriated the masters for Defendants' own use and benefit.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 175.**

176.  Defendants intentionally deleted, destroyed, or otherwise wrongfully disposed of the masters.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 176.**

177.  Defendants knew at the time of deletion, destruction, or other disposal of the masters that they did not own the masters.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 177.**

178.  Defendants' intentional invasion of Plaintiffs' possessory rights in the masters is of such a high level that it constitutes conversion.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 178.**

179.  GFE is entitled to all available remedies, including damages, Defendants' profits, costs, and recovery of the value of the masters, which are valued in excess of $300,000 per each one-hour episode.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 179.**

180.  GFE further seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits and/or GFE's damages, whichever is greater, due to the nature of Defendants' intentional, wanton, willful and/or malicious conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 180.**

### COUNT XII
### NEGLIGENCE
*(against all Defendants)*

181.  Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

41

**ANSWER: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

182.    At all times relevant, Defendants owed Plaintiffs a duty of reasonable care.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 182.**

183.    A reasonable person under like circumstances would not have lost or destroyed or permitted the loss or destruction of the masters.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 183.**

184.    Defendants breached the duty of reasonable care owed to Plaintiffs by losing, destroying, or otherwise disposing of the masters.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 184.**

185.    Defendants' breach actually and proximately caused, and continues to cause, harm and loss to Plaintiffs.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 185.**

186.    Defendants were aware of, but consciously disregarded, the substantial and unjustifiable risk of harm caused to Plaintiffs upon disposal of the masters, constituting a gross deviation from the standard of care that and ordinary person would exercise under the circumstances.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 186.**

187.    GFE is entitled to all available remedies, including damages, Defendants' profits, costs, and recovery of the value of the masters, which are valued in excess of $300,000 per each one-hour episode.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 187.**

188.     GFE further seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits and/or GFE's damages, whichever is greater, due to the egregious nature of Defendants' reckless conduct.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 188.**

## COUNT XIII

### CANCELLATION OF THE "JEFF JARRET" TRADEMARK REGISTRATION UNDER THE LANHAM ACT, 15 U.S.C. § 1127 AND DECLARATORY JUDGMENT OF ABANDONMENT
*(against all Defendants)*

189.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein. Defendants terminated their business relationship with Mr. Jarrett at the end of October 2017.

**ANSWER: Anthem Wrestling realleges and incorporates each and every of its foregoing answers as though fully set forth herein.**

190.     Defendants have discontinued use of the JEFF JARRETT trademark with no legitimate intent to resume use.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 190.**

191.     Defendants have abandoned the JEFF JARRETT trademark.

**ANSWER: Anthem Wrestling denies the allegations of Paragraph 191.**

192.     Plaintiffs seek cancellation of U.S. Registration No. 3,269,268 for JEFF JARRETT for the reason of, at least, nonuse and/or abandonment with no legitimate intent to resume use.

**ANSWER: Anthem Wrestling admits that Plaintiffs are seeking cancellation of U.S. Registration No. 3,269,268 for JEFF JARRETT.   Anthem Wrestling denies the remaining allegations of Paragraph 192.**

43

193.   Plaintiffs also seek a declaratory judgment under 28 U.S.C. § 2201 that Defendants do not own valid, existing, and enforceable trademarks rights in Mr. Jarrett's name including without limitation JEFF JARRETT.

> **ANSWER: Anthem Wrestling admits Plaintiffs are seeking a declaratory judgment that Anthem Wrestling does not own a valid, existing, and enforceable trademark in the JEFF JARRETT mark.  Anthem Wrestling denies the remaining allegations of Paragraph 193.**

## PRAYER FOR RELIEF

Plaintiffs' Prayer for Relief sets forth requests for relief to which no response is required. To the extent necessary, Anthem Wrestling denies that Plaintiffs are entitled to any of the requested relief, or to any relief at all.

## DEMAND FOR JURY TRIAL

Plaintiffs are not entitled to a jury trial. The term sheet (Exhibit 2 to Second Amended Complaint) upon which they rely in this matter contains the following language, "EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS SUMMARY OF TERMS OR THE TRANSACTIONS CONTEMPLATED HEREBY."

## GENERAL DENIAL

Anthem Wrestling further denies each and every allegation contained in the Complaint which Anthem Wrestling has not specifically admitted, denied, or otherwise responded to herein.

## AFFIRMATIVE AND OTHER DEFENSES

Anthem Wrestling hereby states the following affirmative and other defenses to the causes of action alleged in Plaintiffs' Second Amended Complaint:

44

1.     Anthem Wrestling is the owner of U.S. Registration No. 3,269,268 for JEFF JARRETT and Anthem Wrestling acted at all times in compliance with its obligations to maintain that trademark registration.

2.     Plaintiffs granted a license to Anthem Wrestling for use of Jeff Jarrett's name and likeness and Anthem Wrestling acted at all times in compliance with that license.

3.     Plaintiffs granted a license to Anthem Wrestling for use of Plaintiffs' trademarks that are named herein and Anthem Wrestling acted at all times in compliance with that license.

4.     Plaintiffs granted a license to Anthem Wrestling for use of the Amped Content and Anthem Wrestling acted at all times in compliance with that license.

5.     The Second Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

6.     The requested relief is barred because there is no likelihood of confusion between any valid trademark owned by Plaintiffs and the products or content sold by Anthem Wrestling because, among other reasons, the products contained both parties' marks.

7.     There is no likelihood of confusion, mistake or deception because, *inter alia*, the Global Fighting Network Mark and the alleged trademarks of Plaintiffs are not confusingly similar.

8.     There is no likelihood of confusion, mistake, or deception because, *inter alia*, Plaintiffs' Global Force Entertainment marks are weak and only entitled to a narrow scope of protection.

9.     The relief requested as against Anthem Wrestling is barred because no action or omission by Anthem Wrestling caused Plaintiffs injury.

10.     Plaintiffs have failed to state a claim against Anthem Wrestling for unjust enrichment because Plaintiffs were compensated by Anthem Wrestling.

45

11. Plaintiffs' claims are barred to the extent they have, by virtue of their own acts, omissions and conduct, waived any and all claims against Anthem Wrestling.

12. Plaintiffs' claims are, by virtue of their own acts, omissions and conduct, estopped.

13. Any equitable relief sought by Plaintiffs are barred to the extent of their unclean hands.

14. Plaintiffs have suffered no damages.

**PRAYER FOR RELIEF**

1. That Plaintiffs' Second Amended Complaint be dismissed with prejudice for failure to state a claim and lack of subject matter jurisdiction;

2. Award Anthem Wrestling its reasonable attorneys' fees and other costs incurred in this action; and

3. Grant Anthem Wrestling other relief to which it is entitled.

**COUNTERCLAIM OF ANTHEM WRESTLING AGAINST JEFF JARRETT**

1. This action is the aftermath of a failed merger between two wrestling entertainment companies – Anthem Wrestling (Anthem") and Plaintiff Global Force Entertainment, Inc. ("GFE").

2. GFE is Plaintiff Jeff Jarrett's company, a well-known character in the wrestling industry.

3. Anthem Wrestling and Mr. Jarrett entered into discussions wherein GFE would merge into Anthem Wrestling in exchange for Mr. Jarrett receiving a seat on the board of managers, an officer-level position with a large salary, a job for Mr. Jarrett's wife, and an equity interest in Anthem Wrestling.

46

4.      The plan was to use Mr. Jarrett and his extensive experience in the wrestling business to help grow and differentiate the IMPACT! Wrestling brand that Anthem had recently acquired. Mr. Jarrett would bring to the deal his GLOBAL FORCE WRESTLING and GFW brands and raw, unedited footage of wrestling content (the "Amped Content").

5.      The Amped Content at issue in Plaintiffs' Complaint was not new. It had been produced approximately two years earlier but, thus far, Plaintiffs had been unable to find anyone interested in monetizing it.

6.      On or around the time the Amped Content was originally created, Plaintiffs entered into a contract with a company named KSTV, LLC, owned by an individual named Kevin Sullivan. KSTV was to do all of the post-production work on the raw Amped Content for $292,000 (the "Post-Production Contract"). The post-production work was for the purpose of turning raw film footage into marketable content that could be commercially exploited.

7.      KSTV performed the post-production work and turned the raw footage into marketable content but Plaintiff did not make the required payments under the Post-Production Contract. Accordingly, KSTV would not release physical custody of the Amped Content to Plaintiffs because it had not been paid for its services.

8.      Plaintiffs were unable to consummate any deals to exploit the Amped Content and were unable to pay off their bill to KSTV to obtain custody of it.

9.      The proposed merger with Anthem Wrestling offered Plaintiffs a way out of this dilemma.

10.      The Plaintiffs and Anthem Wrestling planned to complete and finalize the Amped Content, add voiceover, and perform the other necessary post-production work in order to get it in shape to broadcast and sell.

47

11.     In order to carry out these plans, Mr. Jarrett was made Chief Creative Officer of Anthem Wrestling effective April of 2017, and given complete authority over its wrestling operations and the content that the company would create, market, and sell.

12.     Under Mr. Jarrett's watch as Chief Creative Officer, the post-production work on the Amped Content was completed and was packaged as five different PPV broadcasts and was marketed with both the GFW and IMPACT! Trademarks.

13.     In order to get KSTV to allow the Amped Content to be used, Anthem Wrestling worked out a deal with Kevin Sullivan to pay him $40,000 as an installment on Plaintiffs' outstanding debt to it. In return, KSTV allowed the release of the Amped Content, but reserved its rights to be paid the remaining payments under its contracts.

14.     Anthem Wrestling paid the $40,000 installment payment to KSTV and KSTV released the content for use in the five PPV broadcasts as described above.

15.     The Amped Content was also packaged as DVDs and sold on-line.  Also during Mr. Jarrett's tenure as Anthem Wrestling's Chief Creative Officer, the company decided to use the phrase "Global Wrestling Network" as a descriptor for an Over-the-Top application developed by Anthem Wrestling upon which wrestling content would be marketed.

16.     The parties' merger plans did not work out as expected.  Mr. Jarrett's employment was terminated near the end of October 2017. The sale and marketing of the Amped Content was not successful and did not turn a profit.

17.     Plaintiffs brought this action alleging copyright infringement, violations of the Tennessee Personal Rights Protection Act, numerous trademark related claims under the Lanham Act and Tennessee state law, and a cancellation of the **JEFF JARRETT** trademark owned by Defendant Anthem Wrestling as well as state law based claims for conversion and trover and

48

negligence. All but one of Plaintiffs' intellectual property claims arise out of the same conduct – Anthem Wrestling's broadcast and sale of the Amped Content using both parties' trademarks pursuant to the failed merger.

18.     Almost all of Mr. Jarrett's claims arise out of conduct he personally authorized and oversaw during his tenure as Chief Creative Officer of Anthem Wrestling, a post he officially held from April to October of 2017, but performed as a consultant since January of 2017. As Anthem's Chief Creative Officer, Mr. Jarrett gave both express and implied permission for Anthem Wrestling to use the Amped Content, the Plaintiffs' trademarks, and Jarrett's own image and likeness (collectively the "Jarrett Intellectual Property") as described in the Second Amended Complaint. Moreover, while acting as Anthem Wrestling's Chief Content Officer, Jarrett participated in and authorized the selection of the trademark **GLOBAL WRESTLING NETWORK** for use by Anthem Wrestling.

19.     As an officer of Anthem Wrestling, Mr. Jarrett owed a duty of fiduciary duty and loyalty to it.

20.     Jarrett knew that Anthem Wrestling would rely on his representations that it had the right to use all of the Jarrett Intellectual Property.

21.     If Mr. Jarrett believed that Anthem Wrestling did not have the right to use the Jarrett Intellectual Property as he now claims, his encouragement and authorization of Anthem Wrestling's use of the Jarrett Intellectual Property was a breach of his fiduciary duty and loyalty to Anthem.

49

## COUNTERCLAIM ONE

### Breach of Duty of Loyalty

22.     Anthem Wrestling repeats and re-alleges the allegations contained in the preceding paragraphs of this Counter-Complaint and incorporates such paragraphs herein by reference.

23.     As an employee of Anthem Wrestling, Jarrett owed a duty of loyalty, which required him to act for the exclusive benefit of Anthem Wrestling and with the utmost good faith in furthering and advancing Anthem Wrestling's interests with respect to all matters failing within the scope of his employment.

24.     To the extent that Jarrett's conduct does not constitute the grant of an implied license, Jarrett breached his duty of loyalty to Anthem Wrestling when he arranged for it to use the Jarrett Intellectual Property without giving it the necessary licenses to do so and without disclosing that information to it, thus incurring extensive liability and legal expense for Anthem.

25.     As a direct consequence of Jarrett's breach of duty of loyalty, Anthem is entitled to recover damages against Jarrett in an amount to be determined at the trial of this matter.

## COUNTERCLAIM TWO

### Breach of Fiduciary Duty

26.     Anthem Wrestling repeats and re-alleges the allegations contained in the preceding paragraphs of this Counter-Complaint and incorporates such paragraphs herein by reference.

27.     By virtue of his position as Chief Content Officer at Anthem Wrestling, Jeff Jarrett owed a fiduciary duty to Anthem Wrestling.

28.     As such, he had a duty of loyalty, obedience, care, and disclosure toward Anthem Wrestling.

29.     To the extent that Jarrett's conduct does not constitute an implied license, Jarrett violated these duties when he arranged for Anthem to use the Jarrett Intellectual Property without giving it the necessary licenses to do so and without disclosing this information to it, thus incurring extensive liability and legal expense for Anthem.

30.     As a direct consequence of Jarrett's breach of fiduciary duty, Anthem is entitled to recover damages against Jarrett in an amount to be determined at the trial of this matter.

## COUNTERCLAIM THREE

### Unjust Enrichment

31.     Anthem Wrestling repeats and re-alleges the allegations contained in the preceding paragraphs of this Counter-Complaint and incorporates such paragraphs herein by reference.

32.     Anthem Wrestling made a $40,000 payment on Plaintiffs' behalf on its past-due account with KSTV in order to broker the release of the Amped Content for the PPV shows. This payment served to obtain the release of the Amped Content and served to reduce Plaintiffs' debt to KSTV, both of which benefitted and enriched Plaintiffs.

33.     Plaintiffs received these benefits and understood that Anthem Wrestling expected to be reimbursed for this payment to KSTV.

34.     It is unjust for Plaintiffs to retain the benefits of its reduced debt to KSTV without paying for it.

35.     Anthem Wrestling has been damaged by Plaintiffs conduct.

51

WHEREFORE, in view of the above allegations, Anthem Wrestling requests the following relief:

1. All damages arising from Jarrett's breach of his duty of loyalty to Anthem Wrestling, in an amount to be determined at trial;

2. All damages arising from Jarrett's breach of his duty of loyalty to Anthem Wrestling, in an amount to be determined at trial;

3. The sum of $40,000 plus post-judgment interest as the sum Plaintiffs have unjustly retained by accepting the benefits of Anthem Wrestling's $40,000 payment to KSTV.

4. Any other relief to which Anthem Wrestling is entitled after a full trial on the merits.

Dated: July 17, 2019                           Respectfully submitted,

                                               **BASS, BERRY & SIMS PLC**

                                               /s/ Paige W. Mills
                                               Paige W. Mills (TN #016218)
                                               150 Third Avenue So, Suite 2800
                                               Nashville, TN 37201
                                               Tel: (615)742-6200
                                               pmills@bassberry.com

                                               *Attorneys for Defendant Anthem Wrestling*
                                               *Exhibitions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2019, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

Samuel F. Miller
Nicholas R. Valenti
Sara R. Ellis
Miller Legal Partners, PLLC
Fifth Third Center – Suite 2000
424 Church Street
Nashville, TN 37219

/s/ Paige W. Mills

53