**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

_____

Global Force Entertainment, Inc. and Jeffrey
Jarrett,

            Plaintiffs,

v.

Anthem Wrestling Exhibitions, LLC,

            Defendant.
_____

Case No. 3:18-cv-00749
Chief Judge Waverly D. Crenshaw, Jr.
Magistrate Judge Joe Brown

**DEFENDANT ANTHEM WRESTLING EXHIBITIONS, LLC'S
STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Anthem Wrestling Exhibitions, LLC ("Anthem Wrestling") and for statement

of undisputed material facts in support of its motion for summary judgment pursuant to Local Rule

56.01(b) states:

**I.     The Parties**

1.   Plaintiff Global Force Entertainment ("GFE") is a Tennessee corporation with its principal

place of business in Goodlettsville, Tennessee. Second Amended Complaint at ¶ 1.

RESPONSE:

2.   Plaintiff Jeff Jarrett ("Jarrett") is a resident of Tennessee. Second Amended Complaint at

¶ 2.

RESPONSE:

3.   Defendant Anthem Wrestling Exhibitions, LLC is a Delaware corporation with its principal place of business located at 3201 Dickerson Pike, in Nashville, Tennessee. Dkt. 31, PageID#236; Declaration of Ed Nordholm (Dkt. No. 60) at ¶ 7.

RESPONSE:

## II.   **Plaintiff Jeffrey Jarrett's Professional Wrestling Background**

4.   Plaintiff Jeffrey Jarrett is a famous professional wrestler who wrestled his first match on April 6, 1986.  Deposition Transcript of Jeffrey Jarrett ("JJ Dep. Trans.")[1], p. 10:13-15.

RESPONSE:

5.   Throughout his professional wrestling career, Mr. Jarrett performed using the name Jeff Jarrett either alone or in conjunction with monikers, personas, or nicknames such as "The Golden Boy," "The Chosen One," and "Simply Irresistible."  JJ Dep. Trans., p.12:10-21.

RESPONSE:

6.   Professional wrestling is a sporting event or sports entertainment where fans buy tickets to enter an arena to watch live wrestling matches in a ring where the outcome, from the fans' perspective, is unknown.  JJ Dep. Trans., pp. 38:9-21; 252:25-253:1-3.

---

[1] Excerpts from the deposition of Jeff Jarrett are attached to this Statement of Undisputed Facts as **Exhibit A**.

RESPONSE:

7.     During the 1990s, Mr. Jarrett primarily wrestled for the WWF, predecessor to the current WWE.  JJ Dep. Trans., p. 221:4-14.

RESPONSE:

8.     In 2002, Mr. Jarrett formed a new wrestling promotion company called NWA-TNA with his father, Jerry Jarrett, who was also a famous professional wrestling personality.  JJ Dep. Trans., pp. 10:25-11:20; 13:15-21.

RESPONSE:

## III.     The JEFF JARRETT Trademark

9.     In his role as part owner of NWA-TNA, Mr. Jarrett authorized NWA-TNA to obtain a trademark in the mark JEFF JARRETT for use with costumes, namely wrestling costumes and masks for children and teenagers, toy action figures and accessories, and entertainment services. JJ Dep. Trans., p.158:1-25.

RESPONSE:

10.    NWA-TNA registered the mark JEFF JARRETT, Reg. No. 326268, on December 16, 2004 (the "JARRETT Mark").  JJ Dep. Trans., pp. 153:23-156:8; Declaration of Paige Mills [Dkt. 37].

RESPONSE:

11.    When TNA applied for the JARRETT Mark, it was required to file a signed document evidencing the consent of Jeff Jarrett (the "Consent"). Fourth Declaration of Edward Nordholm at ¶ 4; Dkt. No. 61-2, pg. 5.

RESPONSE:

12.    Jeff Jarrett executed a written Consent, giving express written permission for the use of his name and consent for the registration of the JARRETT Mark for use with costumes, action figures, and "entertainment services, namely wrestling exhibits and performances by a professional wrestler and entertainer; providing wrestling news and information via a global computer network." Fourth Declaration of Edward Nordholm at ¶ 4; Dkt. 61-2, pg. 5.

RESPONSE:

13.    The written Consent underlying the registration has never been revoked or amended. Fourth Declaration of Edward Nordholm at ¶ 5.

RESPONSE:

4

14.     In approximately 2012, NWA-TNA was rebranded as Impact Wrestling, which is the name that remains in use today.  JJ Dep. Trans., pp. 15:14-16:23.

RESPONSE:

15.     Mr. Jarrett resigned from NWA-TNA in December 2013 and sold his final ownership interest in the third quarter of 2015.  JJ Dep. Trans., pp. 16:24-17:3; 66:5-22.

RESPONSE

## IV.     Creation of GFE

16.     After leaving Impact Wrestling, Mr. Jarrett created Global Force Entertainment, Inc. ("GFE") in April 2014.  JJ Dep. Trans., p. 18:11-12.

RESPONSE:

17.     Initially, Mr. Jarrett was the sole shareholder of GFE, but Scott D'Amore purchased a five percent (5%) interest in GFE in late 2014.  JJ Dep. Trans., p. 18:13-19:17; Deposition of Kurt Myers ("Myers Dep. Trans."), p. 12:13-23.[2]

RESPONSE:

_____

[2] Excerpts from the deposition of Kurt Myers are attached to this Statement of Undisputed Material Facts as **Exhibit B.**

5

18.     Currently Mr. Jarrett and Mr. D'Amore are the only owners of GFE.  Myers Dep.

Trans., p. 12:13-23.

        RESPONSE:



19.     Since its creation, GFE has had two corporate officers – Jeffrey Jarrett as

president/CEO and Kurt Myer as treasurer.  JJ Dep. Trans., p. 207:10-23.

        RESPONSE:



20.     GFE is a professional wrestling company that operates under the name Global

Force Wrestling or GFW.  JJ Dep. Trans., p. 207:10-23; 25:1-7.

        RESPONSE:



21.     In early 2015, GFE began producing wrestling content at live events through co-

promotions with other independent wrestling operators, but none of those events aired on

television.  JJ Dep. Trans., p. 19:18-20; 22:24-24:25.

        RESPONSE:

22.     In an effort to further market itself to broadcasters, on July 24, August 21, and October 23, 2015, GFE filmed a wrestling event known as Amped at the Orleans Theater in Las Vegas, Nevada ("Amped").   JJ Dep. Trans., p. 28:20-29:7; Deposition of Scott D'Amore ("D'Amore Dep Trans."), pp.42:19-45:14.[3]

RESPONSE:

23.     After the recordings, the line cut or master recordings of the Amped content (the "Raw Footage Masters") required additional post-production work.  JJ Dep. Trans., p. 42:1-14.

RESPONSE:

24.      GFE, pursuant to a verbal agreement, used KSTV to perform post-production on the Raw Footage Masters.  JJ Dep. Trans., pp. 46:22-47:14.

RESPONSE:

25.     GFE marketed the Amped content as a pilot to broadcasters, but at no time did a broadcaster purchase the Amped content. JJ Dep. Trans., pp. 59:12-60:11.

RESPONSE:

---

[3] Excerpts from the deposition of Scott D'Amore are attached to this Statement of Undisputed Material Facts as **Exhibit C**.

7

## V. **Anthem Wrestling Acquires NWA-TNA's Legacy Assets**

26.     Effective January 1, 2017, Anthem Wrestling acquired the legacy assets of NWA-TNA. Deposition Transcript of Ed Nordholm ("Nordholm Dep. Trans."), pp. 42:25-44:5.

RESPONSE:

27.     As part of Anthem Wrestling's acquisition of the legacy assets of NWA-TNA, Anthem Wrestling, was assigned (the "Assignment"), among other things, the mark JEFF JARRETT, Reg. No. 3269268 (the "JARRETT Mark"). Fourth Declaration of Edward Nordholm at ¶ 7; Dkt. No. 61-3.

RESPONSE:

28.     There were no limitations on this Assignment. All rights and interests to the JARRETT Mark were conveyed to Anthem Wrestling by NWA-TNA as a part of Anthem Wrestling's purchase of all of NWA-TNA's assets. Fourth Declaration of Edward Nordholm at ¶ 8.

RESPONSE:

29.     The JARRETT Mark remains the property of Anthem Wrestling and is and has been in continuous use since its assignment to Anthem Wrestling by TNA. Fourth Declaration of Edward Nordholm at ¶ 9.

8

RESPONSE:

30.     All appropriate maintenance documents at the United States Patent and Trademark Office ("USPTO") have been filed with respect to the JARRETT Mark, including the Section 8 and 15 affidavits, making the JARRETT Mark valid, enforceable, and incontestable. Fourth Declaration of Edward Nordholm at ¶ 6.

RESPONSE:

31.     In addition, the necessary renewal was appropriately filed in September of 2017. Fourth Declaration of Edward Nordholm at ¶ 6 and supporting exhibit thereto.

RESPONSE:

32.     Anthem Wrestling has no intention to abandon the JARRETT Mark for any of the uses enumerated in the registration. Fourth Declaration of Edward Nordholm at ¶ 9.

RESPONSE:

33.     Anthem Wrestling continues to use the JARRETT Mark in connection with the sale and broadcast of legacy NWA-TNA wrestling content, pay-per-view ("PPV") content, and the sale

9

of DVDs such as "Jeff Jarrett, King of the Mountain." JJ Dep. Trans., pp. 166:20-168:1; Fourth Declaration of Edward Nordholm at ¶ 10.

RESPONSE:

34. Anthem Wrestling has used its JARRETT Mark to brand the PPV Amped Content that is at issue in this case. Fourth Declaration of Edward Nordholm at ¶ 11.

RESPONSE:

## VI. Anthem hires Jarrett as Chief Creative Officer

35. In January 2017, based on his prior experience with the NWA-TNA, Anthem Wrestling retained Mr. Jarrett as a consultant to assist Anthem Wrestling with its operations. JJ Dep. Trans., pp. 64:17-65:8; 67:1-1-13.

RESPONSE:

36. As a consultant for Anthem Wrestling, Mr. Jarrett was involved in all three phases of Anthem Wrestling's business – talent, production, and creative. JJ Dep. Trans., pp. 70:21-71:10.

RESPONSE:

10

37.     Subsequently to Mr. Jarrett being hired as a consultant, Mr. Jarrett and Anthem Wrestling began negotiations for Anthem Wrestling and GFE to merge and Mr. Jarrett to become the Chief Creative Officer of Anthem Wrestling.  JJ Dep. Trans., pp. 89:17-90:5.

RESPONSE:

38.     As a result of those negotiations, Mr. Jarrett and Anthem Wrestling signed a term sheet effective April 17, 2017 whereby Mr. Jarrett became Anthem Wrestling's Chief Creative Officer and Mr. Jarrett's wife was hired as Anthem Wrestling's office manager. JJ Dep. Trans., pp. 90:6-91:10; 93:18-22; 96:16-97:12.

RESPONSE:

39.     For his work as Chief Creative Office, Mr. Jarrett was paid an annual salary of $250,000.00 and his wife was paid an annual salary of $52,000.00.  JJ Dep. Trans., pp. 96:7-97:12.

RESPONSE:

40.     As Chief Creative Officer, Mr. Jarrett had primary responsibility for all of Anthem Wrestling's content development and production as well as remaining involved in all aspects of Anthem Wrestling's business.  JJ Dep. Trans., pp. 104:2-11; Nordholm Dep. Trans., 26:6-12, 26:16-25.[4]

---

[4] Excerpts from the deposition of Edward Nordholm are attached to this Statement of Undisputed Material Facts as **Exhibit D.**

RESPONSE:

41.     As Chief Creative Officer, Mr. Jarrett also has responsibilities for speaking to the media on behalf of Anthem Wrestling and he had input into Anthem Wrestling's budgets.  JJ Dep. Trans., pp. 114:22-115:4.

RESPONSE:

42.     Based on his prior involvement with NWA-TNA, Mr. Jarrett had previously worked with many of the legacy NWA-TNA employees and contractors that came to work for Anthem Wrestling as part of Anthem Wrestling's acquisition of NWA-TNA.  JJ Dep. Trans., pp. 107:23-109:4.

RESPONSE:

## VII.     Mr. Jarrett's Incorporation of GFW Into Anthem Wrestling

43.     As Chief Creative Officer, Mr. Jarrett worked to integrate GFW's wrestlers and championship belts into Impact Wrestling.  Nordhom Dep. Tran., pp. 37:23-39:25; 87:17-88:1.

RESPONSE:

44.     Another integration of GFW and Impact Wrestling involved imbedding the GFW mark into Impact Wrestling's mark.  JJ Dep. Trans., p. 136:6-136:13; Anthem Wrestling 30(b)(6) Deposition Transcript ("Anthem 30(b)(6) Dep. Trans."), pp. 189:10-190:2[5].

RESPONSE:


45.     Mr. Jarrett was directly involved in the process of merging the two logos and he did not object to the GFW mark being added to the Impact Wrestling mark.  JJ Dep. Trans., pp. 136:14-23, 195:11-20.

RESPONSE:


46.     When filing the publically available statement of use ("SOU") at the USPTO in March of 2018, for the mark **GFW**, Jarrett swore under penalty of perjury that Global Force Wrestling or a "related company or licensee" used the mark GFW on DVDs in commerce on August 11, 2017. Dkt. No. 61-4.

RESPONSE:


---

[5] Excerpts from the Anthem Wrestling 30(b)(6) are attached to this Statement of Undisputed Material Facts as **Exhibit E.**

## VIII. The Parties Use of the Amped Content

47.     As part of the merger discussions, Mr. Jarrett and Anthem Wrestling also decided to use the Amped content to create four three-hour PPV episodes.  JJ Dep. Trans., p. 137:7-23; D'Amore Dep. Trans., pp. 62:21-63:25.

RESPONSE:

48.     At the time it was decided to use the Amped content as PPV episodes with Impact Wrestling, KSTV had possession of the sole copy of the raw footage (the "Raw Footage Masters") used to create the broadcast-ready Amped Content ("Amped Content Masters"). JJ Dep. Trans., pp. 49:10-13.

RESPONSE:

49.     GFE still owed KSTV $200,000 for KSTV's post-production work on the Raw Footage Masters.  JJ Dep. Trans., 99:2-14.

RESPONSE:

50.     Anthem Wrestling paid KSTV $40,000 to obtain the release of the Raw Footage Masters from KSTV.  JJ Dep. Trans., p. 197:8-23.

RESPONSE:

14

51.     After obtaining the release of the Raw Footage Masters from KSTV, Anthem Wrestling paid for additional post-production work including adding voice over.  JJ Dep. Trans., p. 197:8-23.

RESPONSE:


52.     Anthem Wrestling used the Raw Footage Masters to create the broadcast-ready Amped Content that was aired in the four PPV events. Fourth Declaration of Edward Nordholm, ¶ 14.

RESPONSE:


53.     Anthem Wrestling began advertising the Amped content as a four-part PPV on July 19, 2017.  JJ Dep. Trans., p. 141:18-20.

RESPONSE:


54.     As episodic programming, each episode of the Amped PPV builds off of what happened in the prior episodes such that the storyline progresses throughout all the episodes.  JJ Dep. Trans., p. 144:17-145:17.

RESPONSE:

15

55.     Consequently, if a person were to watch the first three episodes of the Amped PPV, they would be more likely to watch the fourth episode.  JJ Dep. Trans., p. 248:7-15.

        RESPONSE:

56.     Mr. Jarrett did not object to Anthem Wrestling advertising the Amped content as a four-part PPV series.  JJ Dep. Trans., p. 141:21-25.

        RESPONSE:

57.     The first Amped PPV aired on August 11, 2017 while Mr. Jarrett was still employed by Anthem Wrestling.  JJ Dep. Trans., p. 142:1-10.

        RESPONSE:

58.     The second Amped PPV aired on September 15, 2017 while Mr. Jarrett was still employed by Anthem Wrestling.  JJ Dep. Trans., p. 142:11-21.

        RESPONSE:

59.     The third Amped PPV aired on October 13, 2017 while Mr. Jarrett was still employed by Anthem Wrestling.  JJ Dep. Trans., pp. 142:24-143:10.

RESPONSE:

60.     On September 5, 2017, Anthem Wrestling placed Mr. Jarrett on administrative leave to address personal issues.  Anthem 30(b)(6) Dep. Trans., pp. 236:10-237:21.

RESPONSE:

61.     On October 23, 2017, Anthem Wrestling terminated Mr. Jarrett's employment.  JJ Dep. Trans., p. 102:8-11.

RESPONSE:

62.     After his termination, neither Mr. Jarrett nor anyone else from GFE informed Anthem Wrestling it could not air the fourth Amped PPV.  JJ Dep. Trans., p. 143:11-21; Myers Dep. Tran., pp. 55:25-56:7; D'Amore Dep. Tran., p. 99:10-14.

RESPONSE:

17

63.     The fourth Amped PPV aired on December 8, 2017, after Mr. Jarrett's employment with Anthem Wrestling had been terminated.  JJ Dep. Trans., p. 143:11-21.

RESPONSE:

64.     Anthem Wrestling began phasing out logos including the Impact and GFW mark on approximately October 23, 2017.  JJ Dep. Trans., p. 218:8-13.

RESPONSE:

IX.     **Development of the Global Wrestling Network Logo**

65.     During his time as Chief Creative Officer, Anthem Wrestling was developing a mobile application known as Global Wrestling Network or "GWN" to feature legacy NWA-TNA content, Impact Wrestling content, and content from other wrestling providers.  JJ Dep. Trans., p. 126:2-9.

RESPONSE:

66.     During his employment at Anthem Wrestling, Mr. Jarrett was directly involved in selecting the color of the GWN logo, the font and style of the GWN logo, and the final development of the GWN logo.  JJ Dep. Trans., pp. 126:24-128:4.

RESPONSE:

18

67.     Before selecting green for the GWN logo, Anthem Wrestling and Mr. Jarrett considered other color combinations such as red, black, and green or black and red, but Mr. Jarrett preferred for the GWN logo to have a synergy with the green in the GFW mark.  JJ Dep. Trans., pp. 129:30-132:19.

RESPONSE:


## X. Deletion of the Raw Footage Masters

68.     The Raw Footage Masters were removed from Anthem Wrestling's servers before Mr. Jarrett's termination.  Fourth Nordholm Declaration at ¶ 19.

RESPONSE:


69.     In September 2017, Anthem Wrestling deleted the Raw Footage Masters as part of its normal operations to create space on its servers.  Nordholm Dep. Trans, pp. 100:25-101:23; Fourth Nordholm Declaration at ¶ 15.

RESPONSE:


70.     Before the footage was deleted, Anthem determined that an appropriate backup copy of the Amped Content Masters was preserved. Fourth Nordholm Declaration at ¶ 21.

RESPONSE:

71. The Amped Content Masters that actually aired in the four PPV events is safely preserved and still exists. Fourth Nordholm Declaration at ¶ 15.

     RESPONSE:

72. Accordingly, the only footage that no longer exists is that footage that Anthem Wrestling's creative team (of which Mr. Jarrett was the head as Chief Creative Officer) deemed unnecessary for inclusion in the final broadcast-ready Amped PPV events. Fourth Nordholm Declaration at ¶ 16.

     RESPONSE:

73. Anthem Wrestling would not have returned possession of the Raw Footage Masters to Plaintiffs without reimbursement of the $40,000 that Anthem paid to obtain the masters from KSTV for the post-production work it performed on them. Fourth Nordholm Declaration at ¶ 17.

     RESPONSE:

74.     Plaintiffs did not reimburse Anthem Wrestling for the $40,000 it spent to obtain access to the Raw Footage Masters so that they could be turned into a saleable, broadcast ready product. Fourth Nordholm Declaration at ¶ 18.

RESPONSE:

Respectfully submitted,

**BASS, BERRY & SIMS PLC**

By:     /s/ Paige W. Mills
        Paige W. Mills (TN #016218)
        150 Third Avenue So, Suite 2800
        Nashville, TN 37201
        (615)742-6200
        pmills@bassberry.com

        *Attorneys for Anthem Wrestling Exhibitions,*
        *LLC*

21

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

Samuel F. Miller
Nicholas R. Valenti
Sara R. Ellis
Hayley Hanna Baker
Miller Legal Partners, PLLC
Fifth Third Center – Suite 2000
424 Church Street
Nashville, TN 37219

/s/ Paige W. Mills