**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **GLOBAL FORCE** | ) | |
| **ENTERTAINMENT, INC. ET AL.** | ) | |
| | ) | **CIVIL ACTION NO. 3:18-cv-00749** |
| **Plaintiffs/Counter-Defendants,** | ) | |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **v.** | ) | **MAGISTRATE JUDGE HOLMES** |
| | ) | |
| **ANTHEM WRESTLING** | ) | |
| **EXHIBITIONS, LLC,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

---

## PLAINTIFFS' TRIAL BRIEF

---

### I.     Summary of Plaintiffs' Theories of the Case

Defendant Anthem Wrestling Exhibitions, LLC ("Anthem") was a new entity whose executives had no experience in wrestling, developing wrestling content, or knowledge of the costs required to do so. Anthem's executives begged Mr. Jarrett to join Anthem and merger their two companies. They entered into a Term Sheet and based the valuations of Mr. Jarrett's equity on GFE's brand and the AMPED content. Anthem then used the brand and content, thereby usurping GFE's opportunity to launch a 16-episode pilot and the benefits of that pilot. Anthem later suspended Mr. Jarrett, stripped him of the powers referenced in the Term Sheet, contemplated whether he would sue if fired, and ultimately fired Mr. Jarrett and killed the merger. Yet Anthem continued to use GFE's content and trademarks, as well as Mr. Jarrett's name, image, and likeness. Anthem contends it does not have to pay for anything, and has not to this day paid GFE for the trademarks and content, and ceased paying Mr. Jarrett upon his termination. This case is brought to rectify and compensate GFE and Mr. Jarrett for Anthem's illegal and wrongful conduct related to GFE's trademarks and content, and Mr. Jarrett's right of publicity and cancellation of the JEFF JARRETT trademark registration.

1

## II.    Implied License Defense

Anthem's primary defense to all claims for damages is implied license for GFE's marks, the Original Masters, and the use of Mr. Jarrett's image and likeness. Anthem has the burden of proving the license. *Melanie Howard Music, Inc. v. Warner Bros. Records*, at *6 (M.D. Tenn. Nov. 10, 2009). An "implied license" is an unwritten license to use a something that the fact-finder infers from the circumstances and from the conduct between the parties. *See Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 398–99 (6th Cir.2007). An implied license is a *limited* grant of authority to use a trademark in a defined way. *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1327 (S.D. Fla. 2015).

The key to determining whether an implied license exists is the intent of the parties. *Melanie Howard*, at *7. There is no precise formula for determining whether an implied license exists, but, rather, the court is to examine the "intent" of the parties from the "totality of the circumstances." *Id*. Consideration must be given to "whether the evidence supports the notion that the parties, in essence, made an agreement permitting the defendant to use the work, consistent with certain understanding or terms." *Id*. Although *Melanie* was a copyright case, the test for an implied license within the context of trademark is essentially the same and wholly dependent on the parties' intent. *See, e.g., L.F.P.I.P., Inc. v. Hustler Cincinnati*, 2011 WL 5024356 (S.D. Ohio Oct. 20, 2011).

Whether there is a condition that must be met–such as the occurrence of a specific event– can determine whether an implied license exists. If that condition–such as an event–does not occur, then no license exists. In an analogous case (in the architectural context) *Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305 (N.D.N.Y. 2016), the court held no implied license existed because the parties' intent was conditioned upon the occurrence of an event–namely the

2

completion of a project by which the alleged licensor was terminated prior to completion. *Id.* at 341. *Ranieri* is a similar principal to that of *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998), where the Court affirmed the district court's finding that lack of intent to create an implied license was shown by unsigned documents that conditioned assignment of drawings on the alleged assignor's understanding that he would be the architect on the job.

The principal in *Ranieri* and *Johnson* applies here–the difference being that in those cases there was an unsigned contract in which the courts inferred a lack of intent. Here, the Term Sheet expressly conditions the assignment of GFE's ownership of the AMPED content upon the completion of the merger and the license to the trademarks also upon completion of the merger. The evidence will show Mr. Jarrett was effectively and formally terminated prior to the merger and prior to the showing of the complete Anthology.

Even if the jury determines Anthem carried its burden to show existence, the evidence will show Anthem exceeded the scope of and/or there was no implied license upon the death of the merger and Mr. Jarrett's termination. "[O]nce a license is terminated, the ex-licensee has [neither] *no authority* to continue to use the licensor's mark," nor may the ex-licensee use the mark in ways *beyond the scope of the license*. *KFC Corp. v. Goldey*, 714 F. Supp. 264, 267 (W.D. Ky. 1989) (emphasis added); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) ("We … hold that proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish "likelihood of confusion.").

At trial, Mr. Jarrett will testify about the details of the merger and the Term Sheet (which states that Anthem only receives an assignment and license upon completion of the merger). The evidence will show through documents and testimony of Messrs. Jarrett, Myers, and Nordholm

that Anthem exceeded the scope of any alleged license by, at least, airing the fourth PPV, creating and distributing DVDs, and continuing to stream and distribute content based up GFE's content, and the continued use of GFE's trademarks and Mr. Jarrett's name, image, and license after the merger died.

### III. Federal Trademark and Unfair Competition Claims and Tennessee Common Law Trademark Infringement Claim

The basic elements for determining liability for federal trademark-related claims under 15 U.S.C. §§ 1114 and 1125(a) and Tennessee common law trademark infringement are substantially the same. *Kebab Gyros, Inc. v. Riyad*, 2009 WL 5170194, at *5 (M.D. Tenn. Dec. 17, 2009). The only difference is that § 1114 requires a United States trademark registration, which shall be prima facie evidence of validity (mark and registration), ownership, and the exclusive right to use. 15 U.S.C. §§ 1114, 1115(a). A claim for unfair competition under § 1125(a) applies to marks without a registration or where the registration has been invalidated. Tennessee common law claims also do not require the marks to be registered although registered marks can be a basis for such claims. *Men of Measure Clothing, Inc. v. Men of Measure, Inc.*, 710 S.W.2d 43, 45 (Tenn. Ct. App. 1985).

For a § 1114 claim, a plaintiff must prove by a preponderance of the evidence: "(1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Except for the registration, and requirement to prove valid trademark rights, the same test applies to unfair competition under § 1125(a) and GFE's state law trademark-related claims. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006). The documentary evidence, including prior screen captures of GFE's use of the two registered marks and related logo marks, and Mr. Jarrett's testimony will show the marks were used as early as 2014, such as a previous wrestling event under the marks.

4

A.    **Existence of Trademarks**

GFE owns U.S. Reg. No. 5,392,147 for GLOBAL FORCE WRESTLING and U.S. Reg. No. 5,453,775 for GFW. GFE also has unregistered rights under § 1125(a) and Tennessee common law for those marks, as well as the GFW and GLOBAL FORCE WRESTLING logos.

Validity of a mark and invalidity of a registration are two separate defenses. The first says the mark cannot serve as a trademark; the latter shows the registrations are invalid and the prima facie evidence entitlement of 15 U.S.C. § 1115(a) goes away. Invalidity of a registration does not prove a trademark is invalid. It simply shifts the burden back to the plaintiff to show the mark is valid.

Anthem did not identify invalidity of the registrations in the Pretrial Order or its Answer. Anthem now takes the position in the jury instructions that Regs. 5,453,775 (GFW) and 5,392, 147are invalid because the applicant and owner prior to assignment was Global Force Wrestling, LLC ("LLC"), another entity that Mr. Jarrett solely owned and operated. Anthem also has included on its exhibit list documents not previously produced in discovery or before the supplemental deadline that allegedly support that theory.

 Anthem cannot now raise that defense. In the Pretrial Order, Anthem simply states a question for the jury is "Whether Plaintiff GFE's marks are valid and enforceable." (Dkt. 196 at 16 ¶1(a)). Anthem does not allege inequitable conduct for cancellation or invalidity of the registrations.

Moreover, if there was an implied license as alleged by Anthem that applied to all or some of the time the content and trademarks were used, the doctrine of licensee estoppel should bar the validity defense of the marks and invalidity of the registrations. "The doctrine or theory of licensee estoppel provides that a licensee should be, in many cases, 'estopped from claiming any rights

against the licensor which are inconsistent with the terms of the license.'" *Kebab Gyros, Inc. v. Riyad*, No. 3:09-0061, 2009 WL 5170194, at *6 (M.D. Tenn. Dec. 17, 2009). GFE does not assert that, as currently recognized in the Sixth Circuit, that the doctrine is a "hard-and-fast rule that bars all potential challenges that a licensee might offer against a licensor's trademark" *Id*. at *6. However, the only challenges mentioned in *Kebab*, are whether the marks are generic, descriptive without secondary meaning, or abandoned. *Id*. *6-7. The proof will show here that Anthem recognized the trademarks as valid through at least, use of the marks in commerce; asking for an assignment of GFE's marks in the Term Sheet (obviously GLOBAL FORCE WRESTLING and GFW are the primary marks, and Anthem's counsel stated yesterday that AMPED is not a trademark or used as a trademark); and the back of Anthem's DVDs claim all rights in the trademarks used on the DVD packaging which predominately, if not exclusively, display GFE's trademarks.

If Anthem can overcome the waiver and estoppel issues, the fact that the LLC was the applicant for Reg. '147 and '775 does not render the registrations void or GFE's claims under § 1114 invalid. LLC filed the application under 15 U.S.C. § 1051(b) for intent-to-use. An intent-to-use application cannot be assigned until a registration issues. 15 U.S.C. § 1060. However, 15 U.S.C. § 1055 permits an applicant to maintain its application and base use (i.e. the actual use for the statement of use ("SOU") required for registration to issue) upon the applicant's use or that of a "related company." 15 U.S.C. § 1127 defines "related company" as "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." A written license is not required; oral permission is sufficient. *Letica Corp. v. Sweetheart Cup Co*., 805 F. Supp. 482, 487 (E.D. Mich. 1992). In the SOU that Mr. Jarrett signed on behalf of LLC, he only represented that the uses were

based on the applicant or a "related company."

The question of a "related company" is whether the applicant has the ability to exert "control over only the 'use of the mark . . . with respect to the nature and quality of the goods or services.'" *Estate of Coll-Monge v. Inner Peace Movement*, 524 F.3d 1341, 1348 (D.C. Cir. 2008). The proof in this case, namely Mr. Jarrett's testimony, will show that Mr. Jarrett was the sole owner and member managing the operations of LLC and he had total control over the nature and quality of goods and services used under the marks.

Plaintiffs have objected to the never-previously produced documents and thus untimely attempt to include LLC's corporate records on its amended exhibit list. It is expected Anthem will attempt to introduce proof that LLC was administratively dissolved prior to submission of the SOUs and registrations. This point is *not* determinative of the issues. Under Tenn. Code Ann. § 48-249-605, LLC may continue to take actions that are "necessary to wind up and liquidate its business and affairs." LLC could not assign the applications (i.e. wind up and liquidate) until SOUs were filed and registrations issued. 15 U.S.C. § 1160. The evidence will show that upon issuance of the registrations, LLC timely assigned them via written assignment to GFE. That the assignment was *nunc pro tunc* back to May 20, 2020, the application filing date, does not attempt to, and need not, attempt to correct ownership. The date simply assures that all possible goodwill was transferred along with the right to sue for past infringement and collect damages and injunctive relief for such infringement.

In addition to the prima facie registrations, the proof, such as Mr. Jarrett's testimony and exhibits of GFE's use of the marks, will prove GFE owns valid and enforceable marks.

**B.      Use of the Marks In Commerce**

There is ample evidence Anthem used GFE's marks in Tennessee and interstate commerce.

The proof will show Anthem, both before the merger's termination and after the effective termination of the merger, used the marks on pay-per-view broadcast, ordinary broadcasts, advertising, streaming videos, DVDs, domestic and international distributions, and a confusingly similar version of the Global Wrestling Network with its name, use of GWN, and GWN logo.

### C.     Likelihood of Confusion

There are eight factors to determine whether a likelihood of confusion exists: (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Frisch's Rests., Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). All of the factors are to be considered together. "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." *Home. Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105, 1107 (6th Cir. 1991). "They are also interrelated in effect." *Id*. "Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Id*. "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id*.

Although evidence of actual confusion "is undoubtedly the best evidence of a likelihood of confusion," it is not required. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997). The Sixth Circuit even noted evidence of actual confusion "is rarely significant." *Id*. Even if Anthem has a license (*infra.*), "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion'" and other factors need not be considered to rule in the licensor's favor. *U.S. Structures*, 130 F.3d at 1190. Thus, if Anthem had a license that

terminated, and it continued to use GFE's marks, there is no need to continue the analysis because GFE would *automatically* meet the standard.

The proof will show all factors are met. First, the fact Anthem claims the marks are owned by it, as evidenced on the packaging for all four DVDS, is sufficient to proof likelihood on that fact alone. *Johnson*, 149 F.3d at 503. ("… the defendant has taken the plaintiff's product and has represented it to be his own work. It is difficult to imagine how a designation of origin of a product could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the product.") The first three factors are easily met with documents, video, and testimony. It is self-evident that GFE's marks are arbitrary or at worst suggestive. This is particularly true with the GFW word and logo marks. GFW gives not indication of the goods or services. There is no contest as to the relatedness of the goods or services. GFE's marks and those used by Anthem are identical except for Anthem's use of GLOBEL WRESTLING NETWORK and GWN. Those marks are substantially similar in words and colors.

The proof—Mr. Jarrett's testimony and Anthem's display on the internet and videos, and the back of the DVD cases (stating all trademarks are "owned" by Anthem)—will show actual confusion. A trademark owner is not required to offer specific incidents of actual confusion or to present consumer surveys to prove actual confusion. *Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 656 (2d Cir. 1989). A jury can rely upon the implication in testimony— especially where the trademark owner is not mentioned on the box. *See Zelinski v. Columbia, 300, Inc.*, 335 F.3d 633, 639 (7th Cir. 2003) (finding actual confusion based solely on testimony). The DVDs' packaging also supports a finding of actual confusion.

The proof will show the remaining four factors are met. Messrs. Jarrett and Nordholm are expected to testify regarding the same use of marketing channels—namely, internet and social

media. This, of course, assumes Anthem did any marketing, which Mr. Nordholm will testify did not occur. Both also are expected to testify regarding the likely degree of purchaser care because the products offered are identical and the DVD boxes give the consumer no notice the marks do not belong to Anthem and, in fact, explicitly states the marks are owned by Anthem. Messrs. Jarrett, Asper, Nordholm, D'Amore, and Meyers are expected to testify regarding Anthem's intent-to-use the marks both before and after the effective termination of the merger as well as GFE's intent going into the merger discussions. Finally, Mr. Nordholm's testimony regarding expansion to DVDs, streaming, and distribution will prove the likelihood of expansion of the product lines.

### D. Damages from Trademark-Related Claims

GFE will be able to prove damages upon a finding of liability. For the §§ 1114 and 1125(a) claims, the damages standard is set by § 1117(a) for the recovery of (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. Section 1117(a) also grants the Court discretion to award enhanced damages and determine the case exceptional and attorneys' fees, expenses, and costs. Tennessee common law of torts similarly allows compensatory damages, disgorgement of profits, and, unlike § 1117(a), punitive damages. *Sprint Sols., Inc. v. LaFayette*, 2018 WL 3097027, at *15 (W.D. Tenn. June 22, 2018) (citation omitted); *Cf. Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).

Anthem has asserted that actual confusion is required for GFE to recover any damages under § 1117(a). This is incorrect. The Supreme Court's April 13, 2020 *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492 (2020) decision makes clear there are no requirements for monetary damages outside those directly in § 1117(a). *Id*. at 1495. Despite *Romag*, Anthem has cited the case of *Max Rack, Inc. v. Core Health & Fitness, LLC*, 2020 WL 2128614, at *7 (S.D. Ohio May 5, 2020) (notices of appeal filed) in which the court vacated the jury's award of actual damages (i.e.

10

compensatory damages) because there was no evidence of actual confusion.

Anthem's *Max Rack* argument has major flaws. First, the *Max Rack* court upheld the jury's award of wrongful profits. *Id.* at *4. "Plaintiff mistakenly conflates an award of disgorged profits . . . with the award of compensatory damages." *Id. Max Rack* does not require a finding of actual confusion for all types of damages under § 1117(a). Second, the *Max Rack* court's actual confusion requirement is contrary to the Supreme Court in *Romag*, the Sixth Circuit in *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 606 (6th Cir. 1991), and the Eastern District of Michigan's explanation of *Wynn Oil* in *Powerhouse Marks LLC v. Chi Hsin Impex, Inc.*, 2006 WL 8431783, at *2 (E.D. Mich. Feb. 2, 2006). *Romag* and *Powerhouse* are not mentioned in *Max Rack*; *Wynn Oil* is only footnoted for prejudgment interest. The Sixth Circuit in *Wynn Oil* expressly rejected the defendants' argument "that actual confusion, proof of which is lacking in this case, must be shown to justify a monetary award" and held the district court abused its discretion by requiring evidence of actual confusion. *Wynn Oil*, 943 F.2d 606. The *Powerhouse* court explained *Wynn Oil* and rejected the position that actual confusion is required for any monetary award under the Lanham Act because the actual confusion requirement is only for claims for false advertising under 15 U.S.C. § 1125(a), which is not a claim brought the present case. *Powerhouse*, 2006 WL 8431783, at *2. These holdings make sense because (1) false advertising under § 1125(b) requires proof of confusion and (2) actual confusion is but one non-required factor for liability under §§ 1114 and 1125(a). Reliance on *Max Rack* is at best misplaced.

GFE will present proof of monetary damages. Mr. Jarrett and Mr. Myers will testify as to actual damages including any corrective measures and lost opportunity to build a brand (plus the value of the brand) because the ability to launch a pilot using the AMPed content, which prominently displayed GFE's marks, was lost. Mr. Nordholm is expected to testify regarding

Anthem's revenues, production cases, financial records, projections, distribution, and valuations, as well as documentary evidence of the same. Mr. Perdue is expected to testify regarding (1) the number of times GFE's marks are shown in the AMPED Anthology; (2) Anthem's revenues attributable to the AMPED Anthology are at least $584,000 and any apportionment of time without GFE's marks should result in no less than $259,000 wrongful profits; and (3) the revenues from Anthem's infringement of the GLOBAL WRESTLING NETWORK and GWN are $494,000, for which Anthem bears the burden to show expenses to arrive at the wrongful profit amount. Anthem anticipates the testimony of Messrs. Jarrett, Nordholm, and D'Amore will support an award of enhanced damages and attorneys' fees under § 1117 and punitive damages under Tennessee common law by showing, at least, intentional, and reckless actions. *Hodges*, 833 S.W.2d at 901.

## IV. Counterfeiting

To prove a federal trademark counterfeiting claim, GFE must prove by a preponderance of the evidence that :

> To recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116." Regarding the first element, a claim of trademark infringement under § 1114 requires a plaintiff to show "(1) that it owns a valid, protectable trademark; (2) that the defendant used the mark in commerce and without the registrant's consent; and (3) there was a likelihood of consumer confusion." "Commerce" means "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. Regarding the second element, under § 1116, "counterfeit mark" is a mark that is registered with the United States Patent and Trademark Office, regardless of "whether or not the person against whom relief is sought knew such mark was so registered." *Id*. § 1116(d)(1)(B)(i).

*Top Tobacco, L.P. v. Abdelshahed*, 2020 WL 635257, at *6 (M.D. Tenn. Feb. 11, 2020)(citations omitted). "When the infringing products are counterfeits, the likelihood of confusion may be presumed." *Coach, Inc. v. Sw. Flea Mkt.*, 2012 WL 8470191, at *5 (W.D. Tenn. Feb. 21, 2012). A finding that Anthem did not engage in counterfeiting does not preclude recovery on Federal Trademark, Federal Unfair Competition, or Federal False Designation of Origin claims because

they are separate causes of actions under the Lanham Act. U.S. Struct., 130 F.3d at 1192.

The Lanham Act provides for statutory damages for a claim of counterfeiting in the amount of "not less than $1,000 or more than $200,000" per counterfeit mark per type of goods or, for willfulness, up to $2,000,000 per counterfeit mark per type of goods. 15 U.S.C.A. § 1117(c). Additionally, the statute provides that treble damages *shall* be awarded. *Id*. § 1117(b). Election remedies can occur up when final judgment is rendered by the trial court. 1117(c).

## V. Tennessee Unfair Competition

For a Tennessee Unfair Competition claim, a plaintiff must prove: "(1) the defendant engaged in conduct which 'passed off' its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization." *Sovereign Order of Saint John of Jerusalem, Inc. v. Grady*, 119 F.3d 1236, 1243 (6th Cir. 1997). GFE will rely upon the same proof of liability and damages in the trademark-related claims. GFE recognizes that although proof of actual confusion is *not necessary* for those claims, it is necessary for this claim.

## VI. Tennessee Consumer Protection Act

For a violation of the TCPA, GFE must prove by a preponderance of the evidence that: (1) Anthem's act or practice is unfair or deceptive; and (2) GFE suffered a loss of money, property, or thing of value as a result of the unfair or deceptive practice. GFE asserts Anthem violated Tenn. Code Ann. §§ 47-18-104(5), (21). GFE asserts Anthem violated those provisions by (1) using GFE's trademark, for which the same factors under the Lanham Act and proof will apply, and (2) by making the false statement on the back of the DVD packaging, and elsewhere, that all trademarks and content used in or displayed with the AMPED Anthology are "the property" of

13

Anthem, which is not true. If GFE establishes liability, it is entitled to actual and treble damages plus attorney fees and costs. Tenn. Code Ann. § 47-18-109(a)(3). Significantly, the powers and remedies provided shall be cumulative and supplementary to all other powers and remedies otherwise provided by law. *Id*. §§ 109 and 112. Mr. Jarrett and Mr. Myers will testify as to actual damages including corrective measures and lost opportunity to build a brand (and its value).

## VII.    Unjust Enrichment

GFE (not Jarrett) asserts the unjust enrichment against Anthem for use of its trademarks. GFE establishes unjust enrichment by showing (1) it conferred a benefit on Anthem; (2) Anthem appreciated the benefit; and (3) Anthem accepted the benefit under such circumstances that it would be inequitable or unjust to retain the benefit without paying its value to GFE. *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). Mr. Nordholm will testify that Anthem left open the amount that should be paid to GFE for the Original Masters upon Mr. Jarrett's termination, but that compensation was never received. Mr. Jarrett's testimony will show that the only compensation paid was received by him or his wife personally (rather than GFE) and was unrelated to the use of GFE's marks or the Original Masters.

Both compensatory damages and disgorgement of profits are available for a claim of unjust enrichment. "The measure of compensation for unjust enrichment is based on the reasonable value of the services to be judged by the customs and practices prevailing in that type of business." *FLSmidth Airtech, Inc. v. Fiber Innovation Tech., Inc*., 2014 WL 992795, at *9 (E.D. Tenn. Mar. 13, 2014). "A benefit is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss." *Freeman Indus., LLC v. Eastman Chem. Co*., 172 S.W.3d 512, 525 (Tenn. 2005). Disgorgement of improper profits is also available. *United States v. United Techs. Corp.*, 190 F. Supp. 3d 752, 758 (S.D. Ohio 2016).

## VIII. Conversion

The elements of conversion are "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *Permobil, Inc. v. Am. Exp. Travel Related Serv. Co., Inc.*, 571 F. Supp. 2d 825, 840 (M.D. Tenn. 2008). Conversion exists even when the "defendant rightfully obtained possession of the property." *Id.* at 840-41. A defendant's intention does not have to be a "conscious wrongdoing;" it "can merely be an exercise of dominion or control over the property" that is "inconsistent with the owner's rights and which results in injury to him." *Id.*

Mr. Jarrett's testimony, the Term Sheet, and Mr. Nordholm's testimony will prove ownership of the editable AMPed video files did not transfer to Anthem until the merger completed. The testimony will show Anthem intentionally retained, distributed from, and profited from those files through the AMPED Anthology even after the merger was effectively dead. As shown by Mr. D'Amore's testimony and Anthem's termination email to Mr. Jarrett, Anthem knew it did not have a right to continue with the AMPED Anthology.

Both compensatory and punitive damages are available for a claim of conversion. *Haraway v. Burnett*, 1997 WL 563224, at *12 (Tenn. Ct. App. Sept. 8, 1997). Punitive damages may be awarded when the plaintiff shows that the conversion "was accompanied by malice, insult, reckless and willful disregard of the plaintiff's rights, or other proof showing the aggravated nature of the act." *White v. Empire Exp., Inc.*, 395 S.W.3d 696, 720–21 (Tenn. Ct. App. 2012). Mr. Perdue, using documentary evidence and the testimony of Messrs. Jarrett and Myers, will testify that GFE's damages for conversation should be the cost to recreate the content so that GFE can re-enter the market for a pilot and lost revenues plus profits from the conversion and resulting permanent deletion of the files. Mr. Perdue will testify the recreation costs range from $425,000

to $1,600,000, lost revenues of $1,230,900, and incremental lost profits of $990,000. "Generally, the courts hold that an injured party is not required to prove a history of profitability to be entitled to recover lost anticipated profits." *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 60 (Tenn. Ct. App. 2004). "Courts recognize that a commercial enterprise can suffer economic injury regardless of its financial starting point. As one court has noted, 'simply because a business may have a net loss does not mean that it cannot suffer further damage at the hands of another.'" *Id.*

## IX. Negligence

A prima facie case for negligence for loss or damage to personal property against a bailee (defendant) is established by a bailor (plaintiff) when (1) the bailor delivers its property to the bailee in good condition and, (2) the property was either not returned or redelivered according to the contract or was returned or redelivered in a damaged condition. *See Executive Jet, LLC v. AirTran Airways, Inc.*, 2013 WL 2250599, at *5 (M.D. Tenn. May 22, 2013).

Under the traditional negligence test, a claim is established when a party shows "(1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant falling below the standard of care that amounts to a breach of that duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation." *Permobil, Inc.*, 571 F. Supp. 2d at 841. "[D]uty is the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citations omitted). "[A]ll persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others." *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993). "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage

in alternative conduct that would have prevented the harm." *McCall*, 913 S.W.2d at 153.

"Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). The test for proximate cause includes: "(1) the defendant's conduct must have been a substantial factor in bringing about the harm complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence." *Id.*

Mr. Jarrett's testimony will show that GFE owned the editable AMPed video files and be supported by the Term Sheet. Mr. Nordholm is expected to testify that Anthem used the files for creation of the AMPED Anthology, and that the files were later deleted from Anthem's servers. Mr. Jarrett will testify that without the original editable files, he cannot repurpose or use any of the original video to create new content. Mr. Nordholm's testimony will show that content included the Original Masters and that no steps were taken to protect or preserve them. Mr. Jarrett will testify that because the Original Masters have been destroyed, GFE cannot obtain a registered copyright on any of the resulting work, which further diminishes the value of the work.

If GFE is injured by Anthem's negligence, GFE is entitled to compensatory damages. Although rejected by the Court, GFE preserves for the appeal that the measure of damages for lost or destroyed property is its replacement value. *Hutsell v. Kenley*, 2014 WL 2949455, at *9 (Tenn. Ct. App. June 27, 2014). Punitive damages may be awarded under. *Hodges*, 833 S.W.2d at 901.

## X.     Tennessee Personal Rights Protection Act Claim

To establish this claim, Mr. Jarrett must prove: (1) Anthem knowingly used Mr. Jarrett's

name, photograph, and/or likeness on products, merchandise, goods, or services or to advertise or sell products, merchandise, goods, or services; (2) the use did not occur in connection with a news, public affairs, or sports broadcast or account; (3) Anthem did not have Mr. Jarrett's consent; (4) Anthem's use of Mr. Jarrett's name, photograph, and/or likeness was directly connected to Anthem's commercial purpose; (5) Mr. Jarrett was harmed; and (6) Anthem's conduct was a substantial factor in causing Mr. Jarrett's harm. Tenn. Code Ann. § 47-25-1101 et seq. "As a general rule of law, a consent can be terminated." McCarthy on Trademarks and Unfair Competition, 5th ed. § 31:42; *see Johnny's Fine Foods, Inc. v. Johnny's Inc.*, 286 F. Supp. 2d 876, 882 (M.D. Tenn. 2003); *Butkus v. Downtown Athletic Club of Orlando, Inc*., 2008 WL 2557427, at **7-10 (C.D. Cal. 2008). Mr. Jarrett will testify that Anthem did not have his consent to use his name and likeness. Anthem would only have had a license for use of the Intellectual Property within the Original Masters, which included Jarrett's image and likeness, upon *completion of the merger*. Mr. Jarrett will further testify that any consent given by him has been terminated.

Anthem's use of Jarrett's name, image, and likeness does not fall under the "sports broadcast or account" fair use exception because professional wrestling is "sports entertainment." Tenn. Code Ann. § 47-25-1107(a). Mr. Jarrett will testify that unlike sports where the outcome is determined by the athletes, professional wrestling is fully scripted. The outcome is always known. Most of the moves are preplanned. Professional wrestling is not different than a cirque du soleil performance or the Lion King at TPAC. Professional wrestling is about storytelling and drama. Courts have agreed. *See, e.g*., *Mason v. City of Lincoln*, 665 N.W.2d 600, 606 (Neb. 2003) (stating that professional wrestling is "a form of entertainment"); *Tattrie v. Com., Pennsylvania State Athletic Comm'n*, 521 A.2d 970, 973 (Pa. Cmwlth. 1987) ("It must be noted that professional wrestling contests and exhibitions are a form of entertainment."). Unlike competitive wrestling in

the Olympics, professional wrestling is modern theater and not a sport as in the meaning of the Act. If Mr. Jarrett proves his claim under the TPRPA, he is entitled to recover his actual damages and an any profits that are attributable to such use or infringement. Tenn. Code Ann. § 47-25-1106(d)(1). Messrs. Jarrett and Perdue will testify as to Mr. Jarrett's damages portion.

## XI. Cancellation

If Anthem's registration may be cancelled if it was obtained by a false or fraudulent filing. To show GFE's registration was fraudulent, GFE must prove by clear and convincing evidence that: (1) Anthem or its predecessor in interest (TNA), knowingly made a false representation of fact to the USPTO; (2) the false representation was made with an intent to deceive; and (3) the false representation was material in the sense that the USPTO would not have otherwise issued or maintained Anthem's registration. Mr. Jarrett will testify that he used his given name "Jeff Jarrett" as a professional wrestler, including with the WWE since 1991, for years before a registration was ever filed by TNA. The testimony of Mr. Rob Brewer, the attorney who filed the application for the mark, will show that TNA knew that it was not the first user of the name Jeff Jarrett.

A trademark registration may be cancelled "[a]t any time if the registered mark . . . has been abandoned." 15 U.S.C. § 1064(3). A mark is deemed "abandoned" if the owner either discontinues use or fails to police the use to the extent that it becomes generic. 15 U.S.C. § 1127. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 15 U.S.C. § 1127. A registration may be cancelled even if it has reached incontestability under Sections 8 and 15. *Levi Strauss & Co. v. GTFM, Inc*., 196 F. Supp. 2d 971, 976 (N.D. Cal. 2002).

When a mark no longer serves to identify origin and quality, the mark is considered "abandoned." 3 McCarthy On Trademarks & Unfair Competition, § 17:5 to § 17:8 (4th ed. 2010). Resumption of use cannot retroactively cure past abandonment nor can promotional use of the

marks on a different good. *AmBrit, Inc. v. Kraft, Inc*., 812 F.2d 1531, 1551 (11th Cir. 1986); *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000). Further, abandonment cannot be overcome "by simply averring a subjective affirmative 'intent not to abandon.'" *Imperial Tob. Ltd. v. Philip Morris, Inc*., 899 F.2d 1575, 1581 (Fed. Cir. 1990).

The evidence will show Mr. Jarrett and other wrestling companies used JEFF JARRETT long before Anthem and WWE has continued to use it after Mr. Jarrett left Anthem. Mr. Nordholm is expected to testify that Anthem has not used the Jeff Jarrett Mark in association with "toy action figures and accessories therefor" (Class 28) since approximately 2010. Mr. Jarrett will likewise testify that Anthem has never provided the "services" described in the registration, and Jarrett never wrestled for or was an on-screen performer for Anthem (Class 41).

## XII.     Anthem's Claim of Breach of Fiduciary Duty/Duty of Loyalty Against Mr. Jarrett

An officer of an LLC shall discharge all duties: (1) In good faith; (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) In a manner the officer reasonably believes to be in the best interests of the LLC. Tenn. Code Ann. § 48-249-403.  In order to recover for breach of fiduciary duty or breach of duty of loyalty, Anthem must establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to Anthem or benefit to Mr. Jarrett as a result of that breach. *In re Estate of Potter*, 2017 WL 4546788, at *2 (Tenn. Ct. App. Oct. 11, 2017). Plaintiffs will prove through the evidence of their claims, the lack of evidence by Anthem, and the testimony of Mr. Nordholm that he had the actual control. Anthem has not sought punitive damages in either its Answer or the Pretrial Order.

## XIII.    Anthem's Claim of Unjust Enrichment Against GFE and Mr. Jarrett

The law is Section VII covers the elements of this claim. Plaintiffs assert that the payment of $40,000 to Mr. Sullivan was for Anthem's sole benefit, not GFE's or Mr. Jarrett's benefit.

Dated: June 24, 2020

Respectfully submitted,

MILLER LEGAL PARTNERS PLLC

/s/ Samuel F. Miller

Samuel F. Miller, TN Bar No. 22936
Sara R. Ellis, TN Bar No. 30760
Hayley H. Baker, TN Bar No. 037439
Fifth Third Center–Suite 2000
424 Church Street
Nashville, Tennessee 37129
Tel/Fax: (615) 988-9590
Email: SMiller@millerlegalpartners.com
        Sellis@millerlegalpartners.com
        Hbaker@millerlegalpartners.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June 2020, the foregoing document was filed via ECF upon the following:

Paige W. Mills
Ashleigh Karnell
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200
pmills@bassberry.com
ashleigh.karnell@bassberry.com

/s/ Samuel F. Miller
Samuel F. Miller